## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| The Craig D. Scott Revocable Trust et al., | : | |
| | : | |
| | : | |
| *Plaintiffs*, | : | **CASE NO. 2:21-CV-03993** |
| | : | |
| v. | : | **JUDGE MICHAEL H. WATSON** |
| | : | |
| Jerome Township, Ohio, | : | **MAGISTRATE JUDGE** |
| | : | **ELIZABETH PRESTON DEAVERS** |
| *Defendant*. | : | |

## PLAINTIFF-INTERVENORS HAROLD E. CURRY, VIVIAN CURRY, AND AMH DEVELOPMENT LLCS' MOTION TO INTERVENE

Now come proposed Plaintiff-Intervenors Harold E. Curry, Vivian Curry, and AMH Development LLC (collectively, the "Curry Farm Intervenors"), by and through counsel, and pursuant to Fed. R. Civ. P. 24(a)-(b) respectfully move this Court to allow the Curry Farm Intervenors to intervene as Plaintiffs in the case of *The Craig D. Scott Revocable Trust et al. v. Jerome Township*, Case No. 2:21-cv-03993 (the "Underlying Lawsuit"). The Curry Farm Intervenors are entitled to intervene as of right under Fed. R. Civ. P. 24(a) because the Curry Farm Intervenors' Motion to Intervene is timely, they have a substantial legal interest in this case, their ability to protect that legal interest will be impaired if they are not permitted to intervene, and their interests are not adequately represented by the existing parties to the case. In the alternative, the Curry Farm Intervenors should be permitted to intervene under Fed. R. Civ. P. 24(b) because they allege common questions of law and fact to those that are alleged by the existing Plaintiffs in the underlying lawsuit.

Before filing this Motion, the Curry Farm Intervenors consulted with the existing parties to this litigation. Defendant Jerome Township and counsel for the existing Plaintiffs have indicated that they do not consent to the intervention.

For the reasons stated in this Motion and the accompanying Memorandum in Support, the Curry Farm Intervenors respectfully request that this Court grant their Motion to Intervene. A proposed Complaint in Intervention is attached.

Respectfully submitted,

*/s/ Larry H. James*
LARRY H. JAMES                    (0021773)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone:    (614) 229-4567
Facsimile:     (614) 229-4559
Email: ljames@cbjlawyers.com

*Counsel for Proposed Plaintiffs-Intervenors*
*Harold E. Curry, Vivian Curry, and*
*AMH Development LLC*

2

<u>**MEMORANDUM IN SUPPORT OF THE CURRY FARM INTERVENORS' MOTION TO INTERVENE**</u>

**I.      Background on the Curry Farm Development Project**

AMH Development LLC ("AMH") entered into a contract with Harold Eugene Curry and Vivian Curry (the "Currys") to purchase approximately 50.67 acres of the Currys land (the "Curry Farm") located in Jerome Township. (Intervenors' Ex. A ¶ 58). The Currys have owned land in Jerome Township for over half of a century, but they are seeking to sell their farm to AMH to pay the cost of medical expenses. (Intervenors' Ex. A ¶ 7). AMH plans to use the land – which is located immediately west of a single-family subdivision that is currently under construction – to build another single-family residential subdivision named Curry Farm in full compliance with Jerome Township's Comprehensive Plan and Zoning Resolution. (Intervenors' Ex. A ¶¶ 58-64). The Curry Farm development aims to lower the barriers to entry into the homeowners' market for working-class families by offering homes for rent. (Intervenors' Ex. A ¶ 72). Given the explosion of growth in Central Ohio over the last decade, there is a critical need for this kind of housing in Jerome Township.

Located between the cities of Dublin and Marysville along the U.S. 33 and 42 corridors, Jerome Township has experienced significant population growth along with the rest of Central Ohio over the last decade. (Intervenors' Ex. A ¶ 3). Recognizing that this growth was likely to continue, Jerome Township adopted a Comprehensive Plan in 2008 to plan for and project the Township's preferred future land uses. (Intervenors' Ex. A ¶ 4). Specifically, the Comprehensive Plan calls for zoning to include the clustering of new homes in planned residential subdivisions in certain areas throughout the Township. (Intervenors' Ex. A ¶ 4).

After AMH contracted to purchase Curry Farm, AMH expended significant resources to ensure that the development plan for Curry Farm met or exceeded the requirements of Jerome

Township's Comprehensive Plan and Zoning Resolution. (Intervenors' Ex. A ¶¶ 8, 59-64). Unfortunately, a small but vocal minority of Jerome Township residents have developed an end-run around the Comprehensive Plan to block nearly **all** new residential development in the Township, including Curry Farm. (Intervenors' Ex. A ¶¶ 5-6, 9).

Regardless of a proposed development's compliance with the Township's Comprehensive Plan – and without any evidence that a proposed development poses any threat to the public health and safety of existing or future residents – these individuals circulate a referendum petition after the Township Trustees vote to approve a residential development. (Intervenors' Ex. A ¶¶ 5-6). The goal of this arbitrary and unreasonable use of the referendum process is to force the owners of undeveloped farmland to maintain their properties as open greenspace for the benefit of **other** property owners at the expense of the undeveloped property owners' and developers' property rights. (Intervenors' Ex. A ¶ 6).

AMH anticipated being subject to this end-run on the referendum process. As averred by Michael Medvedkov, the Manager of Land Acquisitions for AMH Development LLC, in his affidavit in support of this Motion – attached as Exhibit C – AMH expedited its zoning application in anticipation of a referendum. (Medvedkov Aff. ¶ 4). Mr. Medvedkov further averred that AMH has followed the Underlying Lawsuit for some time, and AMH was prepared to join or intervene in the litigation if and when it fell victim to this same referendum scheme. (Medvedkov Aff. ¶¶ 4-7). The Curry Farm zoning was not approved until October 5, 2021, and the referendum petition that followed was not filed until November 3, 2021. (Medvedkov Aff. ¶¶ 8-9).

Like the Currys and AMH (collectively, the "Curry Farm Intervenors"), the Plaintiffs in the case of *The Craig D. Scott Revocable Trust et al. v. Jerome Township*, Case No. 2:21-cv-03993 (the "Underlying Lawsuit") that is currently before this Court have been subject to the same

unlawful referendum scheme at the hands of Jerome Township. Accordingly, the Curry Farm Intervenors seek to intervene as of right or in the alternative to permissively intervene in the Underlying Lawsuit as Plaintiffs to protect their constitutional and private property rights.

## II.     Law and Argument

### a.   Standard for Motion to Intervene

Federal Rule of Civil Procedure 24 governs intervention in an existing lawsuit. As the Sixth Circuit has recognized, "Rule 24 should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir.2000), *quoting Purnell v. Akron*, 925 F.2d 941, 950 (6th Cir.1991). A party seeking to intervene in a lawsuit may do so as of right or via permissive intervention.

### i.   Intervention as of Right

Under Rule 24(a), "On timely motion, the court must permit anyone to intervene who: (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." A motion to intervene as of right must address: (1) the timeliness of the application to intervene; (2) the intervenors' substantial legal interest in the case; (3) how the intervenors' ability to protect their legal interest will be impaired if they are not permitted to intervene; and (4) how the intervenors' interest is inadequately represented by the parties who are already before the court. *Davis v. Lifetime Capital, Inc.*, 560 Fed.App'x. 477, 489, 495-496 (6th Cir.2014), citing *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir.1997).

To determine whether a motion to intervene is timely, the court looks to five additional factors: (1) the point to which the suit has progressed; (2) the purpose for which intervention is

3

sought; (3) the length of time preceding the application during which the proposed intervenor knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances mitigating against or in favor of intervention. *Id.* at 490, *quoting Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990).

### ii. Permissive Intervention

Rule 24 also allows a potential party to an existing lawsuit to intervene via permissive intervention. Under Rule 24(b), "On timely motion, the court may permit anyone to intervene who: (B) has a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(a)(3). Accordingly, to succeed on a motion for permissive intervention, the party – or parties – seeking to intervene in the case that is already before the court must demonstrate that (1) the motion is timely; and (2) the motion for intervention alleges at least one common question of law or fact. *U.S. v. Michigan*, 424 F.3d 438, 445 (6th Cir.2005), *citing Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir.1997).

### b. The Curry Farm Intervenors are entitled to intervene as of right.

### i. The Curry Farm Intervenors' motion is timely.

The Underlying Lawsuit was initially filed on July 23, 2021. The Plaintiffs to the Underlying Lawsuit filed an Amended Complaint on August 20, 2021. In response, Defendant Jerome Township filed a Motion to Dismiss the Amended Complaint on September 7, 2021. As of the date of filing of the Curry Farm Intervenors' Motion, briefing on the Township's Motion to

4

Dismiss is ongoing. Accordingly, the parties to the Underlying Lawsuit have not engaged in any discovery, and Defendant Jerome Township has not filed an Answer to the Amended Complaint.

The Curry Farm Intervenors seek to intervene as Plaintiffs for the purpose of protecting their constitutional and private property rights in what is likely a matter of first impression before this Court. As set forth in Intervenors' Exhibit A (attached), the Curry Farm Intervenors allege that the unlawful referendum process and subsequent change in the zoning of their property instituted by Jerome Township deprived them of their federal constitutional substantive due process rights and equal protection under color of law pursuant to 42 U.S.C. § 1983. (Intervenors' Ex. A. ¶¶ 93-106). Further, the Curry Farm Intervenors also allege that the Township's unlawful referendum process and resulting change in zoning of their property must be declared unconstitutional under R.C. 2721.03. (Intervenors' Ex. A. ¶¶ 107-119). Finally, the Curry Farm Intervenors allege in the alternative that Defendant Jerome Township's referendum process and the change in the zoning of their property that followed constitutes a regulatory and due process taking without just compensation under color of law pursuant to 42 U.S.C. § 1983. (Intervenors' Ex. A. ¶¶ 113-125). These claims are nearly identical to those alleged by the Plaintiffs in the Underlying Lawsuit. (See 8/20/2021 Am. Compl. ¶¶ 229-273).

Additionally, very little time has passed since the Curry Farm Intervenors knew or should have reasonably known of their interest in the Underlying Lawsuit. As set forth in Intervenors' Exhibit A, the LUC Zoning & Subdivision Committee unanimously voted to recommend approval of AMH's rezoning application and the Curry Farm development plan on August 16, 2021. (Intervenors' Ex. A. ¶ 74). Likewise, the Jerome Township Zoning Commission voted unanimously to recommend approval of AMH's rezoning application for Curry Farm on August 23, 2021. (Intervenors' Ex. A ¶ 75). The Jerome Township Trustees held a public hearing on the

Curry Farm development on September 28, 2021, and the Trustees voted to rezone the Curry Farm property to Planned Development District on October 5, 2021. (Intervenors' Ex. A. ¶¶ 76-77; Medvedkov Aff. ¶ 8). **After** all of these steps were completed, however, a vocal minority of existing residents of Jerome Township misused the referendum process to arbitrarily change the Curry Farm zoning back to Rural Residential by filing a referendum petition on November 3, 2021. (Intervenors' Ex. A. ¶¶ 86-88; Medvedkov Aff. ¶ 9). Accordingly, although the Curry Farm Intervenors anticipated joining the Underlying Lawsuit, did not know – and should not have reasonably known – that they had a legally cognizable interest in the Underlying Lawsuit until November 3, 2021 when the referendum petition was filed. Since learning of their interest in the Underlying Lawsuit, however, the Curry Farm Intervenors have moved swiftly to communicate their common interests to the parties to the Underlying Lawsuit and to prepare this Motion to Intervene.

Further, Defendant Jerome Township is **more likely** to be prejudiced if the Curry Farm Intervenors are **not** permitted to intervene in this lawsuit because any settlement between the existing Plaintiffs to the Underlying Lawsuit and Jerome Township would exclude the Curry Farm Intervenors. Accordingly, the Township would potentially be subject to double liability to the Curry Farm Intervenors and to the Plaintiffs to the Underlying Lawsuit if the Township is forced to litigate – and potentially settle – two separate lawsuits over the same questions of law and fact. On the other hand, the existing Plaintiffs to the Underlying Lawsuit will not be prejudiced by Defendant Jerome Township's intervention because the Underlying Lawsuit is still in the pleadings stage, there has not been any discovery, and the Curry Farm Intervenors' share similar interests to those of the Plaintiffs to the Underlying Lawsuit.

Finally, the pending consent decree that will soon be subject to public comment presents unusual circumstances that favor intervention. Despite the fact that there are nearly identical questions of law and very similar facts alleged in both the Underlying Lawsuit and the Curry Farm Intervenors' claims, the Plaintiffs have inexplicably refused to include the Curry Farm Intervenors in this lawsuit. AMH has repeatedly expressed its desire to be included in the Underlying Lawsuit if and when the Curry Farm development was subject to a referendum. (Medvedkov Aff. ¶¶ 4, 10-11). That referendum was not filed until November 3, 2021. (Medvedkov Aff. ¶ 9). Plaintiffs are attempting to force the Curry Farm Intervenors to bring a separate case rather than conserve judicial and public resources by resolving the Curry Farm Intervenors' claims against the Township in the same consent decree as the other Plaintiffs.

If the Curry Farm Intervenors are permitted to intervene now, however, they have prepared concise proposed language to be added to the consent decree – attached to this Motion as Intervenors' Exhibit B – to ensure that the Curry Farm Intervenors' do not derail the progress that the existing parties to the Underlying Lawsuit have made. As expressed in that proposed language and averred by Michael Medvedkov on behalf of AMH, the Curry Farm Intervenors only seek to have their zoning reinstated to Planned Development and do not intend to pursue damages if the Court allows them to join the Underlying Lawsuit. (Intervenors' Ex. B; Medvedkov Aff. ¶ 13). Accordingly, it is in the best interests of the public – as well as the interests of conserving judicial resources – to include the Curry Farm Intervenors in the Underlying Lawsuit and the pending consent decree to resolve that litigation now.

The timeliness factors therefore support this Court finding that the Curry Farm Intervenors' Motion is timely. The additional factors that the Court must consider provide further support for intervention.

### ii. The Curry Farm Intervenors' have a substantial legal interest in the case that is already before this Court.

The Curry Farm Intervenors' claims are nearly identical to those of the Plaintiffs to the Underlying Lawsuit. (See Intervenors' Ex. A. ¶¶ 93-125; 8/20/2021 Am. Compl. ¶¶ 229-273). Accordingly, the Curry Farm Intervenors have a substantial legal interest in having their claims decided in tandem with the similar claims in the Underlying Lawsuit that are already before this Court.

### iii. The Curry Farm Intervenors' ability to protect their legal interests will be impaired if they cannot intervene.

First, and most importantly, the Curry Farm Intervenors' ability to settle their claims with Defendant Jerome Township will be significantly impaired if the Curry Farm Intervenors cannot intervene in the Underlying Lawsuit. As alleged in Intervenors' Exhibit A and averred by Mr. Medvedkov, the Curry Farm Intervenors have fallen victim to the same unlawful referendum scheme as the Plaintiffs in the Underlying Lawsuit. (Intervenors' Ex. A ¶¶ 5-10; Medvedkov Aff. ¶¶ 8-9, 12). Consequently, the Curry Farm Intervenors have suffered – and continue to suffer – similar harm to that alleged by the Plaintiffs in the Underlying Lawsuit. (Intervenors' Ex. A ¶ 10). The only way that the Curry Farm Intervenors may therefore fully protect their interests in settlement negotiations with Defendant Jerome Township is if the Curry Farm Intervenors are on equal footing with the Plaintiffs in the Underlying Lawsuit. That cannot happen if the Curry Farm Intervenors are forced to litigate these matters with the Township on their own rather than alongside the similarly situated Plaintiffs.

Second, in the event that settlement efforts are not successful, the Curry Farm Intervenors' ability to protect their legal interests – including any potential consent decree with the Township – will be impaired if the Curry Farm Intervenors cannot intervene in the Underlying Lawsuit. First,

any decision that this Court renders in the Underlying Lawsuit will have a significant – and potentially dispositive – impact on the Curry Farm Intervenors' claims because the Curry Farm Intervenors' claims and those that are currently before the Court in the Underlying Lawsuit present novel issues that are likely matters of first impression. Accordingly, the Curry Farm Intervenors will not be able to fully protect their constitutional and private property rights if they are not allowed to participate in the discovery process and briefing on any dispositive motions in the Underlying Lawsuit.

For these reasons, the Curry Farm Intervenors cannot fully protect their legal interests without intervention in the Underlying Lawsuit. This factor therefore supports intervention.

### iv. The Curry Farm Intervenors' interest is not adequately represented by the parties who are already before this Court.

The Supreme Court has recognized that the burden for showing that the existing parties to a case inadequately represent the proposed intervenors' interest is minimal. See *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538, n. 10, 92 S.Ct. 630 (1972). Accordingly, as the Sixth Circuit has recognized, "[t]he proposed intervenors need show only that there is a *potential* for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400-401 (6th Cir. 1999) (emphasis in original) (citations omitted).

Here, although the Curry Farm Intervenors allege similar legal claims to those that are already before this Court, the Curry Farm Intervenors' interest as a provider of single-family homes **for rent** is not adequately represented by the existing parties to the Underlying Lawsuit. In fact, **none** of the Plaintiffs to the Underlying Lawsuit have represented that they intend to provide predominantly rental housing. The Curry Farm Intervenors, however, have been subject to explicit anti-renter and anti-rental housing animus that has contributed to the Township's misuse of the referendum process to change the zoning of Curry Farm back to Rural Residential. (Intervenors'

9

Ex. A ¶¶ 81-84). Accordingly, it is highly unlikely that the existing Plaintiffs to the Underlying Lawsuit will adequately represent the Curry Farm Intervenors' interest as a provider of rental housing in resolving the parties' common legal claims without intervention. Intervention is therefore necessary for the Curry Farm Intervenors to adequately protect their interest as a provider of workforce rental housing that has been subject to the referendum process in Jerome Township.

### c. In the alternative, the Curry Farm Intervenors should be permitted to intervene.

Even if this Court determines that the Curry Farm Intervenors may not intervene as of right under Fed. R. Civ. P. 24(a), the Curry Farm Intervenors nonetheless should be permitted to intervene as Plaintiffs in the Underlying Lawsuit under Fed. R. Civ. P. 24(b). The Curry Farm Intervenors have timely filed this Motion with the Court, and they allege significant common questions of law to those that are already before this Court. The Curry Farm Intervenors therefore request in the alternative that this Court grant their Motion for Permissive Intervention.

### i. The Curry Farm Intervenors' motion is timely.

As discussed in Section II.b.i., *supra*, the Curry Farm Intervenors' Motion to Intervene is timely. The Curry Farm Intervenors brought this Motion just over a month after the Township changed the zoning of the Curry Farm Intervenors' land back to Rural Residential through the referendum process. Additionally, the Underlying Lawsuit is still in the pleadings stage, and discovery has not begun. Further, Defendant Jerome Township is **_more likely_** to be prejudiced if the Curry Farm Intervenors are not permitted to intervene because the Township could be subject to double liability if the Township is forced to litigate these cases separately. On the other hand, the Plaintiffs to the Underlying Lawsuit will not be prejudiced if the Curry Farm Intervenors are permitted to intervene because this case is still in its infancy and all of the Plaintiffs share similar legal interests. Finally, the novelty of the claims alleged against the Township by all of the

Plaintiffs – including the Curry Farm Intervenors – constitutes unusual circumstances that further support deciding all of these claims at once. Accordingly, this factor clearly supports permissive intervention.

### ii. The Curry Farm Intervenors allege common questions of law to those that are already before this Court.

Permissive intervention is warranted because the Curry Farm Intervenors allege common questions of law to those that are already before this Court in the Underlying Lawsuit. Specifically, the Curry Farm Intervenors allege that the Township's use of the referendum process and subsequent change in the zoning of the Curry Farm Intervenors' property back to Rural Residential deprived them of their federal constitutional substantive due process rights and equal protection under color of law pursuant to 42 U.S.C. § 1983. (Intervenors' Ex. A. ¶¶ 93-106). The Curry Farm Intervenors also allege that the Township's unlawful referendum process and resulting change in zoning of their property must be declared unconstitutional under R.C. 2721.03. (Intervenors' Ex. A. ¶¶ 107-119). Finally, the Curry Farm Intervenors allege in the alternative that the Township's referendum process and the change in the zoning of the Curry Farm Intervenors' property that followed constitutes a regulatory and due process taking without just compensation under color of law pursuant to 42 U.S.C. § 1983. (Intervenors' Ex. A. ¶¶ 113-125). These claims are nearly identical to those alleged by the Plaintiffs in the Underlying Lawsuit. (See 8/20/2021 Am. Compl. ¶¶ 229-273).

Accordingly, the Curry Farm Intervenors allege common questions of law to those that are already before this Court. Indeed, this Court and the existing parties to the Underlying Lawsuit are poised to potentially settle these nearly identical claims in a consent decree this week. In the interest of conserving public and judicial resources by including the Curry Farm Intervenors in that consent decree, this Court should find that permissive intervention is warranted.

III.     **Conclusion**

For the foregoing reasons, Proposed Intervenors Harold E. Curry, Vivian Curry, and AMH

Development LLC are entitled to intervene as of right in the case of *The Craig D. Scott Revocable*

*Trust et al. v. Jerome Township*, Case No. 2:21-cv-03993. Even if this Court concludes that the

Curry Farm Intervenors are not entitled to intervene as of right, the factors discussed above

strongly favor permissive intervention. The Curry Farm Intervenors therefore respectfully request

that this Court grant their Motion to Intervene as of Right or alternatively their Motion for

Permissive Intervention.

Respectfully submitted,

/s/ Larry H. James
LARRY H. JAMES                          (0021773)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone:     (614) 229-4567
Facsimile:     (614) 229-4559
Email: ljames@cbjlawyers.com
*Counsel for Proposed Plaintiffs-Intervenors*
*Harold E. Curry, Vivian Curry, and*
*AMH Development LLC*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2021, I filed the foregoing Motion to Intervene with the Clerk of Courts for the United States District Court, Southern District of Ohio, Eastern Division and a copy of the foregoing was duly served via the Court's electronic efile on all counsel of record.

/s/ Larry H. James
LARRY H. JAMES                    (0021773)



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Harold E. Curry** | : | |
| 7898 Hoskins Rd. | : | |
| Radnor, OH, 43066, | : | |
| | : | Case No. _____ |
| **Vivian Curry** | : | |
| 7898 Hoskins Rd. | : | |
| Radnor, OH, 43066, | : | Judge _____ |
| | : | |
| **AMH Development LLC,** | : | |
| 781 Brooksedge Plaza Dr. | : | |
| Westerville, OH 43081, | : | **JURY DEMAND ENDORSED HEREON** |
| | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | |
| | : | |
| **Jerome Township, Ohio,** | : | |
| 9777 Industrial Parkway | : | |
| Plain City, OH 43064, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

## COMPLAINT FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTION, AND COMPENSATORY DAMAGES

Plaintiffs Harold and Vivian Curry (the "Currys") and AMH Development LLC ("AMH") (together, "Plaintiffs"), by and through their undersigned counsel, and for their Complaint for Declaratory Judgment, Permanent Injunction, and Compensatory Damages against Defendant Jerome Township, Ohio ("Jerome Township" or "Township") aver and allege as follows:

## INTRODUCTION

1.        This is the third litigation matter brought against Jerome Township in less than two years for abuses of the zoning process by Township Residents, to the detriment of landowners and private property rights. Including this case, there have been 6 different developments and 19 total Plaintiffs in less than two years.  Since 2015, a few organized and vocal individuals in the Township have tortured the zoning process and then misused the referendum process to stop new homes from being built purportedly to keep the Township "rural."  In reality, they want to keep *everyone else's* undeveloped land in the Township as greenspace.  This "status quo" zoning is completely arbitrary, capricious, and illegal.

2.        Private property rights are inviolate under the Ohio Constitution.  Ohio townships are creatures of statute and have a very narrow and limited authority to restrict the use of private property through zoning – namely, where the zoning restriction is in the interest of public health and safety and in accordance with the township's comprehensive plan. OHIO REV. CODE § 519.02.

3.        Jerome Township is located between the cities of Dublin and Marysville along the U.S. 33 and 42 corridors.  This area, like nearly every other Central Ohio community, has experienced substantial population growth over the last decades.

4.        The Township recognized this reality as far back as 2008 when it adopted a Comprehensive Plan.  The Township's Comprehensive Plan documented the main arterials for traffic and future growth. The Comprehensive Plan planned for and projected <u>preferred</u> future land uses. In accordance with Ohio law, the Comprehensive Plan specifically calls for zoning to include the clustering of new homes in planned, residential subdivisions in certain areas throughout the Township.  The Comprehensive Plan also identifies areas within the Township that are appropriate to be zoned for mixed use developments and industrial developments.

5.      Recently, the Township has arbitrarily abandoned its Comprehensive Plan.  Rather than amending the Plan, a few individuals have developed an end-run around the Comprehensive Plan's provisions by misusing the referendum process.  Over the last several years, these individuals have attempted to put every new single-family residential development to a referendum no matter how large or small the development.  These individuals have also used the referendum to fight the planned mixed use developments. Each time, the referendum process was initiated without regard to the developments' compliance with the Township's Comprehensive Plan and in the absence of any evidence that these developments could somehow be unhealthy or unsafe.

6.      The scheme is simple.  As soon as a residential development is approved by the Township's Trustees, a referendum petition has been circulated among members of an email list. Signatures are gathered – often using false information or ill motivation.  Rather than consider whether the development's zoning complies with the Comprehensive Plan, the referenda are concerned with the "type of development" and the "type of people" that the new community might bring to the Township.  Each referendum has sought to permanently relegate the undeveloped farmland to open space at the expense of the landowners' and developers' property rights.  This exercise has occurred eight (8) times since 2015.

7.      AMH brought forth the Currys' property for rezoning in 2021. The Curry family has owned land in Jerome township for more than 50 years. They are seeking to sell their farm to pay for medical expenses.

8.      AMH spent months and significant sums to put together a plan with designs and studies that were all in compliance with the requirements of the Jerome Township Zoning Resolution and the Comprehensive Plan.

9.     Despite AMH's efforts, the same group of individuals once again sought a referendum to preserve the status quo and to essentially create an exclusionary zoning applied to the AMH development. These Township residents disregarded Ohio zoning law and trampled upon Plaintiffs' private property rights protected by the United States and Ohio Constitutions.

10.     It is well established that the Township is legally responsible for the deprivation of Plaintiffs' constitutional rights whether the deprivation occurs "by referendum or otherwise." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448, 105 S. Ct. 3249, 3259 (1985).   The Township's illegal and unconstitutional scheme has caused – and will cause – Plaintiffs more than $5 million of damages.  Plaintiffs therefore seek injunctive, monetary, and declaratory relief for the Township's violation of the United States and Ohio Constitutions and violation of Ohio zoning law.

## JURISDICTION AND VENUE

11.     This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

12.     Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1367, and 28 U.S.C. § 2201.  Jurisdiction supporting Plaintiffs' claims for attorneys' fees is conferred by 42 U.S.C. § 1988.

13.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

**PARTIES**

14. Harold Curry and Vivian Curry are landowners and farmers in Jerome

Township. The Curry Family has owned land in Jerome Township for more than 50 years and

specifically owns the 50.67 acres of land located at US42, Plain City, Ohio 43064 in Jerome

Township, Ohio, with Parcel Number 1500070540000 ("Curry Farm").

15.     AMH Development LLC is a foreign limited liability company duly registered to

conduct business in the State of Ohio. AMH has contracted with the Currys as Buyer of Curry

Farm.

16. Jerome Township, Ohio is a township located in Union County, Ohio.

17.     In addition to the foregoing parties, the Attorney General of the State of Ohio is

being served with a copy of this complaint pursuant to OHIO REV. CODE § 2721.12(A).

**FACTS COMMON TO ALL CLAIMS**

**A.      Ohio Townships and Their Residents Have Very Limited Authority to Zone
         Property.**

18.     The right to use and enjoy private property is fundamental in Ohio where "[p]rivate

property **shall ever be held inviolate**. . . ." OHIO CONST. Art. I, § 19 (emphasis added).

19.     Ohio townships have no inherent or constitutionally granted power to zone

property. *Bd. of Twp. Trs. of Bainbridge Twp. v. Funtime, Inc.*, 55 Ohio St.3d 106, 108 (Ohio

1990).

20.     Rather, Ohio townships' authority to zone property is determined by the General

Assembly. *Id.* ("Whatever police or zoning power townships of Ohio have is that delegated by the

General Assembly, and it follows that such power is limited to that which is expressly delegated

to them by statute.").

21.    The General Assembly expressly limits townships' power to adopt zoning regulations only to the extent the zoning regulations are "in the interest of the public health and safety" and "in accordance with a comprehensive plan." OHIO REV. CODE § 519.02.

22.    Consequently, Ohio township zoning actions that exceed this limited authority are void as a matter of law. *See Columbus Bituminous Concrete Corp. v. Harrison Twp. Bd. of Zoning Appeals*, 156 N.E.3d 841 (Ohio 2020).

23.    Likewise, township residents' opportunity to participate in the legislative process of township zoning through a referendum arises under the Ohio Revised Code. *Cook-Johnson Realty Co. v. Bertolini*, 15 Ohio St. 2d 195, 239 N.E.2d 80 (1968). Ohio township residents have no inherent or constitutional right to zone property through a referendum. *Id.*

24.    Regardless of whether township zoning actions occur through township trustees or through a referendum, the "legislative acts by the people are to be controlled and construed by the same principles as are applied to legislative acts of the state legislature." *Trafalgar Corp. v. Bd. of Miami Cty. Comm'rs*, Case No. 2001 CA 6, 2001 Ohio App. LEXIS 3946, at *5-6 (2d Dist. Sep. 7, 2001). Just like township officials, township residents can therefore only impose zoning restrictions on private property to the limited extent that the restrictions are "in the interest of the public health and safety" and "in accordance with a comprehensive plan."

25.    Because "[a] referendum . . . is the [government] itself legislating through its voters," the Township is responsible for the referendum result. *See Eastlake v. Forest City Enters., Inc.*, 426 U.S. 668, 678, 96 S. Ct. 2358 (1976); *Lucas v. Forty-Fourth Gen. Assembly*, 377 U.S. 713, 737, 84 S. Ct. 1459, 1474 (1964) (One's "constitutional rights can hardly be infringed simply because a majority of the people choose that it be."); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 448, 105 S. Ct. 3259.

26.     Consequently, a referendum does not magically inoculate the result from judicial review and invalidation simply because an election was conducted. *See Visconsi-Royalton, Ltd. v. City of Strongsville*, 8th Dist. Cuyahoga, No. 83128 2004-Ohio-4908, ¶ 24. ("[A] zoning ordinance upheld by referendum is subject to the same constitutional test as an ordinance enacted by a municipality."). Public participation in land-use decision making is circumscribed by the same procedural and substantive safeguards against capricious and arbitrary actions by township officials. *Eastlake v. Forest City Enters.*, 426 U.S. 676, 96 S. Ct. 2363.

27.     Indeed, the United States Supreme Court has long held that "[i]f the substantive result of [a] referendum is arbitrary and capricious, bearing no relation to the police power, then the fact that the voters . . . wish it so would not save the restriction." *Id.*

**B.     Jerome Township Adopts a Zoning Resolution and Comprehensive Plan.**

28.     Jerome Township originally adopted the Jerome Township Zoning Resolution (the "Zoning Resolution") in the mid-1950s.

29.     In relevant part, the Township amended the Zoning Resolution extensively in the early 1970s and again in 2015.

30.     The Zoning Resolution includes numerous zoning districts, including the Agricultural District, Rural Residential District ("Rural Residential"), Low Density Residential District, Medium Density Residential District, Office/Research/Medical District, Commerce District, Local Retail District, Regional Retail District, Special Recreation District, Planned Development District, and Open Space District.

31.     The Jerome Township Board of Trustees (the "Trustees") also adopted the Jerome Township Comprehensive Plan (the "Comprehensive Plan"), which was designed to guide the process of growth and development in the Township.

32.     The Comprehensive Plan correctly anticipated the population growth of the US 33 Northwest Corridor.  The Comprehensive Plan recognizes that Jerome Township "is in a position to benefit from new development" while also preserving "the rural character of Jerome Township."

33.     As such, the Comprehensive Plan promotes developments that cluster housing in order to preserve "large land areas and rural character."  The Comprehensive Plan also promotes developments that provide "a variety of lots sizes and housing types" in order to offer housing amenable to families with children and affordable enough for many people.

**C.      Prior to 2019, Jerome Township Routinely Rezoned Properties from Rural Residential to Planned Development District.**

34.     In 2008, approximately 75% of the land in Jerome Township was considered agricultural, but only 0.4% of the residents were farmers.  Comprehensive Plan at 5-3.  The vast majority of the land was undeveloped and zoned "Rural Residential" by default.

35.     The Rural Residential zoning district is a vestige of Jerome Township's rural heritage.  Properties under this zoning classification are required to have a minimum 1.5 acre lot for each home and sufficient land to accommodate well and septic systems for on-site water and sanitary systems.  Zoning Resolution § 425.04.  The Zoning Resolution, however, explains that Rural Residential is intended "for land which is suitable or used for very low density residences **as defined in the Comprehensive Plan**."  *Id.* § 425.001 (emphasis added).

36.     Like many townships in Central Ohio, Jerome Township has experienced significant population growth over the last ten years.

37.     Thus, while most – if not all – of Jerome Township's residential land was originally zoned Rural Residential, Jerome Township rezoned numerous properties from Rural Residential to the Planned Development District and other zoning districts.

38. The Jerome Township Zoning Map – which depicts the Planned Development District in purple and Rural Residential in green – makes clear that the Planned Development zoning classification is prevalent throughout Jerome Township:



A true and accurate copy of the Zoning Map is attached hereto as Exhibit A.

39. Jerome Township previously rezoned numerous properties from Rural Residential to Planned Development District, such as developments now known as the Woods at Labrador, Mitchell Crossing, New California Woods, and New California Hills.

40. In fact, Jerome Township even approved rezonings from Rural Residential to Planned Development District when the accompanying development deviated significantly from the Comprehensive Plan. The Woodbine Village development, approved by Jerome Township before 2015, is one such example.

41. On October 5, 2021 –the same date on which AMH was unanimously approved by the Jerome Township Board of Trustees – a 741-acre mixed-use industrial park was also approved. This 741-acre use did not comply with the Comprehensive Plan, Yet no referendum was filed.

**D.      Recently, a Vocal Minority of Individuals Began to Misuse the Referendum Process to Delay and Block *Any* Residential Development in the Township.**

42.      Recently, a vocal minority of individuals developed a scheme to stop *any* further residential development in Jerome Township – a tactic known as "status quo" zoning.

43.      The existing residents seek to bar the doors to any new residential development and, in turn, any new residents.

44.      "Status quo" zoning is inherently exclusionary, completely arbitrary, capricious, and illegal. It results in economic segregation rather than the promotion of the health and safety of the community. By prohibiting new development and new residents from moving into the area, persons of certain economic status are excluded from the community under the guise of zoning regulations.

45.      A group of individuals in the Township arbitrarily decided that undeveloped property within the Township should remain rural, large-lot green space.

46.      Since 2015, these individuals have been opposed to *any* new residential development or new residents that deviate from the status quo.

47.      These individuals capriciously claim that new residential development and, by extension, new residents, will degrade the Township and their own way of life.

48.      There is a significant demand for new housing in Jerome Township. The Building Industry Association of Central Ohio recently determined that there is a substantial shortage of residential homes in Central Ohio needed to meet projected population and job growth in this area. Just this year, the U.S. housing market has a shortage of 5.5 million homes to meet demand. In Central Ohio, housing inventory reached an all-time low despite high demand from homebuyers.

49.      Worse, these individuals falsely contend that additional residential development will somehow transform Jerome Township into an "urban" area. None of these residential

communities involve high-rises or anything remotely resembling an urban setting. This is the epitome of exclusionary "status quo" zoning.

50.     These individuals misuse the referendum process to prevent new residential development from occurring in the Township regardless of whether the residential development satisfies the Zoning Resolution and Comprehensive Plan.

51.     There have recently been several residential developments where Rural Residential land was sought to be rezoned to Planned Development District. Each of these developments satisfied the Township's Zoning Resolution and Comprehensive Plan. As such, Jerome Township officials had no discretion to deny the rezonings. Consequently, Township officials approved the rezonings pursuant to the limits of their zoning authority.

52.     Indeed, despite the numerous rezonings that have been approved in Jerome Township by Township officials, only one rezoning application has been approved without a referendum since 2015 – an anomaly caused by the global pandemic's impact on door-to-door signature gathering.

53.     Every other residential rezoning application that Township officials have approved has been subject to a referendum.

54.     In each instance, the status quo is preserved and the land is reverted back to the antiquated default of Rural Residential zoning despite the owners' and developers' efforts and vast investments into the studies, approvals, and applications to ensure their compliance with the Zoning Resolution and Comprehensive Plan.

55.     This status quo zoning scheme exceeds the Township's limited zoning authority in each such instance where the rezoning is approved and in compliance with the Comprehensive Plan.

E.  **Jerome Township Has Prevented Plaintiffs from Putting Their Properties to Any Economically Beneficial Use.**

56.  Through an arbitrary, unreasonable, and unconstitutional scheme, Jerome Township misused the referendum process to delay and ultimately block Plaintiffs from developing their property.

57.  Despite Curry Farm's full compliance with the Comprehensive Plan and Zoning Resolution, Township citizens abused the referendum process to arbitrarily stop the Curry Farm development.

### i.  Curry Farm - An Extension of the Adjacent Development

58.  AMH contracted to purchase 50.67 acres of land from Harold Eugene Curry and Vivian Curry. AMH plans to use that land to build a single-family residential subdivision named Curry Farm. Again, AMH ensured that Curry Farm complied with every aspect of the Comprehensive Plan to develop a residential subdivision with workforce housing and obtained unanimous Township approval for the development. Without regard to the specific benefits and amenities proposed in the development, a vocal minority of individuals 'keyed in' on the fact that AMH intends to rent the single family homes. That vocal minority went about the business of seeking referendum petition signatures for reasons such as rentals, 'subsidized housing,' and unproven allegations about reductions in existing home values. In short, they sought to exclude the renters of Curry Farm from the community. Those individuals claimed that Curry Farm did not bring the "type of residents" or "value" that they desired. As a result, they misused the referendum process to arbitrarily reverse the rezoning of the Currys' property and to limit the Currys to their property's outdated Rural Residential zoning, rather than the land use recommended by the Township's own Comprehensive Plan.

59. AMH entered into a contract to purchase approximately 50.67 acres of land along US42 ("Curry Farm"), immediately west of a single-family subdivision that is currently under construction. Development of Curry Farm will connect and extend roads and paths. The Development will also exceed the Township's Zoning Resolution minimum requirement of 40% open space with 46% percent open space. Additionally, Curry Farm will also include a club house, a pool, a large prairie field, and it will fully preserve a riparian ditch. The Curry Fam is zoned Rural Residential.

60. AMH subsequently applied to rezone the Curry Farm to Planned Development District to build a single-family residential development, Curry Farm.

61. A true and accurate copy of the illustrative design for Curry Farm is included here:



62. Curry Farm fully complies with the Comprehensive Plan and exceeds the minimum requirements of the Zoning Resolution.

63. The Comprehensive Plan also calls for the Curry Farm to be in a residential conservation district. As a result, the rezoning of Curry Farm to a Planned District and

development of Curry Farm satisfies the Comprehensive Plan. Curry Farm will provide 46% open space with three distinct and useful areas for community enjoyment.

64.     Throughout the zoning process, AMH also made commitments to benefit the community beyond those required by the Comprehensive Plan or the Zoning Resolution. For example, AMH agreed to add significant buffering areas of trees, mounds, and shrubs with the specific intention to alleviate any aesthetic concerns with the active farm activities to the south.

### ii.  Curry Farm Cannot Be Developed under Rural Residential Zoning Requirements

65. Developing Curry Farm under the Township's Rural Residential zoning restrictions is infeasible. It is also unreasonable, unsafe, and uneconomical.

66. Curry Farm has a unique physical share of land in its location. As a result, clustering of homes is necessary to avoid building in the riparian corridor and to properly align the roadway network with the adjacent residential development currently under construction. Such use of the planned district is not feasible under strict application of the underlying outdated Rural Residential district zoning.

67. Moreover, the centralized stormwater management system necessary to manage flood events requires developments with a much higher density than what is permitted under the Rural Residential zoning restrictions to be economically feasible.

68. Finally, it is uneconomical to develop the AMH Property as Rural Residential.

69. As recognized in the Township's own Comprehensive Plan, the Planned Development District zoning mitigates each of these issues.

70. Curry Farm maximizes conservation of the land's natural environment. For example, Curry Farm is designed to preserve 46% of the land as open space and to preserve natural features

of the environment by clustering homes. Rezoning the AMH Property to Planned Development District would therefore provide the environmental protection that is absent under the Rural Residential zoning.

71. The design of Curry Farm is specifically intended to address traffic planning and safety concerns. The design of Curry Farm specifically 'ties into' a 'by pass' roadway that was planned to dilute and distribute traffic from the intersection of US42 and Industrial Parkway. The connection of neighborhoods and roads achieves the specific result planned by the Township and reflected in the Comprehensive Plan.  AMH also completed and submitted a traffic impact study to Union County that addresses off-site regional vehicular impacts and offers an objective-criteria analysis for monetary contributions. Upon information and belief, the Union County Engineer has refused to review traffic studies from Jerome Township until the rezoning cases can 'survive' referendum.

72.      Finally, Curry Farm will increase the number of new homes to help satisfy the unmet housing demand in Jerome Township while staying within the Zoning Resolution's density requirements for Planned Development Districts.  AMH develops and builds traditional single family residential developments, but rents the homes with full maintenance and care for the land, buildings, and common elements. The fact that AMH offers the homes for rent allows for a 'starter home' opportunity, facilitates more 'work force housing,' and  lowers the barriers to entry into the home ownership market.

### iii.  Curry Farm Is Approved By Every Zoning Authority

73. Recognizing that Curry Farm fully complies with the Comprehensive Plan and Zoning Resolution, every zoning authority approved the rezoning and development plan.

74. On August 16, 2021, the LUC Zoning & Subdivision Committee unanimously voted to recommend approval of AMH's rezoning application and the Curry Farm development plan after a thorough review of the application and staff report.

75. The Township Zoning Commission voted unanimously to recommend approval of the AMH rezoning application to the Trustees on August 23, 2021.

76. The Township Trustees held their public hearing on September 28, 2021. During that hearing, the Trustees expressed appreciation for the design and conservation aspects of the proposal, as well as AMH's commitment to provide walking paths and trails.

77. On October 5, 2021, the Trustees voted to rezone the Property to Planned Development District and approved Curry Farm.

78. AMH spent significant sums to secure the land for Curry Farm, to plan and design the development, and to apply for and obtain approvals from the Township's Zoning Commission, the LUC Zoning & Subdivision Committee, and the Township Trustees.

### iv. A Minority of Individuals Revealed Their Dubious Intentions and Obtained a Referendum for Illegitimate Reasons.

79. Despite Curry Farm's compliance with the Comprehensive Plan and Zoning Resolution, a vocal minority of individuals voiced opposition to *any* development on the Curry Farm.

80. During the public hearing held by the Zoning Commission on August 23, 2021, one of the few individuals that regularly opposes development – typically based upon his own personal criteria and NOT the criteria contained within the Township's Comprehensive Plan or Zoning Resolution – addressed the panel. This resident acknowledged that AMH had conducted and submitted a pending traffic study, and he expressed the notion that he "was having trouble finding another reason to oppose this development." Nonetheless, just to express an anti-development

-16-

sentiment, on September 28, 2021, that same resident again complained for items that are not within the Jerome Township Zoning Resolution or for reasons that are not within the lawful jurisdiction or regulation of Jerome Township as zoning.

81. During the public hearing held by the Township Trustees on September 28, 2021, for example, one of the other anti-development individuals raised a question about AMH bringing a rental community to the Township and accused AMH of bringing a 'subsidized housing project' to the Township even though AMH specifically represented that the homes have a market price of $400,000.

82. Another individual opposed the Curry Farm development because he didn't want rental homes next door to his home.

83. Worse yet, certain Township residents took issue with the 'type of development' and 'type of new residents' Curry Farm would bring to the area, with 'renters.'

84. Those same community members questioned whether Curry Farm would maintain the "value" of the community.

85. In an online forum for Jerome Township residents called "NextDoor," one anti-development resident even attempted to defame and cast negative light on AMH as a developer.

86. Following the Trustees' approval of Curry Farm, a small group of organized members of the public then circulated a petition seeking a referendum to return Curry Farm to Rural Residential.

87. Upon information and belief, individuals who circulated the referendum petition encouraged other Jerome Township residents to sign the petition because of 'rental housing' and based upon unproven fears about 'renters' and 'reduced home values.'

88. Despite all of AMH's efforts and its full compliance with the Comprehensive Plan and Zoning Resolution, the referendum petitioners have obtained enough signatures to place the matter once again on the ballot for mob rule of township zoning.

89. Imposition of Rural Residential zoning onto the AMH Property was discriminatory and potentially in violation of Federal Fair Housing laws. Furthermore, the Township's actions to impose Rural Residential zoning on Curry Farm were arbitrary, capricious, unreasonable, and do not bear a substantial relationship to the public health, safety, morals, or general welfare. Those actions are also inconsistent with the Comprehensive Plan, which designates Curry Farm as conservation development.

90. On October 5, 2021, the Jerome Township Trustees approved Resolution 21-106 to approve a new zoning development that includes 741 acres that do not comply with the current Jerome Township Comprehensive Plan. Within that zoning are 600 new apartments and 170 new single-family homes. There was no referendum of that Township action despite having 770 new homes, no traffic study or improvement plan, and no tree preservation plan. These are some of the 'random' and unlawful bases cited in support of the referendum on AMH's property, yet that sentiment was not carried forward to this development. As such, the lack of a referendum on the new zoning development demonstrates the arbitrariness of the Townships' efforts to thwart the Curry Farm development via a referendum.

91. The continued imposition of the Rural Residential zoning and the delay caused by the sham referendum has resulted in and will continue to result in significant damages to AMH and the Currys.

92. Despite lacking any merit under Ohio zoning law and the Township's zoning authority, nearly every residential rezoning is being subjected to status quo zoning that is illegal, arbitrary,

and capricious. In each such instance, landowners and developers like the Currys and AMH are subjected to inevitable delays that cause them to incur significant ongoing harm.

**COUNT I: 42 U.S.C. Section 1983**
**Violation of Substantive Due Process**

93. Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

94. Jerome Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

95. Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

96. Plaintiffs possess legitimate claims of entitlement and justifiable expectations in their property and liberty interests because:

    i.    Jerome Township's current zoning of Plaintiffs' properties is not in accordance with Jerome Township's Comprehensive Plan and is not in the interest of the public health and safety;

    ii.    Plaintiffs' rezoning applications are in accordance with Jerome Township's Comprehensive Plan and are in the interest of the public health and safety, such that Jerome Township did not have discretion to deny Plaintiffs' rezoning applications;

    iii.    Plaintiffs undertook significant actions and made substantial investments in their properties such that Jerome Township's restoration of the Rural Residential zoning classification – which was an arbitrary departure from the Comprehensive Plan and the interests of the public health and safety – would cause substantial detriment to the Plaintiffs; and

-19-

      iv.    Plaintiffs expended significant sums to design and plan Curry Farm.

97. A small but vocal group's efforts to apply the referendum process to restore the Rural Residential zoning classification to the Plaintiffs' property are arbitrary, capricious, unreasonable, and do not bear a substantial relationship to Jerome Township's Comprehensive Plan or to the public health and safety.

98. The referendum results that caused Jerome Township to restore the Rural Residential zoning classification to the Plaintiffs' property are arbitrary, capricious, unreasonable, and do not bear a substantial relationship to Jerome Township's Comprehensive Plan or the public health and safety.

99. Accordingly, Plaintiffs have suffered and will continue to suffer the deprivation of their vested rights under the United States Constitution.

## COUNT II:  42 U.S.C. Section 1983
### Violation of Equal Protection

100.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

101.    Jerome Township has subjected Plaintiffs to unequal treatment of the law under color of law in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

102.    Previously, Jerome Township has rezoned numerous other properties that, similar to Plaintiffs, sought to rezone from the Rural Residential zoning classification to the Planned Development District zoning classification, including developments that deviated from the Jerome Township Comprehensive Plan.

103.    Plaintiffs' rezoning applications were just as compliant or even more compliant with the Jerome Township Comprehensive Plan and all legitimate zoning standards set by Jerome

Township and in the interest of public health and safety as the applications that received rezoning from Jerome Township in the past.

104. The Township treated Plaintiffs differently than the other similarly situated property owners that applied for and received rezoning from Rural Residential to Planned Development District zoning in the following ways:

        i. The Township arbitrarily and unreasonably instituted the referendum process for improper purposes in an effort to delay any development of the Plaintiffs' property; and

        ii. The referendum result arbitrarily and unreasonably restored the Curry Farm property to Rural Residential zoning.

105. Jerome Township has no rational basis for the discriminatory treatment of the Plaintiffs.

106. Accordingly, Plaintiffs have suffered and will continue to suffer from Jerome Township's unequal treatment of the law.

### COUNT III:  Declaratory Judgment
### Curry Farm/AMH Development

107. Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

108. Ohio Revised Code Section 2721.03 provides that any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule, or ordinance may have determined any question of construction of validity arising under the same.

109. The Rural Residential zoning classification as applied to the Curry Farm is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan.

110.    The Currys and AMH are therefore entitled to a declaration that subjecting the Curry Farm property to the Rural Residential zoning classification is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan.

111.    The rezoning of the Curry Farm to the Planned Development District as set forth in the AMH rezoning application is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan.

112.    The Currys and AMH are therefore entitled to a declaration that rezoning the Curry Farm to the Planned Development District and approving the AMH development is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan.

### COUNT VII: 42 U.S.C. Section 1983
### In the Alternative, Regulatory Taking

113.    Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

114.    Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – as well as the Township's failure to remove the Rural Residential zoning classification – has deprived Plaintiffs of all economically beneficial and productive use of their property.

115.    As such, Jerome Township's imposition of the Rural Residential zoning classification as applied to Curry Farm constitutes a per se regulatory taking.

116.    Alternatively, Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – and failure to remove the Rural Residential zoning classification – interferes with Plaintiffs' investment-backed expectations and results in severe economic impacts to the Plaintiffs.

117.     Jerome Township's imposition of the Rural Residential zoning classification as applied to Curry Farm is functionally equivalent to a direct appropriation of the property and therefore constitutes a regulatory taking.

118.     Jerome Township has not provided Plaintiffs just compensation for their property.

119.     Accordingly, Plaintiffs have suffered and will continue to suffer the taking of their property without just compensation in violation of the Fifth Amendment the United States Constitution.

### COUNT VIII: 42 U.S.C. Section 1983
### Due Process Taking

120.     Plaintiffs restate the foregoing paragraphs as if fully rewritten here.

121.     Jerome Township has deprived Plaintiffs of their property and liberty interests under color of law without due process of law in violation of the Due Process Clause in the United States Constitution.

122.     Plaintiffs' property and liberty interests are of a type protected by the Fourteenth Amendment to the United States Constitution.

123.     Jerome Township's imposition of the Rural Residential zoning classification on Curry Farm – and failure to remove the Rural Residential zoning classification – goes so far and destroys the value of Plaintiffs' property to such an extent that it has the same effect as a taking by eminent domain.  This imposition is an invalid exercise of the police power by the Township.

124.     Jerome Township's denial of Plaintiffs' re-zoning applications through referendum goes so far and destroys the value of Plaintiffs' property to such an extent that it has the same effect as a taking by eminent domain.  This imposition is an invalid exercise of the police power by the Township.

125.    Plaintiffs have suffered monetary damages as a result of Jerome Township's invalid exercise of the police power. Jerome Township's application of the Rural Residential zoning classification to Plaintiffs' property must therefore be invalidated.

**PRAYER FOR RELIEF**

**WHEREFORE**, in consideration that the foregoing, Plaintiffs seek:

A. A declaration that subjecting the Curry Farm to the Rural Residential zoning classification is unconstitutional, unreasonable, not substantially related to the public health or safety, and/or not consistent with the Jerome Township Comprehensive Plan;

B. A declaration that rezoning the Curry Farm to the Planned Development District and approving the AMH development is constitutional, reasonable, substantially related to the public health and safety, and consistent with the Jerome Township Comprehensive Plan;

C. A permanent injunction enjoining the Township from applying the Rural Residential zoning classification to Plaintiffs' property;

D. A permanent injunction enjoining the Township from preventing Plaintiffs from completing the development of Curry Farm as a planned residential community as previously approved by the Township;

E. Compensatory damages;

F. Attorneys' fees and costs pursuant to 42 U.S.C. Section 1988; and

G. Any other declarative, injunctive, or other equitable relief this Court deems just and appropriate.

Respectfully submitted,

*/s/ Larry H. James*_____
LARRY H. JAMES                    (0021773)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone:    (614) 229-4567
Facsimile:    (614) 229-4559
Email: ljames@cbjlawyers.com
*Counsel for Harold E. Curry,*
*Vivian Curry, and AMH Development LLC*

## JURY DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

*/s/   Larry H. James*_____
LARRY H. JAMES                    (0021773)
CRABBE, BROWN & JAMES LLP
500 South Front Street, Suite 1200
Columbus, OH 43215
Telephone:    (614) 229-4567
Facsimile:    (614) 229-4559
Email: ljames@cbjlawyers.com
*Counsel for Harold E. Curry,*
*Vivian Curry, and AMH Development LLC*

**<u>Proposed Consent Decree Language Concerning Curry Farm Development</u>**

On October 5, 2021, the Trustees approved an application to rezone approximately 50.67+/- acres of land located on the south side of US42 (the "Curry Farm") from RR to PD. Plaintiff AMH sought to develop the Curry Farm as a 100 single-family home planned development (the "Curry Farm"). The Curry Farm development plan complied with the requirements of the Township's Comprehensive Plan and Zoning Resolution.

Plaintiffs and the Township stipulate that, and by this Consent Decree, it is ordered that the Curry Farm Property, identified as Parcel Number 1500070540000 is rezoned to PD and the development plan for Curry Farm (the "Curry Farm Development Plan") is approved pursuant to the procedures set forth in Ohio Revised Code Section 505.07 without following the procedures in Ohio Revised Code Section 519.12, and notwithstanding any referendum or appeal. A true and accurate copy of the Curry Farm Development Plan, which reflects the Curry Farm rezoning to PD, is attached hereto as <u>Exhibit ___</u> and is incorporated herein.



EXHIBIT

B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Craig D. Scott, Trustee of : 
The Craig D. Scott Revocable Trust, *et al.*, :     Case No. 21-CV-03993
:
*Plaintiffs*, :
:                                                       **Judge Michael H. Watson**
v. :
:
Jerome Township, Ohio, :     **Chief Magistrate Judge**
:     **Elizabeth A. Preston Deavers**
*Defendant*. :

## AFFIDAVIT OF MICHAEL MEDVEDKOV

STATE OF OHIO          ))
COUNTY OF FRANKLIN  )) SS

Now comes the Affiant, Michael Medvedkov, having been sworn with penalty of perjury,

and hereby states the following:

1. I have personal knowledge of the facts set forth herein.

2. This Affidavit is being submitted with a Motion To Intervene into the above captioned

   pending litigation, case number 21-CV-03993.

3. I am the Manager of Land Acquisitions for AMH Development LLC. AMH is in contract

   to purchase 50.67+/- acres owned by Harold and Vivian Curry, in Jerome Township,

   Union County, Ohio. The name of the property and the development is "Curry Farm."

4. In my role as Manager of Land Acquisitions for AMH, I am responsible for land

   purchase and zoning entitlements. In that role, I mobilized our staff, our engineers, and

   lawyers to expedite our zoning application so as to be filed by June, with the expressed



intention of 'joining' the pending litigation once a referendum was filed on the Curry Farm Development.

5. I have followed along on the progress of the pending litigation.

6. I understand that there have been 4 other referenda filed in the last year for other projects similarly situated, so the chances would be high that the Curry Farm development would likewise be subject to referendum.

7. I understood that there was a possibility of at least 2 other zoning cases that would be added to the pending litigation. In fact, a referendum filed against Jerome Village did in fact cause the case to be amended in October 2021 for them as a Plaintiff.

8. The Curry Farm development was approved by all reviewing agencies and zoning bodies. The proposed Curry Farm development met the Jerome Township Comprehensive Plan for single family homes and density, exceeded the required open space, and complied with the Jerome Township Zoning Resolution. For those reasons, on October 5, 2021, the Jerome Township Board of Trustees unanimously approved the Curry Farm development.

9. On November 3, 2021, a referendum petition was filed to overturn the Curry Farm development approval – notwithstanding its strong compliance or 'exceeds expectations' with the Comprehensive Plan and Zoning Resolution.

10. I instructed my zoning counsel to contact the Plaintiffs to seek an amendment to the pending litigation, so that AMH could be included into the pending litigation.

11. I do not believe this Motion is a surprise to any Plaintiff or their counsel. Furthermore, I do not believe this Motion is a surprise to the Township or their counsel. I have

personally placed calls to and spoken with other Plaintiff representatives about this litigation and joining the litigation.

12. The AMH Curry Farm development is substantially similar to the cases in the pending litigation. The same basic facts exist, and when applied, bring the same claims regarding deprivation of basic property rights and an arbitrary and capricious approach to denying all developments in the Township.

13. At this time, AMH seeks only to have its zoning reinstated. AMH believes that the current status of the pending litigation will not be prejudiced or delayed by the Motion To Intervene.

14. I have instructed my trial counsel to submit the Motion To Intervene in the hope that substantial justice can be done and that such joint efforts will be the best use of the Court's time to hear and decide these cases and settlements at once.


AFFIANT FURTHER SAYETH NAUGHT


_____
Michael Medvedkov


STATE OF OHIO              ))
COUNTY OF FRANKLIN    )) SS

The foregoing Affidavit was sworn and affirmed before me this __29th__ day of November 2021, by Michael Medvedkov, Manager of Land Acquisitions for AMH Development LLC.


_____
NOTARY PUBLIC
My commission expires:

LAURA MacGREGOR COMEK
Attorney At Law
Notary Public, State of Ohio
My Commission Has No Expiration Date
Section 147.03 R.C.