# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Craig D. Scott, Trustee of the** | : | |
| **The Craig D. Scott Revocable Trust**, *et al.*, | : | |
| | : | **Case No. 21-CV-03993** |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Judge Michael H. Watson** |
| | : | **Chief Magistrate Judge Deavers** |
| **Jerome Township, Ohio**, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO HAROLD E. CURRY, VIVIAN CURRY, AND AMH DEVELOPMENT LLC'S MOTION TO INTERVENE

Proposed intervenors, Harold E. Curry, Vivian Curry, and AMH Development LLC (collectively, the "Curry Farm Intervenors"), move to interject themselves into this litigation on the eve of settlement. While many of the allegations in their proposed Complaint were copied-and-pasted from Plaintiffs' Amended Complaint, [1] the Curry Farm Intervenors have not – and cannot – establish the requisite elements to intervene as a party in this case. Put simply, the Curry Farm Intervenors' proposed Complaint concerns separate property, a separate development, separate zoning approvals, a separate referendum (that has not yet taken place), and seeks separate damages. Resolution of this case will have no impact on the Curry Farm Intervenors' property or development.

---

[1] Plaintiffs include Craig D. Scott, Trustee of The Craig D. Scott Revocable Trust, Jerry L. Scott, Co-Trustee of The Jerry Lynn Scott Trust, Judith E. Scott, Co-Trustee of the Jerry Lynn Scott Trust, Phillip E. Scott, Co-Trustee of The Scott Family Living Trust U/A/D 09/25/2014, and Mary Susan Scott, Co-Trustee of The Scott Family Living Trust U/A/D 09/25/2014, (collectively, the "Scott Family"), Paul C. Haueisen ("Mr. Haueisen"), T-Bill Development Co., LLC ("T-Bill"), Pulte Homes of Ohio LLC ("Pulte"), The Paragon Building Group, Ltd. ("Paragon"), Walbonns LLC ("Walbonns"), Wicked Chicken, LLC ("Wicked Chicken"), and Jerome Village Company, LLC ("JVC") (all together, "Plaintiffs").

Despite not having any property interest in the underlying case, nor being bound by any potential settlement between Plaintiffs and the Township, the Curry Farm Intervenors are attempting to insert themselves into a settlement at the eleventh hour. If permitted to intervene, the Curry Farm Intervenors' presence could potentially derail settlement, as their interests differ from Plaintiffs', their motion is not timely, and intervention would prejudice the parties. Further, resolution of the underlying case will not impact the Curry Farm Intervenors' rights or interests in any way, particularly here, where the underlying claims are as-applied challenges. The Curry Farm Intervenors' land and development is not part of the underlying litigation. There is therefore no risk of inconsistent judgments nor stare decisis implications to the Curry Farm Intervenors from the resolution of this lawsuit.

At bottom, while the Curry Farm Intervenors' are certainly entitled to file their own lawsuit against Jerome Township, they do not meet the requirements for intervention in this one. Consequently, the Curry Farm Intervenors' motion should be denied.

## I.      BACKGROUND

### A.      Plaintiffs' Properties and Developments in the Underlying Litigation.

Plaintiffs are landowners and developers who filed suit in this Court, alleging that the Township, through misuse of the referendum process, prevented Plaintiffs from developing their properties (the "Properties"). (Doc. 12 at ¶¶ 7-14, 54-60.) Specifically, Plaintiffs allege that the Township misused the referendum process to delay and ultimately block Plaintiffs from developing residential communities known as: (1) the Homestead at Scotts Farm; (2) Rolling Meadows; (3) the Farm at Indian Run; and (4) the VN-10 Development, a part of Jerome Village and the Eversole Run Master Sewer District (collectively, the "Developments"). (*Id.* at ¶¶ 63, 70-71, 118, 150, 189, 228.) Plaintiffs also allege that the Township has and will inevitably continue

to delay and prevent land within the Eversole Run Master Sewer District from being developed consistent with the Township's Comprehensive Plan. (*Id.* at ¶¶ 217-228.)

Each of the Plaintiffs' planned developments complied with the Township Zoning Resolution and the Township's Comprehensive Plan. (*Id.* at ¶¶ 64, 82, 121, 155, 189.) In all of Plaintiffs' cases, Township officials approved Plaintiffs' applications to rezone their Properties from Rural Residential ("RU") to Planned Development District ("PD") (the "Rezonings") and approved the proposed development plans for the Properties (the "Original Development Plans"):

a. Plaintiffs the Scott Family, T-Bill, and Pulte (collectively, "Scott Plaintiffs") sought to rezone approximately 139.34 acres of land on the south side of Brock Road (the "Scott Properties") in the Township from RU to PD in order to develop a 248 single-family home planned development known as the Homestead at Scotts Farm. On May 5, 2021, the Jerome Township Board of Trustees ("Board of Trustees" or "Trustees") approved the rezoning of the Scott Properties and the development plan for the Homestead at Scotts Farm. (*Id.* at ¶¶ 71-87, 94-108.)

b. Plaintiffs Paragon, Walbonns, and Mr. Haueisen (collectively, "Paragon Plaintiffs") sought to rezone approximately 210 acres of land located on Industrial Parkway (the "Paragon Property") in the Township from RU to PD in order to develop the Paragon Property as a 378 single-family home planned development known as Rolling Meadows. On July 2, 2019, the Trustees approved the rezoning of the Paragon Property and the development plan for Rolling Meadows. (*Id.* at ¶¶ 118-23, 134-38.)

c. Plaintiff Wicked Chicken sought to rezone approximately 24.73 acres of land located on the south side of McKitrick Road (the "Caldwell Property") in the Township from RU to PD to develop the Caldwell Property as a 40 single-family home planned

3

conservation development known as the Farm at Indian Run. On August 18, 2020, the Trustees approved the rezoning of the Caldwell Property and the development plan for the Farm at Indian Run. (*Id.* at ¶¶ 150-58, 167-77.)

d. Plaintiff JVC sought to rezone approximately 69.59 acres of land located on the south side of Blaney Road (the "VN-10 Property") in the Township and in the Eversole Run Master Sewer District from RU to PD to develop the VN-10 Property as a 149 single-family home planned development known as the VN-10 Development. On July 6, 2021, the Trustees approved JVC's application to rezone the VN-10 Property and the development plan for the VN-10 Development. (*Id.* at ¶¶ 190-96, 205-10.)

In each instance, Plaintiffs' Developments were arbitrarily denied regardless of whether the residential development satisfies the Comprehensive Plan through the misuse of the referendum process. (*Id.* at ¶¶ 7-8, 54-69.)

**B.** **The Litigation and Settlement Efforts.**

The Township is legally responsible for the deprivation of Plaintiffs' constitutional rights whether the deprivation occurs "by referendum or otherwise." (Doc. 12 at ¶ 14.) As such, the Township's illegal and unconstitutional referendum scheme has cost Plaintiffs millions of dollars in damages. (*Id.*) As a result, Plaintiffs filed their Complaint against the Township on July 23, 2021 (Doc. 1), and filed an Amended Complaint on August 20, 2021 (Doc. 12), alleging claims arising from the application of the illegal referendum scheme to Plaintiffs' properties and Developments. The Township filed a motion to dismiss for failure to state a claim on September 7, 2021. (Doc. 13.)

Since that time, the parties have participated in lengthy settlement discussions that have continued for several months. As a result, the parties have reached a proposed settlement to resolve

4

this litigation pursuant to Ohio Rev. Code § 505.07 by rezoning certain land and approving certain negotiated development plans and regulation text.

On December 3 and 4, 2021, the Township published notice in the Marysville Tribune that the Trustees would hold a public hearing on December 20, 2021, to consider the proposed consent decree pursuant to Ohio Rev. Code § 505.07. (Doc. 25 at 3; *see also* Ex. B, Affidavit of Publication.) On December 7, 2021, Plaintiffs published notice in the Marysville Tribune that the Parties intended to jointly file a proposed consent decree with this Court to settle this litigation. (Doc. 25 at 3-4; *see also* Ex. C, Affidavit of Publication.) Plaintiffs and the Township filed a Joint Notice of Proposed Settlement on December 14, 2021. (*See* Doc. 25.) In the event the Trustees' approve the proposed consent decree on December 20, 2021, the parties will submit the approved consent decree to the court for its review and consideration thereafter.

### C. The Curry Farm Intervenors' Property and Development Are Not Involved in the Underlying Action.

The Curry Farm Intervenors' property and development are not part of the Developments, and are not located within the Eversole Run Master Sewer District. (*Compare* Doc. 22 at ¶ 61 *with* Doc. 12 Exhibits 1-6.)

## II. LAW AND ARGUMENT

The Curry Farm Intervenors move to intervene in this matter as of right under Fed. R. Civ. P. 24(a), or, in the alternative, for permissive intervention in this matter under Fed. R. Civ. P. 24(b). (Doc. 22.) The Curry Farm Intervenors cannot meet either standard for intervention.

### A. The Curry Farm Intervenors Are Not Entitled to Intervene as a Matter of Right.

Intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." F.R.C.P. 24(a)(2). In the Sixth Circuit, a movant must satisfy four factors to intervene as a matter of right: "(1) the motion to intervene must be timely; (2) the proposed intervenor must have a direct and substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervener's interest." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Ruggles v. Bulkmatic Transp. Co.*, No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345, at *3 (S.D. Ohio Feb. 7, 2007) (quotation omitted).

The Curry Farm Intervenors do not have an interest in the property or in the rezonings in the underlying litigation and fail to establish the requisite elements for intervention. Their motion should therefore be denied.

### 1. The Curry Farm Intervenors' Motion is not timely.

As this Court has held, "[t]he purpose of the 'timeliness inquiry is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *S. H. v. Stickrath*, 251 F.R.D. 293, 297 (S.D. Ohio 2008) (citing *United States v. BASF-Inmont Corp.*, No. 93-1807, 1995 U.S. App. LEXIS 9158, 1995 WL 234648, at *2 (6th Cir. 1995)). There is no bright-line rule to determine timeliness. *Id.* Rather, a court must take into account all of the relevant circumstances, including:

> (1) the point to which the litigation has progressed; (2) the purpose for which intervention is sought; (3) the length of time prior to the motion to intervene during which the proposed intervenor had constructive knowledge

6

of its interest in the case; (4) any prejudice to the other parties due to the proposed intervenor's potential lack of timeliness; and (5) the existence of any unusual mitigating circumstances.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).  Here, all five factors for determining timeliness align against intervention.

    *First*, the Curry Farm Intervenors focus on the length of time since the filing of this action. (Doc. 22 at 4-6.)  But that inquiry is incorrect.  The "time between the filing of the complaint and the motion to intervene, in itself, is among the least important circumstances." *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 786 (6th Cir. 2004) (internal citation omitted). Instead, "[t]he relevant consideration is the *stage of the proceedings*." *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 377 (N.D. Ohio 2021) (emphasis added).  Here, the lawsuit is nearly resolved.  The Township Trustees are set to vote on the proposed consent decree within days from this filing and, if approved, the only remaining step in this litigation will be for the parties to submit the consent decree to the Court for its review and consideration.  *See Stickrath*, 251 F.R.D. at 299 (holding that motion for intervention filed just two weeks before parties finalized a settlement agreement was "very late in the proceedings").

    *Second*, the Curry Farm Intervenors state that their purpose for intervention is to "protect[] their constitutional and private property rights in what is likely a matter of first impression before this Court." (Doc. 22 at 5.)  But the Curry Farm Intervenors fail to cite to any case law that supports the idea that this "purpose" would favor intervention.  And "where a court's denial of intervention does not foreclose the only means of seeking relief via a declaratory action, the purposes of intervention prong will also weigh against a finding of timeliness." *S.W. v. Lorain-Elyria Motel*, No. 2:19-cv-01194, 2020 U.S. Dist. LEXIS 259463, at *6-7 (S.D. Ohio Nov. 18, 2020).  Moreover, the current litigation does not involve the Curry Farm Intervenors' property and therefore does not

impact the protection of their property rights. If the Court denies the motion to intervene – as it should – nothing forecloses the Curry Farm Intervenors from seeking relief in a separate action.

*Third*, the Curry Farm Intervenors make much of the fact that "very little time has passed since the Curry Farm Intervenors knew or should have reasonably known of their interest in the Underlying Lawsuit." (Doc. 22 at 5.) Specifically, the Curry Farm Intervenors explain that they "did not know – and should not have reasonably known – that they had a legally cognizable interest in the Underlying Lawsuit until November 3, 2021 when the referendum petition was filed" involving their property. (*Id.* at 6.) But the "newness" of the Curry Farm Intervenors' potential interests and claims cuts against intervention. While a referendum petition was filed to overturn the Curry Farm development approval in early November, it is not yet known whether the referendum petition concerning their development will be voted upon next year. Additionally, the Curry Farm Intervenors' contention is undermined by its delay and inaction. Specifically, the Curry Farm Intervenors admit that they were aware of this litigation since it was filed, followed the litigation's progress, but inexplicably waited until November 29, 2021 to file their tardy motion to intervene on the eve of settlement. (*See* Doc. 22, Ex. C ¶¶ 4-5.)

*Fourth*, the appropriate focus of the prejudice prong is "the prejudice caused by the untimeliness, not the intervention itself." *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013). Here, the Curry Farm Intervenors' proposed intervention would be plainly prejudicial to the parties due to the timing, as they seek to insert themselves into settlement at the eleventh hour. *See Stickrath*, 251 F.R.D. at 303 (proposed intervenor's attempt to "halt [the settlement negotiations] at the last minute" was "plainly prejudicial to the parties" and "weighed strongly against intervention"). The Curry Farm Intervenors' intentionally avoid acknowledging the pending settlement, and instead describe this case as "still in the pleadings stage[.]" (Doc. 22 at

8

6.) This mischaracterizes the imminence in which this case will likely be resolved. Moreover, the Curry Farm Intervenors' argument that they somehow share similar interests to those of Plaintiffs is inapposite because, again, the correct inquiry is the prejudice caused by the timing, not by the intervention itself. Moreover, the Curry Farm Intervenors' property and interest arising therefrom differs from Plaintiffs' properties and interests.

*Finally*, there are two unusual circumstances that militate against intervention. First, rather than file their own lawsuit, the Curry Farm Intervenors are attempting to enter a settlement negotiated by other parties and catch a windfall from this litigation. Here, "granting intervention will not promote a resolution of the present lawsuit—and may inhibit it[.]" *Enon Sand & Gravel, LLC v. Clark Cty. Bd. of Comm'rs*, No. 3:17-cv-324, 2018 U.S. Dist. LEXIS 73867, at *25 (S.D. Ohio May 2, 2018). The Curry Farm Intervenors' motivations are laid bare through the "Proposed Consent Decree Language Concerning Curry Farm Development" attached to their Motion to Intervene. (Doc. 22 Ex. B.) Second, it is not yet known whether the referendum petition concerning the Curry Farm Intervenors' property will be voted upon next year. Thus, the Curry Farm Intervenors are, procedurally, in a much different situation than the Plaintiffs, whom have already had their respective referendums voted upon.

Because the Curry Farm Intervenors' motion is not timely, it should be denied.

**2. The Curry Farm Intervenors do not have a substantial legal interest in this case.**

Additionally, the Curry Farm Intervenors cannot establish a "substantial legal interest" in this case. Establishing a substantial interest in a given case is "necessarily fact-specific," *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007), as "there is no clearly established definition of what interests justify intervention under Rule 24(a)." *Al-Menhali v. Marriott Int'l, Inc.*, No. 1:17 CV 1089, 2019 U.S. Dist. LEXIS 150566, at *9 (N.D. Ohio Sep. 4,

9

2019).

The Curry Farm Intervenors summarily state, without support, that because their "claims are nearly identical to those of the Plaintiffs to the Underlying Lawsuit" they "have a substantial legal interest in having their claims decided in tandem with the similar claims in the Underlying Lawsuit[.]"  (Doc. 22 at 8.)  But the Curry Farm Intervenors fail to explain why having their claims "decided in tandem" qualifies as a substantial interest.  Indeed, they fail to acknowledge that the Underlying Lawsuit involves property *they do not own*.  Plaintiffs are not raising facial constitutional challenges to Jerome Township's actions, but as-applied constitutional challenges. In other words, claims at issue in this litigation are specific to the Plaintiffs' properties and the Plaintiffs' Developments.  The Curry Farm is not at issue and thus they do not have a substantial legal interest.  *See Al-Menhali v. Marriott Int'l, Inc.*, No. 1:17 CV 1089, 2019 U.S. Dist. LEXIS 150566, at *9 (N.D. Ohio Sep. 4, 2019) ("to warrant intervention under Rule 24(a), a potential intervenor 'must have a direct and substantial interest in the litigation,' such that it is a 'real party in interest in the transaction which is the subject of the proceeding'" (quoting *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371-72 (6th Cir. 2014)).  Additionally, as noted above, the Curry Farm Intervenors' interest is contingent upon future events.  "This type of contingent interest lacks a sufficient nexus to the subject matter of the litigation, and therefore fails to satisfy the requirements of intervention as of right."  *Id.* at *10-11.

### 3. The Curry Farm Intervenors fail to identify a cognizable interest that will be impaired absent intervention.

The Curry Farm Intervenors have not, and cannot, show that they have a substantial legal interest that will be impaired if intervention is denied.  Because they have failed to articulate the existence of a substantial legal interest in the subject matter of this litigation, it necessarily follows

10

that the Curry Farm Intervenors cannot demonstrate the impairment of any interest.

Nevertheless, "[a] proposed intervenor can establish impairment by showing that a judgment adverse to its interest in the main action would preclude its claims in a separate future litigation." *Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-cv-753, 2019 U.S. Dist. LEXIS 78771, at *27-28 (S.D. Ohio May 9, 2019). But the Curry Farm Intervenors have failed to make this showing. The Curry Farm Intervenors claim that their "ability to settle their claims with Defendant Jerome Township will be significantly impaired if the Curry Farm Intervenors cannot intervene in the Underlying Lawsuit." (Doc. 22 at 8.) Yet they provide no evidence or explanation for why that would be true. Similarly, the Curry Farm Intervenors allege that they can only "fully protect their interests in settlement negotiations with Defendant Jerome Township if the Curry Farm Intervenors are on equal footing with the Plaintiffs in the Underlying Lawsuit." (*Id.*) Again, the Curry Farm Intervenors fail to elaborate or explain why this is the case, and thus have not met their burden of proof. *See Breech v. Liberty Mut. Fire Ins. Co.*, No. 2:15-cv-2633, 2015 U.S. Dist. LEXIS 151800, at *6 (S.D. Ohio Nov. 9, 2015) (finding that movant had not met its burden).

In any event, the proposed consent decree does not bind any of the Curry Farm Intervenors' rights. Indeed, a settlement between Plaintiffs and the Township will have no effect on the Curry Farm Intervenors' "ability to protect its interest." *Id.* The Curry Farm Intervenors remain free to pursue a lawsuit on their own behalf and may seek the exact same relief.

### 4. The Curry Farm Intervenors fail to establish inadequate representation.

Finally, the Curry Farm Intervenors have failed to meet their burden to establish inadequate representation. *See Purnell v. Akron*, 925 F.2d 941, 949 (6th Cir. 1991) ("[P]roposed intervenors bear the burden of demonstrating inadequate representation."). "In determining whether representation is adequate, the Sixth Circuit looks to several factors: (1) whether there is collusion

11

between the representative and the opposing party; (2) whether the representative fails in the fulfillment of its duty; and (3) whether the representative has an interest adverse to the proposed intervenor." *Ohio v. United States Envtl. Prot. Agency*, 313 F.R.D. 65, 68-69 (S.D. Ohio 2016).

Here, the Curry Farm Intervenors do not address any of the three factors articulated by the courts. Instead, they assert in conclusory fashion that although they "allege similar legal claims," none of the Plaintiffs represent their interest as a provider of single-family homes for rent. (Doc. 22 at 9.) According to the Curry Farm Intervenors, they "have been subject to explicit anti-renter and anti-rental housing animus that has contributed to the Township's misuse of the referendum process[.]" (*Id.*) But the Curry Farm Intervenors fail to explain why this is relevant to the pending litigation or the protection of the Curry Farm Intervenors' interests.[2]

Consequently, the Curry Farm Intervenors are not entitled to intervene as a matter of right.

**B.      The Curry Farm Intervenors Are Not Entitled to Permissive Intervention.**

Permissive intervention under Fed. R. Civ. P. 24(b)(1) permits a court to exercise its discretion to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." "If the motion is timely and there is at least one common question of law or fact, the Court considers whether intervention would cause undue delay or prejudice to the original parties, and any other relevant factors." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 U.S. Dist. LEXIS 211324, at *5 (S.D. Ohio Dec. 9, 2019).

Here, the Curry Farm Intervenors are not entitled to permissive intervention under Rule 24(b)(1). As set forth above, the Curry Farm Intervenors' motion is not timely. *Supra* Sec. II.A.1.

---

[2] Rather, this argument only highlights the difference between the Curry Farm Intervenors' alleged interests and issues in their case versus Plaintiffs' interests and issues in the underlying litigation.

Additionally, as set forth above, intervention would cause undue delay and prejudice to the original parties.  *See Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 211324, at *14 ("Even if there is a common question of law or fact, the risk of delay and prejudice counsel against permissive intervention in this case.").  The Curry Farm Intervenors' request for permissive intervention should therefore be denied.

## III.    CONCLUSION

For the foregoing reasons, the Curry Farm Intervenors' Motion to Intervene should be denied.

Respectfully submitted,

/s/ *Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone:  (614) 464-6400
Fax:  (614) 719-4630
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on this 15th day of December, 2021.

/s/ *Elizabeth S. Alexander*
Elizabeth S. Alexander