UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Craig D. Scott, Trustee of <br> The Craig D. Scott Revocable Trust, et al., | : <br> : <br> : | |
| Plaintiffs, | : <br> : | Case No. 2:21-cv-03993 |
| v. | : <br> : | Judge Michael H. Watson |
| Jerome Township, Ohio, | : <br> : <br> : | Chief Magistrate Judge <br> Elizabeth A. Preston Deavers |
| Defendant. | : | |

### ROBERT G. CHAPMAN & LYNDA L. CHAPMAN'S MOTION TO INTERVENE

Pursuant to Fed. R. Civ. P. 24(a), or in the alternative Fed. R. Civ. P. 24(b), Robert G. Chapman and Lynda L. Chapman (hereinafter "Chapmans" or "Intervenors"), through their undersigned counsel of record, hereby moves this Court for an Order granting them leave to intervene in this case as a matter of right, or a matter of permissive intervention, in order to protect their property interests and in opposition to a proposed Consent Decree.

A Memorandum in Support is attached hereto and in support of the Chapman's Motion to Intervene.

Respectfully submitted,

DYAS LAW LLC

/s/ Charles R. Dyas, Jr.
Charles R. Dyas, Jr., Esq.    (0034369)
cdyas@cdyaslaw.com
**DYAS LAW LLC**
P.O. Box 991
Marysville, Ohio 43040
Telephone:    614/499-5134
Facsimile:    937/347-3431
*Attorney for Intervenors*
*Robert G. Chapman and Lynda L. Chapman*

1

## MEMORANDUM IN SUPPORT

I. **INTRODUCTION.**

On July 23, 2021 Plaintiff's filed a Complaint for Declaratory Judgment, Permanent Injunction, and Compensatory Damages against Defendant, Jerome Township, Ohio. The basic premise of Plaintiff's allegations, as set forth in their Complaint, is the Township, by exercising its statutory duties, deprived the Plaintiffs of their Federal and Ohio Constitutional rights. (ECF. No. 1). Plaintiff's filed a First Amended Complaint on August 20, 2021(ECF. No. 12). Defendant Jerome Township filed a Motion to Dismiss for Failure to State a Claim on September 7, 2021. (ECF. No. 13).

On December 14, 2021 Plaintiff's filed Notice of a Proposed Settlement with attached Exhibits including a proposed Consent Decree (ECF. No. 25). The proposed settlement and Consent Decree is scheduled for a public hearing before the Defendants on December 20, 2021.

Intervenors, the Chapmans reside at 8343 McKitrick Road, Plain City Ohio, Jerome Township. The Chapmans property is directly adjacent to and abuts the property owned by Plaintiff Wicked Chicken LLC (hereinafter "Wicked Chicken"). The Chapmans will be directly affected by the terms and conditions of the proposed Consent Decree by allowing Wicked Chicken to develop the property next to Chapmans without regard to any of the Chapmans property rights. The proposed Consent Decree not only disparages the Chapmans and the residents of Jerome Township but further takes away their statutory rights to exercise the ability to present a referendum or any other objection to future development or subsequent applications within Jerome Township by Plaintiffs. The proposed Consent Decree further imposes future financial assessments against the Chapmans and other Township residents for any future development by

the Plaintiffs or other developers. Chapmans contend that the proposed Consent Decree fails to meet the standard set forth in Ohio Revised Coded ("ORC") Section 505.07 that require that any settlement agreement is **fair and reasonable and proper notice has been made.**

## II. LAW AND ARGUMENT

### A. Standard for Intervention.

Intervenors respectfully move the Court for intervention by right pursuant to Fed. R. Civ. P. 24(a), or in the alternative Fed. R. Civ. P. 24(b) for permissive intervention. The Intervenors meet the standards for intervention.

Fed. R. Civ. P. 24(a) allows a non-party to intervene by right when "it stands to have its interests harmed" by the case. *Glancy v. Taubman Centers, Inc.*, 373 F. 3d 656, 670 n.13 (6th Cir. 2004). The Sixth Circuit has held that Rule 24 should be "broadly construed in favor of potential intervenors." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, (6th Circuit 2007). Pursuant to that policy in favor of intervention, "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Grutter v. Bollinger*, 188 F.3d 394, (6th Circuit 1999). A proposed intervener must establish four factors in order to intervene by right:

> (1) The motion to intervene is timely; (2) the proposed intervener has a substantial legal interest in the subject matter of the case; (3) the proposed intervenors ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervenors

*Granholm*, 501 F.3d at 779.

Permissive intervention under Rule 24(b) provides, "on timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) therefore "grants the

3

district court discretionary power to permit intervention if the motion is timely … and applicant's claim or defense and the main action have a question of law or fact in common," *Purnell v. Akron*, 925 F.2d 941, (6th Circuit 1991). When considering permissive intervention, the Court should consider whether "the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" *Id* at 951.

As reflected by the following facts and argument Intervenors meet the standard for intervention by right set forth in Fed. R. Civ. P. 24(a), and should be allowed to intervene in this case to protect their property rights and interests.

**B. The Motion to Intervene is Timely.**

In the instant case Intervenors Motion to Intervene is timely under settled 6th Circuit precedent. Courts evaluate timeliness using five factors, while recognizing that "the determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances …" *United States v. Tennessee* 260 F. 3d 587, (6th Circuit 2001). Those five factors are:

(1) the point to which the suit has progressed;

(2) the purpose for which intervention is sought;

(3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case;

(4) the prejudice to the original parties due to the proposed intervenors failure, after he or she knew or reasonably should have known of his interest in the case, to apply properly for intervention; and

(5) the existence of unusual circumstances militating against or in favor of intervention.

*Id*.

In this case the initial Complaint was filed in July 2021 and the Amended Complaint was filed at the end of August 2021. Defendants filed a Motion to Dismiss in October 2021. Plaintiff has not filed a Response to the Motion to Dismiss. There has been no discovery in this matter that Intervenors are aware of. This case has not proceeded beyond the initial stages and a Case Management Order has not been issued by this Court. This Motion to Intervene will not materially disrupt the litigation in this case, or prejudice the Parties, but will allow for more transparency.

In light of Plaintiff's filing a Notice of a Proposed Settlement on December 14, 2021 with the attached Consent Decree, Intervenors were made more fully aware of the Plaintiff's efforts to undermine Intervenors property rights and interest, so this Motion is timely to allow Intervenors to object to the terms and conditions of the proposed Consent Decree.

Intervenors Motion is timely under the circumstances of this case.

### C. Intervenors Meet the Standard for Intervention by Right.

Intervenors meet the remaining legal requirements for intervention by right pursuant to Fed. R. Civ. P. 24(a). Intervenors have a substantial legal interest in the subject matter of this case, that interest is not adequately represented by the existing Parties and would be impaired by the relief the Parties seek by entering into the proposed Consent Decree.

Intervenors residential property is directly adjacent to and abuts the property owned by Plaintiff Wicked Chicken and proposed for redevelopment on Twenty-four (24) acres of land (See ECF Doc. 1 at page 30 - 37). The proposed redevelopment will increase the traffic on McKitrick Road, develop the property by building Forty (40) homes or approximately Two (2) homes per acre, thereby creating a high density housing development. Wicked Chickens' development plan as adopted pursuant to the proposed Consent Decree not only does not make any revisions from the original plan submitted to Defendants and rejected by the residents referendum, but also fails

to provide for any natural vegetation or earthen barrier or screen between Intervenors property and the development.

In addition, as reflected in both Plaintiff's Complaint and the proposed Consent Decree, there is a consistent theme of disparagement against the Intervenors, and other Township residents, who exercised their statutory rights to place a referendum on the ballot to overturn the Defendants zoning decisions in support of the Plaintiffs development plans. As set forth in ECF Doc No. 1, Plaintiffs state: "a few organized and vocal individuals in the township have hijacked the zoning process to stop new homes from being built purportedly to keep the township "rural." In reality, they want to keep everyone else's undeveloped land in the township as greenspace." As set forth in paragraph 4 of the proposed Consent Decree Plaintiffs state: "through an arbitrary, capricious, unreasonable, and unconstitutional scheme, a few organized and vocal individuals in the Township have hijacked the zoning process to stop new homes from being built purportedly to keep the township "rural", but in reality, want to permanently regulate undeveloped land as open space."

Undoubtedly Intervenors, and Township residents, actions in exercising their statutory rights to have a referendum placed on the ballot leading to a vote of the Township residents to block the Plaintiffs developments, by over 70% of the voters, does not constitute "hijacking the zoning process" but their right as citizens to oppose the actions of the Defendants. Plaintiffs assertions against Intervenors and the Township residents does not reflect a fair and reasonable settlement but a bias solely in favor of Plaintiffs.

In addition, the Plaintiffs proposed Consent Decree purports to negate Intervenors, and the Township residents, from exercising their statutory rights for any future referendum and/or appeals. As reflected in paragraphs 15, 16, 17, and 18 of the proposed Consent Decree each of the Plaintiffs development plans will be approved "**without following the procedures in Ohio**

**Revised Code Section 519.12, and without referendum or appeal**". Essentially denying the statutory right to any resident opposed to any development plan proposed in Jerome Township. The purported language in the proposed Consent Decree does not reflect a fair and reasonable settlement but a bias solely in favor of Plaintiffs.

Paragraph 23 of Plaintiffs proposed Consent Decree also is an attempt to limit Intervenors, and other Township residents, from exercising their statutory right to object to any Subsequent Applications for developments by Plaintiffs and oppose said developments submitted before Defendants for review. The Plaintiffs proposal would essentially require the Defendants to review all subsequent applications by Plaintiff's as "Planned-Unit Developments" pursuant to Ohio Revised Code Section 519.021 and not subject to the required process for zoning amendments set forth in Ohio Revised Code Section 519.12, thus make the law and regulations meaningless for Plaintiffs' current and all future developments.

Paragraph 22 of Plaintiff's proposed Consent Decree further attempts to force Defendants to agree to placing any future commercial development plans, including plans of Plaintiffs, into a Joint Economic Development District ("JEDD"). Plaintiffs efforts to place this provision in the proposed Consent Decree disregards the statutory and regulatory process for the creation and implementation of JEDDs as determined by Union County, the City of Marysville and Jerome Township. This provision in the proposed Consent Decree again does not reflect a fair and reasonable settlement but a bias solely in favor of Plaintiffs.

In light of the bias of the provisions set forth in the proposed Consent Decree, neither Plaintiffs or Defendants adequately represent the interests of the Intervenors, or the approximately 8,500 Township residents, and the proposed Consent Decree cannot be found to be fair and reasonable. Furthermore, as of the date of filing this Motion to Intervene, and despite Plaintiffs

placement of the Public Notices in a newspaper of general circulation, See Exhibits B and C to Plaintiffs Notice of Proposed Settlement, Defendants provided an agenda for the public meeting scheduled for December 20, 2021 on December 17, 2021, Three (3) days before the public hearing. The failure to provide the residents of Jerome Township with an agenda in a timely fashion for the meeting does not reflect adequate notice and this Court should not find that the proposed Consent Decree is fair and reasonable.

### III. CONCLUSION.

Intervenors Motion to Intervene meets the standards required for intervention of right pursuant to Fed. R. Civ. P. 24(a) and should be granted in order to protect their interests as residents of Jerome Township. Plaintiffs efforts to bully the Township residents and steamroll the proposed Consent Decree through the Court requires greater scrutiny and transparency then purported to the Court by the Parties. Allowing the Intervenors the opportunity to object to the terms and conditions of the proposed Consent Decree may lead to a fair and reasonable Settlement, and for the foregoing reasons respectfully requests that this Court grant this Motion to Intervene.

Respectfully submitted,

**DYAS LAW LLC**

/s/ *Charles R. Dyas, Jr.*
Charles R. Dyas, Jr., Esq.     (0034369)
cdyas@cdyaslaw.com
**DYAS LAW LLC**
P.O. Box 991
Marysville, Ohio 43040
Telephone:     614/499-5134
Facsimile:     937/347-3431
*Attorney for Intervenors*
*Robert G. Chapman and Lynda L. Chapman*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been served to the Clerk of Court via CM/ECF, this 17th day of December 2021 and served electronically upon all Parties by and through counsel and the Court's CM/ECF system.

/s/ *Charles R. Dyas, Jr.*
Charles R. Dyas, Jr., Esq.     (0034369)