# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **Craig D. Scott, Trustee of the** | : | |
| **The Craig D. Scott Revocable Trust**, *et al.*, | : | |
| | : | **Case No. 21-CV-03993** |
| Plaintiffs, | : | |
| | : | **Judge Michael H. Watson** |
| v. | : | |
| | : | **Chief Magistrate Judge Deavers** |
| **Jerome Township, Ohio**, | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO ROBERT G. CHAPMAN AND LYNDA L. CHAPMAN'S MOTION TO INTERVENE

Proposed intervenors Robert G. Chapman and Lynda L. Chapman (together, the "Chapmans") belatedly move to intervene as parties. The Chapmans cannot establish the requisite elements to intervene as parties in this case.

The Chapmans' untimely motion to intervene is an improper attempt to block reasonable resolution of this litigation on the eve of a settlement between Plaintiffs and the Township.[1] The Chapmans' purported interests in this litigation as referendum supporters, community members, and neighbors to one of the properties at issue are generalized and speculative interests – not substantial, direct, or legal interests – and are therefore insufficient to support intervention as of right. Moreover, the Chapmans fail to establish that their generalized interests are not adequately represented by the parties in this litigation.

---

[1] Plaintiffs include Craig D. Scott, Trustee of The Craig D. Scott Revocable Trust, Jerry L. Scott, Co-Trustee of The Jerry Lynn Scott Trust, Judith E. Scott, Co-Trustee of the Jerry Lynn Scott Trust, Phillip E. Scott, Co-Trustee of The Scott Family Living Trust U/A/D 09/25/2014, and Mary Susan Scott, Co-Trustee of The Scott Family Living Trust U/A/D 09/25/2014, (collectively, the "Scott Family"), Paul C. Haueisen ("Mr. Haueisen"), T-Bill Development Co., LLC ("T-Bill"), Pulte Homes of Ohio LLC ("Pulte"), The Paragon Building Group, Ltd. ("Paragon"), Walbonns LLC ("Walbonns"), Wicked Chicken, LLC ("Wicked Chicken"), and Jerome Village Company, LLC ("JVC") (all together, "Plaintiffs").

The Chapmans are not entitled to intervene under Rule 24(a) and should not be permitted to intervene under Rule 24(b). The Chapmans' motion should therefore be denied.

I.    **BACKGROUND**

    **A.    Plaintiffs' Properties and Developments in the Underlying Litigation.**

Plaintiffs are landowners and developers who filed suit in this Court, alleging that the Township, through misuse of the referendum process, prevented Plaintiffs from developing their properties (the "Properties"). (Doc. 12 ¶¶ 7-14, 54-60.) Specifically, Plaintiffs allege that the Township misused the referendum process to delay and ultimately block Plaintiffs from developing residential communities known as: (1) the Homestead at Scotts Farm; (2) Rolling Meadows; (3) the Farm at Indian Run; and (4) the VN-10 Development, a part of Jerome Village and the Eversole Run Master Sewer District (collectively, the "Developments"). (*Id.* ¶¶ 63, 70-71, 118, 150, 189, 228.) Plaintiffs also allege that the Township has and will inevitably continue to delay and prevent land within the Eversole Run Master Sewer District from being developed consistent with the Township's Comprehensive Plan. (*Id.* ¶¶ 217-228.)

Each of the Plaintiffs' planned developments complied with the Township Zoning Resolution and the Township's Comprehensive Plan. (*Id.* ¶¶ 64, 82, 121, 155, 189.) In all of Plaintiffs' cases, Township officials approved Plaintiffs' applications to rezone their Properties from Rural Residential ("RU") to Planned Development District ("PD") (the "Rezonings") and approved the proposed development plans for the Properties (the "Original Development Plans"):

    a.  Plaintiffs the Scott Family, T-Bill, and Pulte (collectively, "Scott Plaintiffs") sought to rezone approximately 139.34 acres of land on the south side of Brock Road (the "Scott Properties") in the Township from RU to PD in order to develop a 248 single-family home planned development known as the Homestead at Scotts Farm. On May 5, 2021,

the Jerome Township Board of Trustees ("Board of Trustees" or "Trustees") approved the rezoning of the Scott Properties and the development plan for the Homestead at Scotts Farm. (*Id.* ¶¶ 71-87, 94-108.)

b. Plaintiffs Paragon, Walbonns, and Mr. Haueisen (collectively, "Paragon Plaintiffs") sought to rezone approximately 210 acres of land located on Industrial Parkway (the "Paragon Property") in the Township from RU to PD in order to develop the Paragon Property as a 378 single-family home planned development known as Rolling Meadows. On July 2, 2019, the Trustees approved the rezoning of the Paragon Property and the development plan for Rolling Meadows. (*Id.* ¶¶ 118-23, 134-38.)

c. Plaintiff Wicked Chicken sought to rezone approximately 24.73 acres of land located on the south side of McKitrick Road (the "Caldwell Property") in the Township from RU to PD to develop the Caldwell Property as a 40 single-family home planned conservation development known as the Farm at Indian Run. On August 18, 2020, the Trustees approved the rezoning of the Caldwell Property and the development plan for the Farm at Indian Run. (*Id.* ¶¶ 150-58, 167-77.)

d. Plaintiff JVC sought to rezone approximately 69.59 acres of land located on the south side of Blaney Road (the "VN-10 Property") in the Township and in the Eversole Run Master Sewer District from RU to PD to develop the VN-10 Property as a 149 single-family home planned development known as the VN-10 Development. On July 6, 2021, the Trustees approved JVC's application to rezone the VN-10 Property and the development plan for the VN-10 Development. (*Id.* ¶¶ 190-96, 205-10.)

In each instance, Plaintiffs' Developments were arbitrarily denied regardless of whether the residential development satisfies the Comprehensive Plan through the misuse of the referendum

process. (*Id.* ¶¶ 7-8, 54-69.)

**B.    The Litigation and Settlement Efforts.**

The Township is legally responsible for the deprivation of Plaintiffs' constitutional rights whether the deprivation occurs "by referendum or otherwise." (Doc. 12 ¶ 14.) As such, the Township's illegal and unconstitutional referendum scheme has cost Plaintiffs millions of dollars in damages. (*Id.*) As a result, Plaintiffs filed their Complaint against the Township on July 23, 2021 (Doc. 1), and filed an Amended Complaint on August 20, 2021 (Doc. 12), alleging claims arising from the application of the illegal referendum scheme to Plaintiffs' properties and Developments. The Township filed a motion to dismiss for failure to state a claim on September 7, 2021. (Doc. 13.)

Since that time, the parties have participated in lengthy settlement discussions that have continued for several months. As a result, the parties have reached a proposed settlement to resolve this litigation pursuant to Ohio Rev. Code § 505.07 by rezoning certain land and approving certain negotiated terms, development plans, and regulation text.

On December 3 and 4, 2021, the Township published notice in the Marysville Tribune that the Trustees would hold a public meeting on December 20, 2021, to consider the proposed consent decree pursuant to Ohio Rev. Code § 505.07. (Doc. 25 p. 3; *see also* Ex. B, Affidavit of Publication.) On December 7, 2021, Plaintiffs published notice in the Marysville Tribune that the Parties intended to jointly file a proposed consent decree with this Court to settle the litigation. (Doc. 25 pp. 3-4; *see also* Ex. C, Affidavit of Publication.) Plaintiffs and the Township filed a Joint Notice of Proposed Settlement on December 14, 2021. (*See* Doc. 25.) In the event the Trustees' approve the proposed consent decree on December 20, 2021, the parties will submit the approved consent decree to the Court for its review and consideration thereafter.

### C.     The Chapmans' Property Is Not Involved in the Underlying Action.

The Chapmans' property is not at issue in this litigation, nor is it the subject of the proposed consent decree.  The Chapmans state that their property is adjacent to the Caldwell Property.  (Doc. 30 p. 2.)  However, the Chapmans do not claim that their property is adjacent to or near any of the other Properties or Developments at issue.  (*See id.*)

## II.     LAW AND ARGUMENT

The Chapmans move to intervene as a matter as of right under Fed. R. Civ. P. 24(a), or, in the alternative, for permissive intervention in this matter under Fed. R. Civ. P. 24(b).  (Doc. 30.) The Chapmans cannot meet either standard for intervention.

### A.     The Chapmans' Motion Failed to Comply with Rule 24(c).

Rule 24(c) requires that "[a] motion to intervene . . . state the grounds for intervention and **be accompanied by a pleading that sets out the claim or defense for which intervention is sought**."  (Emphasis added.)  Under Rule 7, a "pleading" includes a complaint, answer, answer to a counterclaim, answer to a cross claim, third-party complaint, answer to third-party complaint, and a reply to an answer.  While a technical failure to comply with Rule 24(c) alone is not necessarily dispositive of intervention, the failure to attach a pleading to a motion for intervention justifies denial of intervention where the motion also fails to set out the claim or defense for which intervention is sought.  *See Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005) (excusing failure to comply with Rule 24(c) where motion to intervene alleged a claim or defense with a common question of law and fact and proposed intervenor subsequently filed answer).  Proposed intervenors may not "totally ignore the rule, particularly where the original parties in the meantime work out a settlement to their lawsuit."  *Shevlin v. Schewe*, 809 F.2d 447, 450 (7th Cir. 1987).

Here, the Chapmans have failed to comply with the requirements of Rule 24(c) because

they did not file a pleading with their motion to intervene. Moreover, their motion does not remedy the issue because it likewise omits any claim or defense for which intervention is sought. Further, the parties will be prejudiced by the intervention because they are now on the eve of settlement.

### B. The Chapmans Are Not Entitled to Intervene as a Matter of Right.

Intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The parties agree that under Sixth Circuit precedent, the Chapmans must satisfy four factors to intervene as a matter of right: "(1) the motion to intervene must be timely; (2) the proposed intervenor must have a direct and substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect their interest may be impaired in the absence of intervention; and (4) the parties already before the court cannot adequately protect the proposed intervener's interest." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007). "The proposed intervenor must prove each of the four factors; failure to meet one of the criteria will require that the motion to intervene be denied." *Ruggles v. Bulkmatic Transp. Co.*, No. 2:03-cv-00617, 2007 U.S. Dist. LEXIS 14345, at *3 (S.D. Ohio Feb. 7, 2007) (quotation omitted). The Chapmans cannot establish any of the elements of intervention as a matter of right.

### 1. The Chapmans' motion is not timely.

As this Court has held, "[t]he purpose of the 'timeliness inquiry is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal.'" *S. H. v. Stickrath*, 251 F.R.D. 293, 297 (S.D. Ohio 2008) (citing *United States v. BASF-Inmont Corp.*, No. 93-1807, 1995 U.S. App. LEXIS 9158, 1995 WL 234648, at *2 (6th Cir. 1995)). There is no bright-line rule to

determine timeliness.  *Id.*  Rather, a court must take into account all of the relevant circumstances, including:

> (1) the point to which the litigation has progressed; (2) the purpose for which intervention is sought; (3) the length of time prior to the motion to intervene during which the proposed intervenor had constructive knowledge of its interest in the case; (4) any prejudice to the other parties due to the proposed intervenor's potential lack of timeliness; and (5) the existence of any unusual mitigating circumstances.

*Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990).  Here, all five factors for determining timeliness align against intervention.

*First*, the Chapmans make the same mistake as the Curry Farm Intervenors (*see* Doc. 22) and focus on the length of time since the filing of this action.  (Doc. 30 p. 5.)  But the correct inquiry is not "time between the filing of the complaint and the motion to intervene," *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 F. App'x 782, 786 (6th Cir. 2004) (internal citation omitted), but rather "[t]he relevant consideration is the *stage of the proceedings*." *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 377 (N.D. Ohio 2021) (emphasis added).  Here, the lawsuit is nearly resolved.  The Township Trustees are set to vote on the proposed consent decree on December 20, 2021, and, if approved, the only remaining step in this litigation will be for the parties to submit the consent decree to the Court for its review and consideration.  *See Stickrath*, 251 F.R.D. at 299 (holding that motion for intervention filed just two weeks before parties finalized a settlement agreement was "very late in the proceedings").

*Second*, the Chapmans fail even to identify or discuss the purpose for which intervention is sought and how that relates to the timeliness inquiry.  Throughout the motion, though, it appears that the Chapmans' sole purpose of intervention is to block the settlement under Ohio Rev. Code § 505.07.  Yet, Section 505.07 expressly permits the Plaintiffs and the Township to settle this action through a consent decree and Ohio law does not allow an intervenor to prevent the parties

from doing so.  *See State ex rel. Republic Servs. of Ohio II v. Bd. of Twp. Trs.*, 2007-Ohio2086, ¶ 65 (Ohio Ct. App.) (holding that intervenor "does not have power to block [the] decree merely by withholding its consent").

*Third*, the Chapmans have known that this case implicated their purported "interests" from the inception of this litigation.  Not only do the Chapmans concede that they were involved with the original referendum of the Caldwell Property and were therefore aware of this zoning dispute from its inception, but they likewise concede that notice of the settlement was placed in a newspaper of general circulation on December 3, 2021.  Moreover, according to her social media posts, Lynda Chapman was aware of the proposed settlement on December 2, 2021.[2]  (Decl. of Lauren Swander (attached hereto as Ex. 1) at Ex. B.)  Thus, the Chapmans' argument that it was not until December 14, 2021 that they were "made more fully aware" of their purported property rights and interest at issue in this litigation, is disingenuous at best.

*Fourth*, the Chapmans summarily state that their motion to intervene "will not materially disrupt the litigation in this case, or prejudice the Parties, but will allow for more transparency." (Doc. 30 p. 5.)  It is not clear what transparency the Chapmans are referring to, as the proposed consent decree was publicly filed and published as required by Section 505.07, and the Township is holding a public meeting on the proposed consent decree on December 20, 2021 where the Chapmans may attend and voice their opinions.  Regardless, the Chapmans' proposed intervention would be plainly prejudicial to the parties due to the timing, as the Chapmans seek to "derail a painstakingly negotiated agreement at the last minute."  *See Stickrath*, 251 F.R.D. at 303 (proposed

---

[2] The Chapmans' complaint that the Township's meeting "agenda" was not provided earlier is irrelevant and misleading. (Doc. 30 p. 8.)  There is no requirement in Ohio Rev. Code § 505.07 for the Township to publish a meeting "agenda."  Moreover, the Chapmans' argument is undermined by the Chapmans' actual knowledge of the public meeting on the proposed consent decree well before the December 20, 2021 public meeting.

intervenor's attempt to "halt [settlement negotiations] at the last minute" was "plainly prejudicial to the parties" and "weighed strongly against intervention").

*Finally*, there are two unusual circumstances weighing against intervention. First, the Chapmans are ignoring the processes and procedures that exist for concerned citizens, like themselves, to make their opinions known. Pursuant to Ohio Rev. Code § 505.07, members of the public have the opportunity to voice their concerns about the proposed consent decree at the public meeting on December 20, 2021. That is the appropriate time and place for the Chapmans to voice any concerns. Second, it cannot be the case that any concerned citizen who is unhappy with a proposed consent decree can then intervene in a federal lawsuit when they have no property or legal interests at stake. This would unnecessarily increase the cost of litigation, lead to substantial delays, and may inhibit the resolution of this lawsuit. *See Enon Sand & Gravel, LLC v. Clark Cty. Bd. of Comm'rs*, No. 3:17-cv-324, 2018 U.S. Dist. LEXIS 73867, at *26 (S.D. Ohio May 2, 2018) ("Given the large amount of property owned by Plaintiff[s], the potential for other adjacent landowners intervening is great and this could lead to substantial delays while matters detached from the main action are explored.").

Because the Chapmans' motion is not timely, it should be denied.

**2.  The Chapmans do not have a substantial legal interest in this case.**

The Chapmans erroneously claim that they have an interest in this litigation for three reasons. However, none of the Chapmans' proffered generalized interests are sufficient to establish a "substantial legal interest" for purposes of intervention.

The Chapmans' first claim that they have a right to intervene simply because their property "is directly adjacent to and abuts the property owned by Plaintiff Wicked Chicken[.]"  (Doc. 30 p.

5.)[3]  But the Chapmans fail to cite to any case law that suggests this articulated interest would qualify as a substantial legal interest for the purpose of intervention.  Instead, case law shows that nearby property owners do not automatically have a "substantial legal interest" in zoning disputes. For example, in *Nextel W. Corporation v. Twp. of Scio*, the proposed intervenors "allege[d that] they are local property owners who have a legally protectable interest in this litigation because the construction of the [cell phone] tower will lower their property values, destroy wooded areas, and adversely affect the environment in the surrounding area."  No. 07-11159, 2007 U.S. Dist. LEXIS 58863, at *5 (E.D. Mich. Aug. 13, 2007).  The court held that "[t]hese allegations are economic interests involving their own properties in the Township and do not rise to a legally protectable interest to justify intervention."[4]  *Id.*

Second, the Chapmans suggest that they have an interest in this litigation and proposed consent decree because they "exercised their statutory rights to place a referendum on the ballot to overturn the Defendants['] zoning decisions in support of the Plaintiffs['] development plans." (Doc. 30 p. 6.)  Yet, as the Sixth Circuit has already held, "[a]ny substantial legal interest held by the duly authorized committee for a referendum which circulated the referendum petitions" – let alone an elector who voted on the referendum – "was terminated when the referendum was held

---

[3]  The Chapmans' characterization of the Farm at Indian Run as some "high density housing development" is false. (Doc. 30 p. 5.) Developments with densities "ranging between 3 and 6 dwelling units per acre" are "Higher Density Residential." Comprehensive Plan pp. 6-7, available:  https://jerometownship.us/wp-content/uploads/2021/10/Jerome-Comprehensive-Plan-as-adopted-10-14-08_compressed.pdf.  The Farm at Indian Run has less than 2 units per acre.

[4]  *See also New Par v. Lake Twp.*, No. 5:06-CV-115, 2007 U.S. Dist. LEXIS 2656, at *14 (W.D. Mich. Jan. 12, 2007) ("the potential decrease in property value that [neighboring property owner] may suffer is not a sufficient legal interest" to permit intervention); *Enon Sand & Gravel, LLC v. Clark Cty. Bd. of Comm'rs*, No. 3:17-cv-324, 2018 U.S. Dist. LEXIS 73867, at *23-24 (S.D. Ohio May 2, 2018) (denying motion to intervene where adjacent landowner claimed his property value would decrease as a result of the zoning change).

and the results certified." *Providence Baptist Church*, 425 F.3d at 317 (emphasis added). *See also Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997). A referendum committee's advocacy in "getting the zoning ordinance on the November . . . ballot does not suffice to make it a 'real party in interest in the transaction which is the subject of the proceeding' – the negotiated settlement" between the property owners and the Township. *Providence Baptist Church*, 425 F.3d at 317. "Rather, its interest in the negotiated settlement is so generalized it will not support a claim for intervention of right." *Id.* (Quotations and citation omitted.).

Third, the Chapmans claim that the proposed settlement negates the Township residents' future interest in the creation of a Joint Economic Development District ("JEDD"). (Doc. 30 pp. 6-7.) As the Sixth Circuit has held, however, a "general ideological interest" in the creation or enforcement of laws, is "so generalized [that it] will not support a claim for intervention as of right." *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 783 (6th Cir. 2007). "Without these sorts of limitations of the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Id.* (internal citation omitted). The Chapmans omit that there is already a "City of Marysville-Jerome Township Joint Economic Development District" in place. (*See* Doc. 25-1 ¶ 22.) The proposed consent decree merely requires the Township to take the steps necessary to add future commercial uses into that existing JEDD or to another substantially similar JEDD so that commercial users are treated similarly. (*Id.*) The Chapmans do not claim to own any commercial property or commercial uses in the Township. (*See* Doc. 30.) The Chapmans' JEDD-related concerns, are therefore general interests that do not constitute "substantial legal interests" for purposes of intervention.

At base, the Chapmans have failed to show a "'direct and substantial interest in the litigation,'" such that it is a 'real party in interest in the transaction which is the subject of the

proceeding.'" *See Al-Menhali v. Marriott Int'l, Inc.*, No. 1:17 CV 1089, 2019 U.S. Dist. LEXIS 150566, at *9 (N.D. Ohio Sep. 4, 2019) (quoting *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x 369, 371-72 (6th Cir. 2014)). Accordingly, the Chapmans' motion should be denied.

### 3. The Chapmans fail to identify a cognizable interest that will be impaired absent intervention.

As set forth above, the Chapmans have not shown what cognizable interest will be impaired if intervention is denied. Because they have failed to articulate the existence of a substantial legal interest in the subject matter of this litigation, it necessarily follows that the Chapmans cannot demonstrate the impairment of any interest. *See Breech v. Liberty Mut. Fire Ins. Co.*, No. 2:15-cv-2633, 2015 U.S. Dist. LEXIS 151800, at *6 (S.D. Ohio Nov. 9, 2015) (finding that movant had not met its burden). Even if the Court assumes that the Chapmans' purported interests constitute "substantial legal interests," however, the Chapmans have failed to establish that such interests will be impaired absent intervention.

First, the Chapmans' purported interest in this litigation as a neighbor to the Caldwell Property will not be impaired by the proposed consent decree. The Chapmans fail to identify a specific harm caused by the Farm at Indian Run. While the Chapmans claim that the Farm at Indian Run will "increase the traffic on McKitrick Road," (Doc. 30 pp. 5-6), the increase in traffic is a generalized concern of all nearby property owners and does not specifically impair the Chapmans' property interests. Further, the Chapmans contend that the Farm at Indian Run "fails to provide for any natural vegetation or earthen barrier or screen between [their] property and the development." (*Id.*) The Chapmans' contention is false. The Chapmans purportedly own a portion of the property located along the eastern side of the Farm at Indian Run which is separated by a wooded area that buffers lots 27 through 34 from the Chapmans' property:



(Doc. 25-1 at PAGEID 356.)  Additionally, the proposed consent decree expressly requires that this very area be designated as a "No-Build Area and Tree Preservation Area" that is binding upon the future homeowners of Lots 27 through 34:

> No-Build Area and Tree Preservation Area: There shall be established **a no-build area and tree preservation area for the purpose of preserving the existing vegetation, trees, and landscape features in their natural state within the twenty-five foot (25') area measured to the interior of the Lot from the rear Lot line of Lots 27 through 34, as shown on the Zoning Site Plan**. No Structure, Building, pavement, or Off-Street Parking Space of any kind shall be constructed, allowed, or permitted to exist in the no-build area and tree preservation area. Notwithstanding the above, (i) **Property Owner and Property Owner's successors and assigns, shall maintain all trees and vegetation** according to good forestry practice and take reasonable action including, but not limited to, treatment for infectious pests, removal of diseased and/or dead trees, and remediation of dangerous conditions; and (ii) Property Owner, and Property Owner's successors and assigns, shall have the right to run utility lines, including storm water, only if necessary, through the area of the no-build area and tree preservation area, if that is the only commercially reasonable and feasible location to run such utility lines and only to the minimal extent necessary, so as to preserve the existing vegetation, trees, and landscape features to the maximum extent possible. This no-build area and tree preservation area shall be designated as such on the final plat.

(*Id.* at PAGEID 352 (Emphasis added.).)  Contrary to the Chapmans' contention, their concern is expressly addressed by the proposed consent decree.  The Chapmans' purported interests will therefore be protected – not impaired – by the preservation of this wooded area.

Second, the Chapmans' alleged interest in the referendum process has not been impaired by this litigation or the proposed settlement.[5] The Ohio General Assembly codified a citizen's ability to pursue a referendum in Ohio Rev. Code § 519.12. However, the Ohio General Assembly likewise codified the Township's right to resolve litigation by rezoning property and approving a development plan notwithstanding the referendum process under Section 519.12. Ohio Rev. Code § 505.07. Therefore, the Chapmans' interest in the referendum process and subsequent result was expressly limited by the Township's right to settle litigation and is not impaired by the proposed settlement here.

Third, the Chapmans' alleged interest in the creation of a JEDD has not been impaired. The Chapmans have not identified *any* harm that they will face as a result of the preexisting JEDD, nor do the Chapmans allege that they would have somehow opposed the JEDD had it been created through some other "statutory and regulatory process." (Doc. 30 p. 7.) In fact, the JEDD will benefit – and already benefits – the Chapmans and all Township residents by increasing tax revenue to the Township.

For these reasons, the Chapmans cannot establish that they have a substantial legal interest that will be impaired absent intervention.

---

[5] The Chapmans also complain that they will be prevented "from exercising their statutory right" under Ohio Rev. Code § 519.12 to object to the plans, permits, plats, or other approvals necessary for Plaintiffs to develop, construct, complete, or occupy their Developments. (Doc. 30 p. 7.) This argument, however, conflates Ohio zoning law. Ohio Rev. Code § 519.12, by its plain terms, relates only to the legislative zoning of land. The subsequent approvals the Chapmans identify are not subject to referendum under Ohio law. *See* Ohio Rev. Code § 519.021; S*tate ex rel. Comm. for the Referendum of Ordinance No. 3844-02 v. Norris*, 2003-Ohio-3887, ¶ 32, 99 Ohio St. 3d 336, 342, 792 N.E.2d 186, 191 ("[W]here specific property is already zoned as a [planned unit development], approval of subsequent development as being in compliance with the existing [planned unit development] standards is an administrative act which is not subject to referendum." (Internal citation omitted.)).

**4. The Chapmans fail to establish inadequate representation.**

Finally, the Chapmans have failed to meet their burden to establish inadequate representation. *See Purnell v. Akron*, 925 F.2d 941, 949 (6th Cir. 1991) ("[P]roposed intervenors bear the burden of demonstrating inadequate representation."). "In determining whether representation is adequate, the Sixth Circuit looks to several factors: (1) whether there is collusion between the representative and the opposing party; (2) whether the representative fails in the fulfillment of its duty; and (3) whether the representative has an interest adverse to the proposed intervenor." *Ohio v. United States Envtl. Prot. Agency*, 313 F.R.D. 65, 68-69 (S.D. Ohio 2016).

Here, the Chapmans do not address any of the three factors articulated by the courts. Instead, they state that "[i]n light of the bias of the provisions set forth in the proposed Consent Decree, neither Plaintiffs or Defendants adequately represent their interests." (Doc. 30 p. 7.) However, the Chapmans fail to identify with any specificity how the consent decree – the result of a long-negotiated settlement – is somehow biased against the Chapmans such that their purported interests are not represented by the parties. Moreover, the Chapmans' conclusory statement that the consent decree is biased is not enough to meet their burden to show inadequate representation. Consequently, the Chapmans are not entitled to intervene as a matter of right.

**C. The Chapmans Are Not Entitled to Permissive Intervention.**

Permissive intervention under Fed. R. Civ. P. 24(b)(1) permits a court to exercise its discretion to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." "If the motion is timely and there is at least one common question of law or fact, the Court considers whether intervention would cause undue delay or prejudice to the original parties, and any other relevant factors." *M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-CV-849, 2019 U.S. Dist. LEXIS 211324, at *5 (S.D.

Ohio Dec. 9, 2019).

Here, the Chapmans are not entitled to permissive intervention under Rule 24(b)(1).  As set forth above, the Chapmans' motion is not timely.  *Supra* Sec. II.B.1.  Additionally, as previously explained, intervention would cause undue delay and prejudice to the original parties. *See Wyndham Hotels & Resorts, Inc.*, 2019 U.S. Dist. LEXIS 211324, at *14 ("Even if there is a common question of law or fact, the risk of delay and prejudice counsel against permissive intervention in this case.").  The Chapmans' request for permissive intervention should therefore be denied.

## III.    CONCLUSION

For the foregoing reasons, the Chapmans' Motion to Intervene should be denied.

Respectfully submitted,

/s/ *Joseph R. Miller*
Joseph R. Miller (0068463), *Trial Attorney*
Christopher L. Ingram (0086325)
Elizabeth S. Alexander (0096401)
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone:  (614) 464-6400
Fax:  (614) 719-4630
jrmiller@vorys.com
clingram@vorys.com
esalexander@vorys.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was served electronically through this Court's electronic service system upon all parties and/or counsel of record on this 20th day of December, 2021.

/s/ *Elizabeth S. Alexander*
Elizabeth S. Alexander
