Judge Michael H Watson                                           December 21, 2021
Magistrate Judge Deavers

Objection to pending settlement in Case No. 2:21-cv-3993

As a Jerome Township resident, living in the Jerome Village development, I object to the pending settlement of the suit brought by several land developers against Jerome Township because the proposed consent decree is unfair and unreasonable for the following reasons.

- Plaintiffs claim that their rezonings received unequal treatment, but there was no unequal treatment. Any rezoning of land in Jerome Township is subject to referendum under ORC 519.12 (H). Since every rezoning is governed by ORC 519.12 (H), there is no inequity here. Therefore, this proposed consent decree is unfair and unreasonable.

- Plaintiffs claim that they were deprived the right to use their land for economic benefit. This is false. They were free to use their land under its current Rural Residential zoning classification. They were free to develop their land under its current Rural Residential zoning classification. They were free to sell their land under its current Rural Residential zoning classification. There is no guarantee of entitlement to a zoning change. For this reason, this settlement is unfair and unreasonable.

- Plaintiffs claim that a small vocal group arbitrarily, capriciously, unreasonably, and unconstitutionally hijacked the process. Nothing could be further from the truth. A very large majority of voters turned down these rezonings following Ohio law of referendum, ORC 519.12 (H). Two of these referendums were challenged for validity with the Union County Board of Elections who determined they were valid. Following that determination of the Board of Elections, the referendums where then challenged in the Ohio Supreme Court where they were found to be valid as well in unanimous decisions.
    - State ex rel. Barney v. Union Cty. Bd. of Elections, 159 Ohio St.3d 50, 2019-Ohio-4277
    - State ex rel. T-Bill Dev. Co., L.L.C. v. Union Cty. Bd. of Elections, Slip Opinion No. 2021-Ohio-3535
  If any hijacking of the process is happening here it seems as though it is being perpetrated by the plaintiffs who appear to be upset that they didn't get their way and now choose to sue the Township for a large sum in order to overturn the results of recent elections which saw their rezoning voted down. It is unfair and unreasonable to settle this suit in a way that sets the precedent for any developer who doesn't get their way to simply sue the township to overturn legitimate election results.

- The contributions from Jerome Village Company to the Township appear to come from the Jerome Village Community Development Authority which is funded through a tax on Jerome Village residents. It is unfair and unreasonable that residents of the Jerome Village neighborhoods should see their tax burden increased to pay even more disproportionately for a fire station and other services that benefit the entire township. The proposed consent decree places an unreasonable penalty on residents of Jerome Village who are taxed by the Jerome Village Community Development Authority.

- It is unfair and unreasonable for this proposed consent decree to put all township land of commercial use into a JEDD. This is completely out of place in this proposed consent decree. None of the land in question here is intended for commercial use. Paragraph 22 of the consent decree, which stipulates that all commercial land shall go into a JEDD, is not reasonable in the context of a consent decree involving residential developments.

- Paragraph 23 of the proposed consent decree says that all subsequent applications shall be approved as administrative acts, rather than legislative acts. This completely subverts ORC 519.12 (H) by denying township voters their only means of check and balance on the township trustees. It is unfair and unreasonable to include such language in a consent decree.

- The Jerome Township trustees have failed to adequately represent the township in these zoning matters. The overwhelming veto of their recent zoning decisions by referendum shows that the trustees are not capable or are unwilling to provide fair and reasonable representation of the township.

- Trustee Joe Craft has a clear conflict of interest in this consent decree as his re-election campaign received a sizeable contribution of $500 from J and J Land Development Ltd. Glenn Hochstetler is an officer / director of J and J Land Development Ltd. Mr. Hochstetler also sits on the board of the Jerome Village Community Development Authority. Its unreasonable to expect Trustee Craft to be able to make unbiased decisions regarding the development given that he has accepted campaign contributions from these very people.

- All four of these developments were fairly and legally voted down by referendum. There is no evidence to support the claim of these being arbitrary, capricious, unreasonable, or unconstitutional. Just because the developers don't like the outcome of the elections doesn't give them the right to extort the township. It is the developers who are attempting to hijack the process and extort the township into overturning the legitimate election results. It is unfair and unreasonable to submit to this form of intimidation from deep-pocketed land developers.

Thank you for your consideration in this contentious matter. I respectfully ask that you rule that this proposed consent decree is not a fair and reasonable settlement.

Sincerely,
Andrew Diamond
7411 Spruce Court
Plain City, OH 43064
Andrewdiamond2015@gmail.com

**Honorable Judge Mark H. Watson**

**Honorable Magistrate Judge Deavers**

**Case No. 2:21-cv-3993**

**Objections filed by Barry Adler**

**December 23, 2021**

As a Trustee elected to take office in January of 2022, I am greatly concerned about the impact of the Consent Decree agreed to by the two departing Trustees with no vote from the one remaining Trustee. I feel compelled to offer my understanding of the settlement agreement and reasons for my objections.

I am filing the enclosed objections to the Consent Decree by responding specifically to the summary justification statements made by Trustee Joe Craft at the December 20, 2021 public meeting.

*Mr. Craft stated the following:*

*"Earlier this year, several developers filed litigation challenging referendum petitions to overturn zoning decisions that were made in alignment with the township's comprehensive plan. The developers were seeking over $13 million in damages, arguing – arguing that the use of the ballot initiatives was unlawful."*

**Objection:**

- **The use of ballot initiatives was not unlawful and this Consent Decree is based on the assumption that these claims are justified.**

  **The referendum by residents of Jerome Township was not unlawful as claimed by the plaintiffs.**

  - Any property owner has the right to sell their property under the current zoning classification.
    - Rezoning of a property requires a zoning amendment subject to an approval process that was lawfully done by the Township Trustees in accordance with the Zoning Resolution.
    - Concerns by residents were not addressed during the rezoning process and resulted in overwhelming rejection at the ballot box through the lawful referendum process.
    - ORC code 509.12 provides a lawful process for residents that disagree with a zoning amendment to place any rezoning on the ballot for a vote by residents.

- o The rezoning of each of the plaintiff's developments were placed on the ballot and were overwhelmingly rejected by residents with no less than 70% voting against any of the rezonings.
  - o There was nothing unlawful about the ballot initiatives.

- **The motion to dismiss the suit was filed and there appears that there was no protest or response by the plaintiffs to challenge the arguments that refuted their claims for having any basis for filing suit against the township.   Additional details regarding the following arguments to dismiss may be found in the submission Case: 2:21-cv-03993-MHW-EPD Doc #: 13 Filed: 09/07/21:**

  "LAW AND ARGUMENT

  A. Plaintiffs' Violation of Substantive Due Process Claim Should be Dismissed as Plaintiffs Have No Constitutionally Protected Property Interest in the Development of Their Land.

  B. Plaintiffs' Equal Protection Claim Should Be Dismissed as Plaintiffs Have Not Been Subject to Unequal Treatment of the Law.

  C. Plaintiffs' Claims for Declaratory Judgment Are Inappropriate as There is No Actual Controversy In Dispute as Required by 28 U.S.C. § 2201(a) as Demonstrated Above and Should Be Dismissed."

  D. Plaintiffs' Claims of Regulatory Taking and Taking By Eminent Domain Should Be Dismissed - There Is No Regulatory Taking As Plaintiffs Knew of Both the Zoning Restrictions and Referendum Process and Plaintiffs Have Not Been Denied Due Process."

  CONCLUSION

  Plaintiffs' claims all arise under 42 U.S.C. § 1983. But Plaintiffs cannot prove any set of facts in support of those claims that would entitle them to relief, even construing all facts set forth in the Complaint in a light most favorable to them."

  Is it fair and reasonable to not consider these objections before negotiating a settlement?

  One has to wonder why would the plaintiffs would agree to this negotiated settlement which effectively results in $15 million less than if the ruling had gone in their favor.  Was there a concern that if they lost the suit that the loss of 679 residential units could be substantially more of a financial loss than the prospect of giving up $15 million? It would appear that they were willing to offer about $2 million of funds (which are effectively coming from Jerome Village residents) to avoid those potential losses. One might surmise that this would seem to be fair and reasonable to the developers.

- **Damage loss claims by the plaintiffs were not substantiated with any facts or evidence.**

  - The initial claim shown on Pacer Monitor was for $5 million, filed in late July. A motion to dismiss was filed September 7th.  On or about October 19th, prior to the November election of Trustees, according to an article published Marysville Journal Tribune, with no apparent basis in facts or evidence, this claim was increased to over $13 million.

  - This increase may have been an attempt to pressure the township into a Consent Decree based on the township's liability insurance limit.  My understanding is that the township has a limit of $4 million.

  - Damage claims for financial loss appear to have no basis, as property owners do have the right to sell their property under existing zoning classifications and rezoning requires a zoning amendment and the plaintiffs were aware that any zoning amendment is subject to referendum by residents. Rezoning was not a guaranteed right for property owners or developers.


*Mr. Craft stated*

*"All of these benefits were the result of a negotiation by all parties to the overall benefit of the township:"*

**Objection:**

- **All affected parties were not included in these negotiations.**
  - There were 2 motions by excluded parties to intervene, one by another developer and one by township residents who were not included in these negotiations.

  - The other developer withdrew their motion to intervene after being rejected by both the plaintiffs and township.  Any further litigation to intervene could have delayed any Consent Decree being completed before the end of the year, when the two Trustees that had shown a bias in favor of the rezoning amendment settlement would no longer be in office.

  - The residents filed in a timely manner to intervene after the details of the Consent Decree were made available.  They objected to the fairness of the agreement reached by the existing parties in order to protect their property rights.


- **The settlement is not fair or reasonable and not to the overall benefit of the township.**

- On the surface it would appear that the township should benefit from financial contributions of around $2 million from Jerome Village.  However, **all** of the residents speaking at the public meeting of December 20, 2021 expressed their disapproval and continued concerns about adverse impacts.  The overall comments were that the settlement agreement was not fair and reasonable. It favored the plaintiffs at the expense of the residents. It failed to address the concerns and harm that will result from the adverse impacts of allowing these rezonings amendments to be reinstated.

- Numerous other residents have also expressed their objections to the settlement agreement.

- Property owners of adjacent properties that purchased rural residential properties are also concerned about having their right to live in a rural setting violated by increased traffic on overburdened rural roadways and lack of landscape buffering from these higher density residential developments.

- Also included were concerns about potential cancer and health issues that could result in long term liabilities by allowing a residential development in the immediate vicinity of 2 toxic landfills, with one that remains unremediated and chemicals of concern have been previously found.

- The addition of 679 residential units by reinstating these developments to already overburdened roadways would likely result in more accidents and deaths.

- The schools are already overcrowded and higher school taxes will be needed to accommodate the growth.

- The added economic and administrative burdens from added costs of community support services including fire, emergency medical services, public safety officers, roadway maintenance and administrative support may only be partially met with only one of the four plaintiffs offering funds to help offset the costs of the additional services required by adding significant numbers of residential units to the township.

- Residents understand that even with the proposed ten years of contributions that levies and school taxes may likely increase with all the additions residential units. After ten years they will bear the full burden of these added costs.

- The written transcript was provided for review to the court, but a full understanding of the concerns expressed and objections is best attained by review of the video

tape from that meeting. I am submitting the link to that video record into evidence for review by the court.  This video tape may be viewed on the following link:

https://www.facebook.com/Jerome-Township-104218901305106/videos/3042630709398606

*Mr. Craft stated overall benefits:*

*"$1 million for outfitting the fire station and equipment in addition to the 5.5 million already committed along with donated land for the facility.  All future commercial development will go into a Joint Economic Development District to realize income tax on future development. This means that 15 percent of the income taxes collected will be available to the township to use at its discretion."*

Objection:

**This statement is misleading and an overstatement of the benefits to the township.**

**A revised calculation should indicate that the net gain to the township is less than $2 million or $1.79 million for the settlement agreement.**

o  It unfairly suggests that prior contributions for the fire station are somehow linked with the current settlement agreement.

o  There are no commercial developments directly associated with this planned development and reinstating the rezoning will have no direct financial impact to raise any additional income taxes since this development is entirely residential.  This agreement presupposes that any future JEDD will require approval of the property owner.  My understanding is that the JEDD can be approved by agreement just between the township and the City of Marysville, who will be providing the utility services to future commercial properties.

*Mr. Craft stated financial benefits:*

*"1.25 million in future annual payments of $125,000 per year for the next ten years to support future township needs.  This is in addition to the $100,000 annually over the past ten years and the addition of $400,000 to be paid in 2022."*

**Objection:**

**This second sentence of this statement is misleading and an overstatement of the benefits to the township from this settlement.**

- o This first part of this statement is true, but the following sentence suggests that somehow the previous contributions by Jerome Village including the $100,000 annually over the past ten years and the addition of $400,00 to be paid in 2022 are linked to this settlement agreement. The township has already received these payments from the past ten years with the $400,000 due in January also a part of that previous agreement. Those funds are not linked to the current settlement agreement.

- o Furthermore, this statement has material omission of relevant information. The residents of Jerome Village will be the ones actually funding the $1.25 million from ten years of annual payments plus the $1 million for the fire station funds.

    Assuming that a similar funding procedure is followed as was done during the previous ten years, these payments will come from funds that are collected as impact fees that are required from residents by the Jerome Village Community Authority.

    This Community Authority appears to be collecting over $1.5 million every year. A contribution pf $125,000 back to the township would represent less than 10 percent of this annual amount.

    So, effectively the Jerome Village residents will be paying the $2.25 million to the township to support the reinstatement of rezonings that they overwhelmingly rejected.

    Jerome Village residents will unfairly bear the economic burden for funding costs of community services while none of the other plaintiffs will be contributing any funds to the settlement agreement. The settlement agreement for payment of $250,000 to the other three plaintiffs will effectively be paid from the payments made by Jerome Village residents.

    Is this fair and reasonable?

- o After ten years, the township will need to pick up on those costs, while during those ten years, the three plaintiffs that are not contributing will reap the benefits of this settlement.

o Also omitted from this overstatement of the settlement benefits is the loss of $121,000 in additional township zoning fees of $500 per unit that would have been realized if the requirements from the original Rolling Meadows rezoning were included in the 2021 agreement for 242 residential units.

o Also omitted from this exaggeration of the settlement benefits is a verbal commitment from the Homestead at Scott Farms for $300,000 that was designated for upgrading of a right turn lane at Brock Road and Industrial Parkway and $50,000 designated for the township park adjacent to the township building. Since this amount was never included in the original rezoning modifications, it technically is not a loss. However, this may have been one of the considerations by residents for the rejection of the rezoning by referendum, since a written commitment was never formalized.

*Mr. Craft stated that there will be:*

*"A hundred fewer homes than originally proposed in the Rolling Meadows development."*

**Objection:**
**Although not inaccurate, this statement is misleading and suggests this is a concession in response to concerns of residents for less residential units. This substantial change to the original zoning omits facts of material relevance.**

**Inclusion of Rolling Meadows as part of this settlement agreement appears to provide substantial benefits to Rolling Meadows that are not fair and reasonable.**

- The original approved rezoning amendment had eight parcels included. The current revised zoning plan is for only three parcels, reducing the area from 210 acres to 121 acres.

  Those parcels are no longer available for development as a result of about 89 acres that are no longer included and therefore necessitate a reduction of units.

  Furthermore, the original housing density was increased from 1.79 dwelling units/acre to 2.00 dwelling units/acre, resulting in smaller lots with even less diversity of lot size than previously proposed.

- The original approved rezoning amendment had five modifications as required in the Attachments to Resolution 19-066. *(See attached pdf file attachment 1 of the Resolution that was sent with this email letter.)*

  - Three of these five modifications in the Resolution are missing from the revised 2021 zoning regulation text and 2021 zoning plan.

  - One modification in the Resolution was for a supplemental zoning fee of $500 per unit. This is no longer required in the modified plan. This will effectively eliminate payments on 242 units. This omission alone will reduce zoning fees that would have been paid to the township by the amount of $121,000.

  - The other two modifications that were eliminated relate to agreements with the adjacent golf course and parcels that were being considered as part of the original rezoning. These requirements were basically agreements to keep the open space that belonged to the golf course open to the public and to have an option agreement regarding the open space. It would appear that the golf course did not agree to these requirements, and they appear to have placed some of the original parcels that were included in the original rezoning up for sale. The entire golf course is currently advertised for sale on the real estate market.

- This Consent Decree is providing substantial benefits to the Rolling Meadows revised 2021 zoning plan by eliminating $121,000 in zoning fees plus requiring an additional $200,000 in payments from the township to Rolling Meadows.

- Concerns about landfills in the vicinity and potential long term health and financial liabilities should be additional justification for why any settlement that includes Rolling Meadows would be unfair to the township.

*Mr. Craft stated that:*
*"The twelfth amendment allows for continuation of the Jerome Village development plan that was originally approved more than ten years ago requiring future development to comply with the same high quality standards, green space commitments, infrastructure improvements and other public amenities."*

**Objection:**

**This statement is misleading and omits relevant material**

- o  The twelfth amendment embodies all the negotiation settlement.
- o  The Jerome Village VN-10 was not included in the originally properties in the Master Plan approved more than ten years ago.
- o  The 23rd amendment includes confusing and troubling language that reassigned the Developments to a new designation referring to them as "Subsequent Applications" and that "all such Subsequent Applications shall be approved as an administrative act in accordance with Ohio Revised Code 519.021(B).  Subsequent implies any future applications associated with these Developments.

    *Is this fair and reasonable, as it appears to effectively deny residents the right to referendum any new applications for any of these developments that might acquire properties to be added to their original plans?  This is seen as a huge financial benefit and incentive to allow Jerome Village to continue to expand in future years without any legal concerns about referendums.  This is surmised to be a key motivation for the settlement funds all coming from Jerome Village.  Since the funds are ultimately coming from the residents of Jerome Village, is this  fair and reasonable to them?*

**Summary Remarks**

- o  **Is it fair and reasonable to negotiate The Consent Decree prior to ruling on the motion to dismiss?**

- o  **Is it fair and reasonable to assume the ballot initiatives to be unlawful?**

- o  **Is it fair and reasonable to justify this settlement on risks and liabilities that have not been substantiated by the facts and evidence?**

- o  **Is it fair and reasonable to agree that rezoning is a right of the property owner and not something that should be governed by the laws and regulations of the Ohio Revised Code?**

- o **Is it fair and reasonable to base this settlement on economics with little regard to concerns of uncontrolled residential growth and its adverse impacts to the quality of life of township residents and their concerns for future liabilities?**

- o **Is it fair and reasonable to justify this settlement on overstated economic benefits, misleading statements and material omissions?**

- o **Are the changes made from the originally rejected rezoning amendments sufficient to justify this settlement agreement?**

- o **Is it fair and reasonable to include Rolling Meadows as part of this settlement agreement?**

- o **Is it fair and reasonable to allow the residents of Jerome Village foot the bill to pay for rezonings that they overwhelmingly opposed?**

- o **Is it fair and reasonable to approve a settlement agreement without the involvement of affected residents? Is it fair to reinstate the same rezonings that were rejected by an overwhelming majority of the residents? Not a single resident spoke out in favor of this Consent Decree.**

- o **Is it fair and reasonable to rush into an agreement prior to the end of the year based on a settlement that was crafted in negotiations by two of the Trustees who will no longer be Trustees in the coming year?**

- o **Is it fair and reasonable to include amendment 23 that appears to apply to future expansions of the Developments and deny residents the right to referendum with the stipulation that *"all such Subsequent Applications shall be approved as an administrative act"*?**

- o **Is it fair and reasonable to set a precedent for future developers to take advantage of the township and provide a basis for filing suit against any zoning standards that might deny them the opportunity to maximize their profits regardless of adverse impacts to the community?**

I understand that it a Consent Decree is lawfully permitted in accordance with ORC 505.02 as a settlement agreement negotiated between the Township Trustees and the Plaintiffs and that the Township Trustees did follow all the required procedures. It should be noted that this was

not a unanimous decision by the Trustees and the one Trustee remaining in office after December 31, 2021 was opposed to the agreement.

I respectfully ask for your consideration of the facts and evidence and to rule that the proposed settlement agreement is neither fair nor reasonable and does not benefit the township as suggested by the Consent Decree approved by the two outgoing Trustees.

I look forward to being allowed the opportunity to review all the details of this case and renegotiate any settlement and work for this township.

This settlement will have a major impact on existing residents and I want to help better manage future growth in the township to resolve these issues in a manner that would be fair and reasonable to all affected parties.

Respectfully,

Barry Adler

9559 Industrial Parkway

adlerbarry@yahoo.com

RESOLUTION NO. _19-066_

**RESOLUTION TO AMEND THE ZONING RESOLUTION AND MAPS OF
JEROME TOWNSHIP, UNION COUNTY, OHIO
APPLICATION NO. PD-19-130**

**WHEREAS,** Zoning Amendment Case No. PD-19-130, as described below, came on for hearing before the Jerome Township Board of Trustees on May 6, 2019; May 21, 2019; and June 25, 2019, which case is described as follows: an application submitted by Laura MacGregor Comek, Attorney for Paragon Building Group, Ltd., seeking the rezoning of a 210.62+/- acre tract located approximately 2,100 feet northwest of the intersection of Taylor Road and Industrial Parkway having a current address of 10897 Industrial Parkway, Marysville, Ohio 43040, from Rural Residential District (RU) and Special Recreation District (SRE) to Planned Development District (PD) pursuant to Chapter 5 of the Jerome Township Zoning Resolution. The proposed development is a residential community consisting of single-family homes and open space areas and will be known as "Rolling Meadows."

**WHEREAS,** on February 22, 2019, the Logan-Union-Champaign Regional Planning Commission recommended approval with modifications of the proposed amendment; and

**WHEREAS,** on March 25, 2019, the Jerome Township Zoning Commission recommended approval of the proposed amendment; and

**WHEREAS,** on April 1, 2019, the Jerome Township Board of Trustees resolved to hold a public hearing on the proposed amendment on May 6, 2019 in order to take action in Zoning Amendment Case No. PD-19-130.

**NOW THEREFORE,** upon Motion by _Ronald L. Rhodes_, seconded by _C.J. Lovejoy_, BE IT RESOLVED by the Board of Trustees of Jerome Township, Union County, Ohio (the "Board"), that:

The recommendation of the Jerome Township Zoning Commission to approve this proposed amendment, be and hereby is adopted with modifications as reflected on Attachment 1 by the Board.

Voting Aye thereon:

_____
Ron Rhodes

_____
C.J. Lovejoy

_____
Joe Craft, Chairman

Voting Nay thereon:

_____
Ron Rhodes

_____
C.J. Lovejoy

_____
Joe Craft, Chairman

**BOARD OF TRUSTEES,
JEROME TOWNSHIP,
UNION COUNTY, OHIO**

ATTEST AND CERTIFY:

_____
Robert Caldwell, Township Fiscal Officer

**Attachment 1**

1. Increase to a 40-foot minimum setback for lots having shared access drives along Crottinger Road.
2. Remove at least 5 lots from south property (wooded area), adjacent to the neighbor/residence at 10420 Crottinger Road, with the option at Applicant's election to redistribute or re-place any of those 5 lots elsewhere in the development at Final Development Plan.
3. Include additional language in the Development Text to state plainly that any golf course or other use operated or conducted on the Open Space shall at all times be open to the public.
4. As proposed by the Applicant, developer to pay a $500 per lot supplemental zoning review fee, payable at time of Township zoning approval.
5. Prior to construction, the execution and recording of an option contract for the golf course area substantially similar to the one prepared and proposed by the Applicant dated June 12, 2019.

December 23, 2021

The Honorable Michael H. Watson
The Honorable Elizabeth A. Preston Deavers, Magistrate
United States District Court
Southern District of Ohio
Eastern Division

Reference: Case No. 2:21-cv-3993

Dear Judges,

Thank you for allowing direct comments from the residents of Jerome Township concerning the Consent Decree before your court. I am an adjacent property owner to the Wicked Chicken-Farm at Indian Run rezoning and spoke at the recent public meeting. We would like to add some additional comments to be considered in your decision.

When we bought our property over 30 years ago, we paid a premium to also enjoy the property rights that came with Rural Residential zoning around our property. Our rights are now being threatened as a powerful, well financed group of developers seek to intimidate and then offer money to push the trustees approval of this consent decree. **Settlement** is not the answer when our property rights are being trampled on and handcuffed. This decree is not fair and reasonable to us and the 85% of township voters who said NO to Plaintiff Wicked Chicken.

Wicked Chicken LLC bought property that was zoned Rural Residential. The wooded area had been in tree conservation status for many years. They had full knowledge of the right of referendum. The property collects water from the Glacier Ridge Park and has a jurisdictional stream and adjoining wetland area. Wicked Chicken sought to rezone and put the most possible homes on this sensitive area –requiring over 80% of the trees to be removed. A 70 foot green space buffer was offered on the West and South side of the development but not along our adjoining property line. The rezoning was approved in a split decision over the vocal cries of the area residents and 3 township meetings. A legitimate referendum was successful to stop the rezoning. Wicked cut the trees down anyway. This consent decree seeks to grant this rezoning and development plan with no changes / concessions or addition of equal green space buffer along our property and neighbor behind us. This is so not fair and Reasonable.

The Developers seek to force Jerome Township residents to accept 4, unrelated Planned Development that were previously legally denied by referendum. The people charge that each of these 4 development/rezoning's failed to meet critical points in the rezoning **basis for approval** criteria in our Comprehensive Plan. The people protested these original rezoning's by the trustees and their unheard voices were met with the referendum process. No organized revolt or "hijacking" occurred as the Plaintiffs contend.

The property rights of the Plaintiffs were not denied. There are many ways to develop their property that would be in harmony with the stated goals of the township and align with the Comprehensive Plan. This decree does not require the developers to modify their development plan to address major safety concerns, lack of adequate buffering, inadequate roadways to service the developments. The public's safety and quality of life should not be traded for money from Jerome Village.

I respectfully ask that this consent decree be denied as it is does NOT meet the test of being Fair and Reasonable to all parties.

Bob and Lynda Chapman



**Brian J. Ellis**
President and Chief Operating Officer
Nationwide Realty Investors

December 22, 2021

The Honorable Michael H. Watson
The United States District Court for the Southeastern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Blvd
Columbus, Ohio 43215

Dear Judge Watson,

I am writing in support of the Consent Decree recently approved by the Jerome Township Trustees. As president of Nationwide Realty Investors, the developer of the Jerome Village neighborhood as well as Columbus' Arena District and Grandview Yard, we believe this is a fair settlement for all parties.

Nationwide Realty Investors began investing in this community in 2005 with a vision to create a premier neighborhood with a commitment of more than 700 acres reserved for woodlands, meadows, parks, and green spaces, a 15-mile network of walking and nature trails connecting to the Glacier Ridge Metro Park system, a Community Center for families and neighbors to gather, and a wide variety of home styles and values to support Central Ohio's growing housing needs.

For more than 15 years, we've worked in tandem with the leaders of the Township to bring that vision to fruition, and development plans for Jerome Village have been lauded for meeting and often exceeding the Township's approved plan.

Then the referendum process took away the property rights that we had in place – a long-term plan guided by the Township's approved plan that fosters careful growth – a partnership based on a master plan that benefits everyone.

The significant investments we have made here benefit not only the residents of Jerome Village, but the entire Township. We have invested nearly $80M in public infrastructure to date with well over $100M anticipated at completion, delivering new roads and sidewalks, improving water and sewer systems, supporting public safety services, and improving connectivity throughout the area.

There is also tremendous synergy between a great neighborhood and its schools. As such, Jerome Village donated a 43-acre site to Dublin City Schools for the construction of Abraham Depp Elementary School and Eversole Run Middle School which opened for students in 2020 and 2021 respectively.

The Honorable Michael H. Watson
December 22, 2021
Page 2

Also reflective of our commitment to this community, Jerome Village will contribute another $1M toward the new fire station and equipment in addition to the $5.5M and 3 acres of land already committed to support public safety.

As part of this settlement, Jerome Village will also contribute $125,000 annually for the next ten years to support future Township needs. This is in addition to the $100,000 contributed annually over the past 10 years and the $400,000 to be paid in 2022. Also, only as a result of this settlement, all future commercial development will go into a joint economic development district – allowing the Townships to realize income tax on future development. This means that 15% of the income taxes collected by the JEDD will be available for the Township to use in its discretion.

The success of the Jerome Village neighborhood is built on the ongoing success and viability of this community. We have made a significant investment here and we want to continue to make the additional investments that we've committed to aligned with the plan.

This settlement allows responsible, high-quality development already supported by the Township to continue, with a framework that creates long-term benefit for current and future residents including a $2.25M flow of revenue supporting this community's infrastructure, public safety, and operating funds.

Southern Union County is one of the fastest growing markets in the United States and we are proud to be part of that responsible growth. On behalf of Nationwide Realty Investors and the Jerome Village Development Company, we ask that you approve the Consent Decree.

Sincerely,

Brian J. Ellis
President and Chief Operating Officer

**From:** Jeffrey G Rymer
**To:** Meg Burrell
**Subject:** Case : 2:21-CV-03993-MHW-EPD Doc# #33 move to intervene
**Date:** Tuesday, December 21, 2021 8:15:02 PM

**CAUTION - EXTERNAL:**

In the case of The Craig D. Scott Revocable Trust, et al., VS Jerome Township, Ohio and the 12/20/2021 decision by the Township Trustees to a consent decree, and the 12/21/2021 action of Robert G. Chapman and Lynda L. Chapman to intervene as to the fairness of the agreement between the existing parties, I wish to express my support for the consent decree.

I have been a resident of Jerome Township, Union County, Ohio for over ten years. The area has been under extreme development pressure and has benefited from healthy growth.

I support the Township Zoning program as well as the guidance by the Township Trustees. I feel that the Trustees consent decree is best for the Township to settle this unfortunate lawsuit.

I thank the Court and shall respect their decision.

Jeff and Anita Rymer
9942 & 9970 US Hwy 42 N.
Plain City, Ohio 43064

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| From: | Doug Farnholtz |
|-------|----------------|
| To: | Meg Burrell |
| Subject: | CASE NO. 2:21-CV-3993 Craig D. Scott Revocable v. Jerome Township, Ohio |
| Date: | Thursday, December 23, 2021 12:29:30 PM |

**CAUTION - EXTERNAL:**

Dear Judge,
As a registered voter in Jerome Township, I feel that my vote was stolen again like the last election. We the people OVERWHELMINGLY made our voices heard (nearly 80% of us) say NO to new development at this time. Alot of time was put in to having enough names on petitions so that we could have this voted on in this last November election. TWO, only TWO trustees voted to overturn our election results then left the board. This is outrageous and as Bob Connors would say, follow the money! Please look into the pleas coming from our residents! Sincerely, Doug Farnholtz 9660 US 42 N. Plain City, Ohio 43064

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| From: | _athie Johnson |
|-------|----------------|
| To: | Meg Burrell |
| Subject: | Case No. 2:21-cv-3993 |
| Date: | Thursday, December 23, 2021 12:3 : 1 PM |

**CAUTION - EXTERNAL:**

Judge Watson,

I know this is late but please consider my plea.

I

Thank you,

Kathleen Johnson
8300 McKitrick Road
Plain City, Ohio 43064

614-873-8015
katj_67@yahoo.com

I wrote a statement in Word, saved it as a PDF, but cannot retrieve it to attach.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

From:            _inda_ _atson_
To:              Meg Burrell    _inda_ _atson_    CE-John_ _atson_
Subject:     Case Number 2 21-cv-3993 - Jerome Township
Date:        ednesday, December 22, 2021 :3 : PM

**CAUTION - EXTERNAL:**


Good Morning your Honor,

Myself and my wife very much would appreciate your consideration that the consent decree for Jerome Township not be Approved. The residents of Jerome Township Have Spoken in the most basic Democratic way. Two Lame duck Trustees who were voted out are working to circumvent the will of the people of Jerome Township.
This will be an affront to the very principles our Country was founded on.


Thank you for your Consideration,

John & Linda Watson
9475 Crottinger Road
Plain City, Oh



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

From:            Robin   ardner
To:              Meg Burrell
Subject:         Re: Jerome Township consent decree
Date:            Tuesday, December 21, 2021  :21:3  PM
 ttac  me  t :      M     30  .PN

**CAUTION - EXTERNAL:**


        Ms Burrell
        Good evening
        Would you please forward this attachment to
        Judge Watson

        Thanks so much
        Charles and Robin Gardner
        8130 Mitchell DeWitt Rd
        Plain City, Ohio 43064
        Concerned Jerome township residents

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

The residents of Jerome Township are being bullied by big developers, influential law firms, and a small handful of local land owners. The rezoning system worked as designed. The trustees approved the 4 planned developments in question over much objection by many local tax paying residents, the residents exercised their legal right to ask for a referendum, and a strong majority of all voting residents rejected the rezonings and proposed developments. Everyone followed the established law and NOW the majority of Trustees seek to consent to these powerful interests—overriding the majority vote of the Jerome Township residents and not even requiring any major concessions from the developers to give the local residents any form of relief. This whole process must stand the test of being Fair and Reasonable. I submit that the voting residents and land owners of this township will see nothing fair or reasonable if this consent decree is passed. The Plaintiffs have twice asked that a ruling on the motion to dismiss be delayed now into mid-January. The two outgoing Trustees, should not rush to settlement now, but let the new governing trustees deal with this in the new year. That is far more fair and reasonable than granting all of these developments to be approved and set a devastating landmark precedent that destroys the process of referendum as a legitimate tool of the township and Ohio residents.

My husband and I live behind the Wicked Chicken property and were devastated when they destroyed close to 8 acres of vintage woods to put in an unwanted high density housing development. We are concerned about the change to the stream and water runoff from all of the new homes and blacktop as this water exits past our property to the rear.

The offer of Jerome Village to pay over 2 million dollars to the Township has the look of our legal rights being sold to the highest bidder  How do the people of Jerome Village—who pay an extra tax to live there, feel about bailing out these 3 other rezonings~

The outgoing Trustees can leave a scar on the township and its residents on the way out or allow this issue to be resolved by the incoming trustees. This would be the moral approach and have the appearance of Fair and Reasonable.



Christiane Schmenk,
County Commissioner

**Tim Hansley, County Administrator**
Letitia Rayl, Assistant County Administrator/
Budget Officer
Kelly Higgins, Clerk to the Board/
Office Assistant

County Office Building
233 West Sixth Street
Marysville. Ohio 43040-1526

Tel. 937-645-3012
Fax 937-645-3002

commissioners@co.union.oh.us

December 22, 2021

By Email to Meg_Burrell@ohsd.uscourts.gov
The Honorable Michael H. Watson
The United State District Court for the
        Southern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

RE:  Case No. 2-21-cv-3993 (The Craig D. Scott Revocable Trust, et al., v. Jerome Township, Ohio)

Dear Judge Watson:

I am writing today to provide input on the character and conduct of Nationwide Realty Investors (NRI) in relation to their investments in Jerome Township.

I am a County Commissioner of Union County, in which Jerome Township is located.  In my opinion, NRI has been an excellent corporate citizen in its investments in our County.  NRI has been thoughtful and deliberative as it has built various phases of the 1700 acre Jerome Village planned development.  It has carefully planned the community, invested in parks and walking trails and worked to preserve the rural character of our area while providing homes for Central Ohio's growing population.  It has sought input to local residents and incorporated such input where possible.  NRI They has also donated land and funds to public schools and safety services in the township.  Our County has been fortunate to have NRI's investments in our future.

Thank you for your thoughtful deliberations on this matter.

Sincerely Yours,

Christiane Schmenk
Union County Commissioner

**Christine D Stanton**
**8925 Ketch Road**
**Plain City, Ohio 43064**


Dear Judge Watson,

My name is Christine Stanton.  I live at 8925 Ketch Road, Plain City Ohio.  I have been a resident of this community since 1995.  I am writing to you to ask for you to consider my voice when considering the judgment on the consent decree that was recently decided by the Jerome Township Trustee Board.

Jerome Township is a wonderful place to live. In our small township we elect trustees from our beloved community to represent the residents in important matters of the township.  It has become evident two of the trustees are not representing the majority when deciding on the case of The Craig D Scott Revocable Trust, et al vs. Jerome Township, Ohio.

This case has been very frustrating to me and to the majority of residents. Two trustees have been supportive of this excessive growth that would place safety, financial and population burden on Jerome Township as the planning and action to support the growth has not been conducted.

In an effort to stop this action, a referendum to stop the development was placed on the ballot.  The results were clear in that 76% voted against the development.  And yet, with this knowledge the two trustees continued to act against the will of the residents.  On December 20, in a lame duck township meeting, 100% of the residents that signed up to speak expressed their concern and respectfully requested the trustees either vote against the consent decree, or to delay the vote and let the matter play out in the federal court.  After all public comment concluded two of the three trustees voted to approve the consent decree to settle the federal lawsuit filed by the developers.  It should be noted that one of the two trustees did not seek reelection to the position, and the second trustee was soundly defeated at the ballot box by the eligible voting residents, as he had a track record of not acting in good faith for the residents he was elected to serve.

I appeal to you as a matter of fairness to do what our elected officials refused to do and simply allow the matter to be settled in court. We ask that you not accept the consent decree that was decided by two outgoing officials.  By doing so, you level the playing field and not give undue power to the developers and two trustees in our township.

Sincerely,


Christine D Stanton
8925 Ketch Road
Plain City, Ohio 43064
614-519-9163

Confidential

December 23, 2021

Honorable Michael H. Watson,

I am writing this letter to express my opposition to the pending settlement agreement approved by the Jerome Township Trustees on Tuesday, December 21, 2021 (Consent Decree, Case No. 21-CV-03993).

My family and I currently reside in Jerome Township and have for the past 25 years. I attended and spoke at several Jerome Township trustee meetings regarding the Rolling Meadows development. There were many concerns regarding the plans from the residents, however, the trustees still approved the re-zoning. The concerns included but were not limited to the use of a golf course to meet the green space requirement, the nearby landfill, road conditions, tree preservation, current water levels of nearby creaks, housing density, road appeal, and buffers to current residents. Since the Jerome Township trustees did not take our concerns into consideration, a group of residents, include myself, worked to put the issue on the ballot for all residents to express their opinion.

The legal documents indicate that a small group of individuals hijacked the zoning process. The referendums were approved by majority of the voters, that is not a small group of individuals.

I understand that Jerome Township will not be able to remain status quo and development is inevitable. However, the developments need to be the right ones for our community. It is my opinion, particularly regarding Rolling Meadows, that if the concerns of the residents were taken into consideration during the rezoning process and the trustees requested developers to make adjustments to their plans, we would have not proceeded with a referendum.

The agreement to the Consent Decree by the Jerome Township trustees is another example of the trustees not listening to the residents. The residents voted out one trustee and another decided on their own accord to not re-run. Jerome Township will have two new trustees in 2022. Why was a special meeting scheduled in late December to hold this vote? Could this vote have waited until the new trustees took office?

Based on my limited read and understanding of the Consent Decree, I am extremely concerned that an agreement to this settlement simply approves the preliminary plans for these developments with no further input from the residents. The residents have spoken on many occasions regarding concerns with the plans/developments. The trustees in office at that time did not consider these concerns. I beg that the residents and the new board of trustees be provided an opportunity to review and make adjustments to the plans and not simply approve those that began all these legal matters. My final significant concern regarding an agreement to the settlement is the precedent that it will set and that Jerome Township residents will have NO voice regarding future developments.

Thank you for the opportunity and consideration of my objection to the pending Jerome Township settlement.

Sincerely,

Christy Russell
11680 Taylor Road
Plain City, OH 43064

From:        bruce beard
To:          Meg Burrell
Subject:     Consent Decree
Date:        Thursday, December 23, 2021 11:13:20 AM

---

**CAUTION - EXTERNAL:**

Judge Burrell,

I apologize sending this via email, but I am off work this week and was just advise of the request last night. First briefly about myself I am a Jerome Township resident for over 22 years now. I also am a Columbus Police Detective for over 29 1/2 years.

I am writing you on behalf of not only my family but al the Jerome Township residents who have not been notified of this consent decree due to the fact the outgoing 2 Trustees kept this a secret.

First let me do some background on both Trustees CJ Lovejoy and Joe Craft. Both have been trustees for Jerome for I believe for 2 terms, both ran on the platform of limited development and building our infrastructure that is 2 decades behind. NEITHER did any of this instead both trustees approved EVERY single development request by builders no matter the size or the lack of details.

Jerome Townships residents including myself repeatedly asked Trustee at meetings and urge the trustees to stop the rapid development that was overflowing our roads and causing our schools to have to add additional buildings to keep up with the new houses, these requests were ignored and sometimes laughed at by the trustees.

Jerome Township residents following the laws and guidelines set forth by township and county rules organized referendums to stop these unwanted massive subdivisions being built in our township. In November 2019 Referendum for Rolling Meadows was put on the ballot and Jerome Township residents voted by 80% to say NO to the unwanted subdivision and it was stopped.

In May 2021 Wicked Farmand Indian Run subdivision were voted down again by Jerome Township residents by over 80% yet again Joe Craft and CJ Lovejoy continued to ignore the will of their residents.

In November 2021 Scotts Farm and Jerome Village JV-10 was again put in referendum and the Jerome Townships residents voted both of the down by over 78% of the people of Jerome Township saying NO.

In November 2021 Jerome Township residents had enough of the Trustees Joe Craft and he was overwhelmingly voted out as Jerome Township Trustee and CJ Lovejoy did not seek reelection. The residents of the township have spoken over and over again they do not want massive expansion.

I personally spoke to CJ Lovejoy on multiple occasions in last 2 months and he swore to me that the idea of a 'Consent Decree' was a 'FANTASY' brought up by 'PARANOID residents'. Mr. Lovejoy also stated that no such decree had been discussed by the trustees or was being considered and did not belong.

On 12-20-2021 we found out that the outgoing Trustees CJ Lovejoy and Joe Craft had all along been working with the builders in secret and behind locked doors to reach a deal that benefits no one BUT the builders.

In 2020 ODOT did their own independent study that says building in Jerome Township should not continue till the infrastructure is caught up that is massively behind, large scale traffic disruptions have already begun, and traffic will only worsen if building continues.

I also just found out that Joe Craft received money for his election campaign from at LEAST 1 builder that he had priorly approved for building permit and who Joe Craft wants to now give back those permits thru a consent decree.

I personally contacted Union County Head Prosecutor David Phillips and advised him of this possible 'QUID PRO QUO' payment which may be criminal in nature, he has asked that I forward the public records we found showing Joe Craft's Election campaign donations and I have done so this morning. Prosecutor Phillips advised he would forward this matter to the Union County Sheriff Department for investigation.

I ask for NOT only my family but for all Jerome Township residents that this consent decree that was done in secret and possibly done under 'criminal' intent be ruled it was not done fairly and be pushed back till next year when those Trustees who the Residents voted for be allowed to review this matter and be discussed with all its residents publicly and not behind closed doors and done by lies and deceit.

Respectfully.
Bruce Beard

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.



**UNION COUNTY**
CHAMBER OF COMMERCE

June 8, 2021

An Open Letter to Our Community:

The Union County Chamber of Commerce represents 533 members throughout Marysville and Union County. We are dedicated to the economic vitality of our community, and as such, our Board of Trustees believes that the availability of residential housing at all price points should be a top priority for the future growth and development of Union County.

We celebrate that Union County is one of the fastest growing counties in Ohio. However, our County currently has a shortfall of available housing, and at the current development rates, that shortfall will continue. Unfortunately, at the same time, there seems to be a growing sense of opposition to new housing developments among some residents and even local officials. We believe that education about our housing situation is important to counter this opposition. For more than 10 years, housing supply has not kept up with demand. We believe that growth of housing units will allow our County to help reduce "brain drain" and the loss of young, middle-income adult residents who would otherwise need to find housing outside of Union County.

Additionally, our employers, large and small and across all sectors, are facing a critical need for talent. Currently, there are more than 9,200 unfilled positions within a 20-mile radius of Marysville. If trends are left unchecked, our County will lack the resident talent necessary to support the growth and development of existing and new businesses thereby threatening our long-term economic vitality. New residential development at all price points and a growing population will expand our workforce and provide more opportunities for businesses to remain viable.

To counter our housing shortage, the Union County Housing Taskforce, comprised of public and private leaders, was created two years ago. We applaud the work of the taskforce and support the four action steps it identified to better the environment for future residential development:

1. Educate Local Stakeholders on Residential Issues
2. Identify Housing Development and Redevelopment Needs and Opportunities
3. Incentivize Desirable Housing Development and Redevelopment Needs
4. Streamline Local Government Approvals

We ask community leaders and residents to embrace these action steps and ensure housing for each stage of a family's growth in our community – from the apartment to the starter home for the young family to the established family and on to the empty nester and finally to the retirement. We also recommend that the Union County community adopt the recommendations outlined in the housing study completed by the Building Industry Association of Central Ohio (BIA). The BIA study highlights the need for more housing to meet our growing population.

Union County has demonstrated time and time again that it can come together to address major challenges. We strongly believe that our communities can and should support additional residential growth and still protect the quality of life of existing residents and the rights of landowners. With proper planning, we can preserve our agricultural heritage and natural resources, maintain our public infrastructure, support our schools, and ensure that we meet the demand for social services.

The Union County Chamber of Commerce looks forward to working with our leaders and residents to promote the growth and development of our County in a smart and sustainable manner. We value dialogue and discussion on these issues and encourage our communities to work together with us to provide adequate housing at all price points so our County's economy remains strong.

We urge our leaders and residents to carefully evaluate future residential projects with a sense of how they can help address Union County's housing needs and workforce challenges thereby ensuring our economic vitality.

Sincerely,

**Union County Chamber of Commerce Board of Trustees**

Cory Hixson, President

David Amerine, Vice-President

Stephen Smith, Treasurer

December 22, 2021

Judge Michael H. Watson
Magistrate Judge Elizabeth A. Preston Deavers

Objection to pending settlement in Case No. 21-CV-03993

Thank you for allowing public input to the proposed consent decree in regard to the Jerome Township zoning amendment lawsuit. I am a Jerome Township resident, living in the Jerome Village development. I object to the pending settlement of the suit brought by several landowners and developers against Jerome Township. It is neither fair nor reasonable.

I have three principal objections:

1) ***The trustees have ignored their obligations to fairly represent the interests of the citizens of the township and have instead sided overwhelmingly with the plaintiffs.*** The plaintiffs have used the lawsuit to change the outcome of a bad business decision. The developers have become so used to getting their way that they assumed that the rezoning was a foregone conclusion. There is no right to rezoning, and both the sellers and buyers were, and continue to be, free to use the land as it is currently zoned. Contrary to the plaintiffs' allegations of an "arbitrary, capricious, unreasonable and unconstitutional scheme" perpetrated by "a few organized and vocal individuals,'' the electorate exercised their clear legal rights of petition and referendum, voting overwhelmingly, approximately 3-to-1, to reject the zoning amendments. An election held in accordance with the law cannot be deemed an absence of due process. The claims that the rejection of the zoning amendments represents an unconstitutional "taking" and an absence of due process are absurd on their face, and would be rejected by any reasonable court should the case proceed to trial.

2) ***The payment provisions described in paragraphs 20 and 21 will likely result in punishing the residents of Jerome Village, and only Jerome Village, by triggering increases in association fees.*** It is not, as the plaintiffs assert, that zoning in Jerome Township is broken. It is the Master Planned Community process that is broken. While I cannot speak for all of those who voted "no", the vote from Jerome Village spoke to the larger issue that the citizens of Jerome Village are in effect governed by a faceless entity that makes no effort to act as a representative body. If it meets, we are not aware of its proceedings or its decisions. We have no mechanism for either petition or representation. Jerome Village Corporation with its various bodies has shown no inclination to abide by the promises that were made to us regarding the development of the community. Nearly a decade in, there has been no work at all on the town center; the fire house that we were promised originally, and again when we voted for the fire levy, has not been started; the one and only community center is overcrowded and overpriced. All we see is the desire on the part of the developer to build more houses. In the runup to the election, we all received numerous, disingenuous mailings and emails from the Corporation promising that if we voted in favor of the zoning amendments, they might now start doing what they had already committed to when we purchased our homes. If the payment provisions of the proposed consent decree are accepted, it must be with the caveat that they are the obligation of the Jerome Village Corporation itself, and may not in any way be flowed down to the residents through increases in any fees or taxes or any other mechanism.

3) ***The settlement would unlawfully abrogate citizens' legal right to petition and referendum and must be rejected.*** The trustees have no authority through a consent decree to deny voters their rights under ORC 519.12 (H) and replace them with an administrative process.  Allowing Paragraph 23 to stand would not only be unlawful, but would deny the residents the only remaining tool that we have to hold the trustees and the developers to account.

Thank you for your consideration in this matter. I respectfully urge you to rule that this consent decree is neither a fair nor reasonable settlement of the issues at hand.

Sincerely,

Craig A. Chambers
10692 Arrowwood Dr.
Plain City, OH 43064
craigchambers01@gmail.com

| | |
|---|---|
| From: | danbun.db   gmail.com |
| To: | Meg Burrell |
| Subject: | Re: |
| Date: | Tuesday, December 21, 2021  :  0:10 PM |

**CAUTION - EXTERNAL:**

Daniel bunner 8  00 Mc   itrick Rd, Plain City, O    43064     do not know how to send as pdf

On Tue, Dec  1,   0  1, 6 3  PM Meg Burrell  Meg  Burrell   ohsd uscourts gov   wrote
   ello,

   ll comments about this matter must be emailed in PD   format    dditionally, please sign
the letter with your name

Best,

Meg

---

**From:** danbun.db@gmail.com <danbun.db@gmail.com>
**Sent:** Tuesday, December 21, 2021 5:07 PM
**To:** Meg Burrell
**Subject:**

**CAUTION - EXTERNAL:**

   am writing to let you know   am in favor of the houses on mckitrick rd,looking forward to
all of the services that will follow

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution
when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution
when opening attachments or clicking on links.

Dear members of the court,

I am writing to you to express my displeasure with my Township Trustees and their recent decisions.    I am a resident of Jerome Township, Union County, Ohio where my wife and I are raising our four children.    Our home is approximately 1 mile from the Hershberger Landfill, a hazardous waste disposal site which is located near one of the proposed developments.    Our township trustees have been unable to adequately address resident concerns on how the building and occupation of this large development may affect the landfill and surrounding areas.    Myself and many of my neighbors have questions that have been left unanswered and now we are told, despite overwhelming public opposition, the trustees have voted to allow changing in the township zoning which will allow this development.

  Jerome Township residents went through the legal process of voting with a referendum election in which the residents overwhelmingly opposed the changes to the township zoning regulations.    The township trustees then overturned the results of this fair and legal election and allowed large corporations and their money to step on the rights and hard work down by the township residents.

I am personally asking this court to step in and help uphold what the township residents fairly and legally voted for and to not allow a change in the zoning to allow these developments.


Thank you,

David Shore

# To the honorable Judge Michael H. Watson V.

## and Magistrate Judge Deavers

# The Craig D Scott Revocable Trust, etal

### Case No. 2-21-cv-3993

My family implores you to please be fair on this
matter. If this is overturned it will send a clear
message to us neighbors that voted overwhelmingly,
for these developments to be turned down that we
no longer have a voice! There is to much coming in
at the same time. Our roads are a dangerous
nightmare and County has pushed back
infrustructure another two years in this area.
There has been at least 10 different developments
passed for rezoning and all within a
5 mile area. Plus bringing in the largest Fed Ex hub
in the country and Amazon. We are losing the
integrity of our rural area. The township is
approving all these to be rezoned for these
developers to put more houses on top of one
another. Our roads and schools can not handle all
this. Thats why there were referendums on at least
4 that we overwhelmingly voted no by almost
80%. This makes no sense why this is even being
overturned? This will set a strong precedence
for any developer to be able to overturn the say
of the people.
Thank you for your time Doug & Lisa Farnholtz

To whom it may concern:

We strongly oppose the consent decree settlement reached by the Jerome Township Trustees yesterday. Their disregard for the public referendum vote is disappointing and appalling. They are allowing the development bullies to just about anything they want .
We fully support the Bob Chapman option to intervene.

Respectfully,

Dr. Mark and Rene Stover
11449 Canby Ct
Plain City



**UNION COUNTY**
CHAMBER OF COMMERCE

December 22, 2021

By Email to Meg_Burrell@ohsd.uscourts.gov
The Honorable Michael H. Watson
The United State District Court for the Southern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Boulevard Columbus, Ohio 43215

RE: Case No. 2-21-cv-3993 (The Craig D. Scott Revocable Trust, et al., v. Jerome Township, Ohio)

Dear Judge Watson:

Thank you for the opportunity to provide comment on behalf of Nationwide Realty Investors (NRI) in relation to its investments in Jerome Village, a mixed-use development located in Jerome Township, Union County, Ohio.   Over the past decade, NRI has not only invested, but has partnered with Union County, City of Marysville, Jerome Township, and other organizations to improve the quality of life of Union County.   Some specifics concerning Jerome Village are as follows:

- Located on 1,800 acres the development includes nearly 1,200 occupied homes with 300+ currently under construction.
- More than 700 acres of the development have been set aside for greenspace and/or woodlands including 15 miles of multi-use trails.
- 43 acres have been donated to the Dublin City School District for two schools – an elementary school and a middle school.
- Over 3,200 single family lots are planned in total with 15 of the region's home builders purchasing the lots for development.
- The average home price is $482,000 (low is $300K and high is $5M).
- NRI has invested over $80M in public infrastructure to support Jerome Village.

The Jerome Village and the public infrastructure investments to support of the development will benefit the future growth and development of Union County for many years to come.   We are thankful for NRI's commitment to Union County.   Thank you for your time and consideration.   Please let me know if you have any questions or comments.

Sincerely Yours,

Eric S. Philips, CEO
Union County Chamber of Commerce



# *Jerome Township*
# *Division of Fire*

12-22-21

In 2010 Jerome Township and the Jerome Village Community Authority entered into a cooperative agreement. The cooperative agreement provided for the contribution of land to construct a fire station, contributions for the design and construction of a new fire station in the Jerome Village Neighborhood, and for the purchase of fire and EMS equipment to be used by the Jerome Township Division of Fire. At that time, the contributions not including the land totaled $5,500,000 for the construction of the fire station and purchase of equipment.

In December 2021 the agreement was updated to include an additional $1,000,000 for the construction of the fire station and purchase of equipment. The total contribution not including the land totals $6,500,000.

The significance of this financial contribution and the land donation will be realized on many fronts. The 3 ½ acres of land that has been donated to Jerome Township for the construction of the new fire station is located at the intersection of Ravenhill Parkway and Ewing Rd. This location is ½ mile away from Dublin City Schools newest Elementary and Middle schools which house approximately 1800 students. Once constructed the response time for our fire and EMS crews will be 1 minute compared to 10-12 minutes from our current location. This location also provides quick access to key arterial routes within the response area such as US Route 42, Hyland Croy Rd, and Jerome Rd. These arterials allow responding crews to quickly respond to emergencies throughout the area.

Fire Departments are measured by their overall Insurance Service Office (ISO) rating which determines the insurance rating residents and business owners pay each year. Ratings range from 1 being the best and 10 being the worst. Jerome Township currently has a rating of 5. Factors that keep us from improving and being awarded a lower score are the distance of a home or business from a fire station, the home department not having the needed equipment such as an aerial ladder, and response times.

---

9689 US Route 42N
Plain City, Ohio 43064

**Fire Chief – Douglas Stewart**

614-873-8990 (O)
614-873-3501 (F)
www.jerometownship.us

# *Jerome Township*
## *Division of Fire*

With this financial contribution the Jerome Township Division of Fire will have the opportunity to move forward with the construction of the new station, purchase an aerial ladder truck, and help to reduce response times. As explained previously current response times range from 10-12 minutes in areas of the Township. Once constructed and operational, this station will allow us to realize reduced response times which meet and exceed National Fire Protection Association (NFPA) standards of 4 minutes or less. This will also allow us the opportunity to be reevaluated to improve our ISO score and pass that savings onto our residents and business owners in their insurance premiums.

Ultimately, the true test will be when our residents need us, we can respond to their emergencies and arrive within a few minutes. On Thanksgiving morning of 2019, our crews responded to the farthest section of Jerome Village for an infant that was not breathing. It took our crews 9 minutes to arrive on that scene. It takes less than 4 minutes for brain death to start when the human body is left without oxygen. Fortunately, the mother knew CPR and the child survived. Once the new station is built, we will only be 2-3 minutes away from this area. The key is, when our residents call, they are having the worst day of their life and they need us to fix it right then. If we are too far away it can mean life and death. The closer we are the better we can serve them.

I spoke of the aerial ladder truck. As we finalize the design of the station, part of the agreement calls for purchasing equipment for the fire division. One of the best pieces of equipment that we can purchase and utilize throughout the Township is an aerial ladder. If we did not have this contribution, we would not be able to fund this purchase for several years to come. Our ISO rating suffers because we do not have an aerial ladder and our operations suffer. Ultimately the safety of our community suffers which puts lives at risk including my firefighters.

Another front is the health and safety of my firefighters and the building they are living in. The current station was built 30 years ago, was designed for 4 people, and is a pole barn. It has served the Township well, but it does not meet the current health and safety guidelines for the fire service.

---

9689 US Route 42N
Plain City, Ohio 43064

**Fire Chief – Douglas Stewart**

614-873-8990 (O)
614-873-3501 (F)
www.jerometownship.us



# Jerome Township
# Division of Fire

The design of the new station due to this contribution meets and in some ways, exceeds the health and safety guidelines for our personnel.

The station location and design were purpose driven, but with a budget in mind. Location was important so we could interact with our residents, the schools, and the community. The design of the station incorporated a front porch to invite our residents to the station and bring back that community firehouse feeling and be welcoming. We want to be part of the community and we want them to be part of our firehouse. This firehouse is their investment and we want them to feel welcomed.

In 2019 the Fire Division was awarded a Staffing for Adequate Fire and Emergency Response Grant from the Federal Government to pay for part of the salary and benefits of 9 of our firefighters. In 2020 after 3 attempts, we were finally able to pass a small property tax levy to cover the salary of these firefighters once the grant funds run out in 2022. If it was not for the Cooperative Agreement with Jerome Village it would not be impossible for us to build this new station, purchase an aerial ladder truck, and expand our department to meet the diverse needs of our community. The approved tax levy will not cover any capital expenses and it is only anticipated to cover personnel costs.

This contribution will go a long way in benefiting the health and safety of the residents and firefighters of Jerome Township now and into the future. We are only seeing the beginning of the benefits now. Once the station is constructed and operational, we will have tangible proof of the long-lasting benefits.

Respectfully

Douglas Stewart

---

9689 US Route 42N
Plain City, Ohio 43064

**Fire Chief – Douglas Stewart**

614-873-8990 (O)
614-873-3501 (F)
www.jerometownship.us

Dear Members of the Court,

I am a Jerome Township, Ohio, resident who is overwhelmed and frustrated by the constant development of our rural community. I am strongly opposed to the over-development and high density housing which our current, lame duck, trustees have supported for the last several years. I voted against all development in our most recent elections.

I do not feel that it is proper – perhaps legally, but not morally – to allow trustees that have been voted out of office to approve a consent decree that the people have clearly shown is not the will of those whom they represent. We the people have spoken and deserve the respect of having our voices heard.

I respectfully urge you to reverse course on this lawsuit and allow the will of the people to stand.

Thank you,

Respecfully,

Fletcher K. Rudlaff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Craig Scott et. al.**
        **Plaintiffs,**


**v.**                                        **Case No.**        **Case No. 2:21-cv-3993**

**Jerome Township**
        **Defendant.**

**LETTER IN SUPPORT OF APPROVAL OF CONSENT DECREE**

Dear Judge Watson:

My name is Geoffrey P. Scott and I am the son of Phil and Susan Scott, one of the plaintiffs in this matter. On behalf of my mother and father I am writing in support of the Consent Decree recently approved by the Jerome Township Trustees.

My Grandparents purchased the Farm, which is the partial subject of this litigation, in 1944. My Grandfather ran a commercial turkey operation in the 1950s and 60s, raised beef cattle, and later sheep as a hobby. When livestock became too much for him to manage, it became a grain farm that was rented to younger farmers in the area. I paid for my college education growing and selling hay. My dad and uncle attempted to farm it in their retirement, but soon found out how hard farming could be. As development moved out from Columbus and Dublin with new housing and traffic, it became increasing difficult and impractical to move large farm equipment around and continue the grain farm. The farm is currently surrounded by housing developments. Farming also generates very little net income after the payment of taxes and other expenses associated with farming. While our family has always loved the Farm, it is completely impractical to keep it in farming and the time has come to sell for development.

Sadly, my father passed on October 13, 2021. Mom is doing well, but she is 80 years old, and while she does not need the same level of in home care as my father, who suffered from Lewy Body Dementia, she still needs help to stay in her home. My parents are retired school teachers and live off their pensions and a little Social Security. The Farm was not only a treasured family experience, it was also and inheritance and investment that would be available as a source of retirement income and security. My family needs to sell the Farm to allow my mother to remain in her home. It cannot be sold unless the change in zoning is approved.

The sale also just has to happen. Upon my mother's passing, if the Farm is not sold it will again be subdivided among me and my siblings in to smaller, more awkward parcels with inadequate road frontage. The continued holding and division of the Farm will reduce its value.

Our family appreciates the desires of certain members of the community who would like to see our Farm forever maintained as open space for their personal enjoyment. We have certainly enjoyed it for nearly 80 years. But it is not fair or right that our family should bear that cost for the rest of the community. Approval of the Consent Decree will provide us with appropriate zoning based on the proposed utility infrastructure for the intended use of the property, which is consistent with the long term master plan of development for Jerome Township. The development will also allow my family to realize the financial value of the Farm.

On behalf of my family, I ask that you approve the Consent Decree.


_____ /s/ *Geoffrey P. Scott* _____

Geoffrey P. Scott. Esq.
6641 North High Street, Suite 209
Worthington, Ohio 43085
Direct: (614) 940-8105
Fax: (614) 848-9818
E-mail: geoffrey@gpscottlaw.com

Heather L Sargeant
9400 Brock Rd
Plain City, Ohio 43064

December 23, 2021

The Honorable Michael H. Watson
The Honorable Elizabeth A. Preston Deavers, Magistrate
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISON
Reference: Case No. 2:21-cv-3993

Your Honors:

I respectfully disagree with the vote of the two outgoing Trustees to approve the Consent Decree before Jerome Township. I do not believe the consent decree as currently written is fair, adequate, reasonable, or consistent with the public interest.

I live across the street from one of the proposed developments and became aware of the development after receiving a letter in the mail sharing the family's plan to sell their property for a 248 home development. I have spent numerous hours speaking with the zoning inspector, zoning board members, the trustees, the fire chief, and the Union County Asst Engineer working to better understand the process of how zoning can be changed and my rights to protect the safety of my family as well as ensuring that I will be able to safely access my property. What I've learned through this process, is that Jerome Township has a very outdated Comprehensive Plan (2008) which serves as the guidelines for zoning changes and that the Trustees always approve new developments even when there are points that should be considered which show that the proposed rezoning does not comply with the comprehensive plan as outlined in the procedures to amending under basis of approval (section 500.08.4).

When reviewing the Comprehensive Plan and the approvals provided by the zoning board when recommending to the Trustees, I was frustrated to see that the members of both groups did not take into consideration several points which are supposed to be considered when approving the Homestead at Scotts Farm. Had they taken these points into consideration, I believe many of the developments that are part of the consent decree would not be approved, primarily due to safety concerns. While the land owners have the rights to their land, their rights are not absolute. They cannot do whatever they want; they are bound by the rules of the Township where they live. Their rights end when they interfere with the rights of their neighbors to safely access their own land. These safety issues include dangerous intersections, hazardous waste sites being disturbed, uncontrolled water runoff, and flooding due to construction destroying natural preventative measures.

Specifically, to the Homestead at Scotts Farm, the proposed development did not meet community standards set out in the comprehensive plan for the following points:

>*"c) Whether the proposed development promotes the public health, safety and general welfare of the Township and the immediate vicinity"*
>*"k) Whether the development can be made accessible through existing or future roadways without creating unreasonable traffic congestion in the immediate vicinity of the proposed development or elsewhere in the Township"*

The intersection of 42 and Industrial Parkway has been on the radar of Union County since 2014 when it was determined to be a dangerous intersection in need of repair. This intersection is one of the few ways to access SR33 to get to 270 and Columbus. Since 2014, numerous developments have been approved with hundreds of homes being built which continue to put stress on this intersection. At this point, it is estimated that this intersection will not see improvements until 2024. More than 10 years later! While I understand that the developers have contributed some of the funds for this intersection, the need existed before the homes were built. Correcting this intersection has been delayed by the continued new developments. The approval of Pioneer Crossing resulted in the plans having to be redrawn to account for entrances and delaying the project. In speaking with the Asst County Engineer, while the funds are helpful to pay for the improvement, they were not the only source of funding and the intersection will be completed regardless of the developer funds. The Asst County Engineer hears from the residents more than he does from the Trustees who are supposed to be representing our best interests. Numerous serious accidents occur and continue to occur at this intersection, the frequency of which will increase as more people travel these roads.

The traffic study provided to the Trustees for review was completed during the peak of the stay at home orders and used a sample of one to extrapolate/adjust for this unprecedented time. In addition, the study failed to include four developments in the immediate area which impact the intersections of the study. The development was approved prior to the County Engineer's office comments being addressed/incorporated. This information is imperative to making an informed decision and the basis for the developer's contributions to address their impact on traffic was skewed in the favor of the developer.

>*"g) Whether the development will have a beneficial or an adverse effect upon the Township and other governmental services"*
>*"i) Whether the existing and proposed utility and governmental services are adequate for the population densities and nonresidential uses proposed"*

The brand new elementary and middle schools which opened in 2020 and 2021 are quickly approaching capacity and will be overcrowded starting next year. Students at the high school learn in hallways or trailers as there aren't enough classrooms for the number of students. Dublin Schools planned for 150 new homes a year from Jerome Township however that number is more than 400. This is not what Dublin agreed to when the former superintendent met with the Township Trustees several years ago. While the new superintendent is working to address

these concerns, he cannot address them as quickly as the Trustees have approved new developments. This is not a safe environment for our students and is not in the best interest for our community.

*"f) Whether the proposed development will be compatible in use and appearance with surrounding or planned land uses"*

The vast majority of the developments in Jerome Township are part of Jerome Village and as such, their standards have become the de facto community standards. The Homestead at Scotts Farm does not meet several points important to the residents of the Township. First, the density of Jerome Village is 1.6 homes per acre while the proposed development is 1.8. The developers refuse to adjust density to be in line with community standards. Jerome Village constructs all trails and access to parks prior to building one home. Safe access to the Metro Park is the only benefit that this development will provide to the current residents however access will only be provided through sidewalks through the development which will eventually be connected to another development that will have access on the far, opposite side even though the proposed site is adjacent to the Metro Park. As the developers of this property will not be putting in the infrastructure prior to building, access won't be achieved for at least 5-7 years.

After these points were raised, the developer stated they would put in at right hand turn lane at the end of Brock at a cost of ~$300K and donate ~$50K to the Harry Wolf Park for improvements. Neither of these actions will address the concerns as stated above, but it did lead to the Trustees approving the zoning change however there is NO MENTION of these points in the rezoning or in the consent decree. The developer is under no obligation to follow through. The failure to meet residents concerns and the lack of these terms in the approval lead to the referendum.

In the exhibit for the Homestead at Scotts Farm as part of the consent decree, there is no conceptual drawing. I find this most interesting as the lack of a color copy of the drawing was a point the lawyers for the Scotts attempted to use to have the referendum thrown out. A drawing should be included in the consent decree to ensure all area aligned and there is no confusion. I fear that there are changes and the lack of a drawing is an attempt to hide these changes from the community.

The Comprehensive Plan did not take into consideration all of this development happening at the same time. Additionally, it hasn't been updated since 2008 to account for the changes that have occurred in the Township. I am not against development and have repeatedly stated as much. I am against uncontrolled development putting additional burdens on already stressed roads and schools where the only benefit is to the developer and landowner at the cost of the current residents. There are more than 3000 lots throughout Jerome Township that are already approved where construction of the homes hasn't yet occurred. The trustees should address the outdated comprehensive plan in the consent decree as this is the true problem and source of conflict. Not addressing the outdated plan is not reasonable or fair.

In looking at the consent decree, there appears to be little to no concessions to address the concerns of the residents who overwhelmingly voted against the rezoning. The residents and adjacent neighbors were not able to provide any input as all discussions were behind closed doors or with developers and attorneys. I do not see how this can be considered fair and reasonable. Furthermore, the trustees who voted for the consent decree do not have the public support and should not be making decisions that will continue to impact the Township for years to come. It is not fair, reasonable, or in the public interest to allow individuals who have been voted out of office or chose not to seek re-election to make such a one-sided agreement within the last days of their time in office. It was clear from the public meeting that their decision had been made and they weren't interested in hearing what was said. I sent a letter to the trustees as I was out of town at the time of the meeting as many of my neighbors were given the Holidays. I know many other residents did also. I encourage you to request and review the letters that were not read at the meeting for public comment. I believe that the timing of these meetings was purposeful to make it more difficult for residents to participate.

**I respectfully ask that you do not approve this consent decree. Please send it back to the new trustees to determine the right balance between development and the current residents of Jerome Township. A balanced and measured approach is needed and the consent decree as written is not.**

Respectfully yours,


Heather L. Sargeant

From:            Carolyn Mitchell
To:              Meg Burrell
Subject:         n support o  Jerome Township Consent Decree
Date:            ednesday, December 22, 2021 11:2  :2  AM

---

C   T O      T R


 n regard to the pending settlement in Jerome Township s Consent Decree,   would like to speak in support of the
township trustees     believe it is fair and reasonable when the, board of  oning commission and the  trustees are
satisfied that the  developers have ade  uately followed the  oning rules, we would accept their ruling    also believe
that we still have property rights in this country    hate to think that  ust because some people do not like housing
developments that we have no rights to sell

Thank you for your consideration

Carolyn    Mitchell

 ent from my iPad
C   T O     T R     M      This email originated outside the Judiciary     ercise caution when opening
attachments or clicking on links

# Office Of The Sheriff

UNION COUNTY, OHIO

## Sheriff Malcum J. "Jamie" Patton

*Accountability*
*Integrity    Dedication*

December 23, 2021

Honorable Michael H. Watson
The United States District Court for the
Southern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Boulevard
Columbus, Ohio 43215

Judge Watson,

Please let me introduce myself, Malcum J. "Jamie" Patton, Sheriff of Union County. I've worked for Union County Sheriff's Office since 1991 and have been promoted through the ranks and appointed Sheriff in April of 2011 and elected in 2012, 2016, 2020 and with the hopes of continuing through 2028.

I've witnessed in the last thirty years the growth of Union County, more specifically the City of Marysville and the southern part of our county, not only in residential but commercial growth also. I believe, the reason people want to locate here in Union County is the quality of life, excellent school districts, low crime rate and local government services.

In 2009/10, Union County had a major setback, as with the entire country with the recession. Now, with the teamwork of many in our local government in Union County, specifically work done by Eric Phillips, CEO of Union County Chamber of Commerce, Economic Development Director for Union County and Marysville and his team, the 2020 census shows Union County in the last ten years rate at 20% growth.

Now, to why I'm writing, sharing from my perceptive. The County Sheriff has very little, to no involvement in development. We may have the Board of Township Trustees, the Board of County Commissioners or even the County Engineer that may ask our thoughts or ideas of traffic issues with potential development.

As I recall back with the previous Sheriff in 2005, his involvement in meetings with local government officials in the planned development of Jerome Village by the Nationwide Realty Investors. The masterplan of Jerome Village consisted of 1,800 acres in Union County, with the community spanning nearly three miles from the north to south. In the plan, includes fifteen-mile network of walking and natural trails connecting to Glacier Ridge Metro Park system. Today, Jerome Village has 1,133 occupied homes with 325 currently under construction.

221 WEST FIFTH STREET • MARYSVILLE, OHIO 43040

Emergency 9-1-1 • Non Emergency (937) 645-4100 • Sheriff and Administration (937) 645-4102  Fax (937) 645-4170
Investigations (937) 645-4101 • Court Services (937) 645-4103  Fax (937) 645-4171 • Toll Free 800-258-8278 In County Use Only

Unlike any other development in our county, the Nationwide Realty Investors team for Jerome Village have been engaged with our office from the beginning of their development plan. So much, with regards to the investment in Public Safety. Jerome Village contributed three acres of land and $6.5 million toward the construction of a new fire station and equipment that will include space for the Sheriff's Office.

Nationwide Realty Investors have worked with the Sheriff's Office in education efforts around law enforcement and Block Watch programming within Jerome Village plus supported our levy effects over the last year. I'm confident that the sprint of cooperation will continue as Jerome Village continues to grow.

Warmest regards,

Malcum J. "Jamie" Patton
Sheriff of Union County

Dec 22, 2021

To Meg_Burrell@ohsd.uscourts.gov

Regarding the Objection to consent decree for Jerome Township

I am writing to voice my concern and objection to what the trustees in the Jerome township have done.
There were referendums that were passed and signed by the residents in Jerome Township. We all
Followed the rule of law and did so by a due process. This put these referendums on the ballot for a vote

These referendums were voted down NO overwhelmingly by the voters.
Now 2 trustees who will vacate their seats @ the end of the year, give the builders all rights to do as
they please?? WHY??? And how is this legal?

We have lived here for 26 years, there was a farm house across the road and this was country.
Now all around us all these housing developments are going up causing extreme traffic issues.
I was told don't worry they will upgrade, and was told also that in front of my home they will put
In a turn lane. That not only hurts my property values but I will not be able to get out of my own
Driveway. That's just one of my personal issues.

Please revisit this and read these submissions as it effects this entire community. We followed the rule
Of law and did so by submitting signatures and it was put on ballots. Please don't just give into the
money hungry builders and let more of our township turn into nothing but more look alike housing
Developments.
Have a Blessed Christmas
Curtis and Jeanne Wright 10234 Brock Rd Plain City, OH 43064

| From: | Brad Sparling |
|---|---|
| To: | Meg Burrell |
| c: | Suzie Davlin   Jac_Sparling   Nic_Sparling   Emma Sparling |
| Subject: | Jerome Township Consent Decree |
| Date: | Thursday, December 23, 2021  :  :09 AM |

**CAUTION - EXTERNAL:**

To whom it may concern

 am a resident of Jerome   illage and am hereby notifying you of my   TRO  G opposition to the consent decree that overturned the Jerome Township election results in our recent referendum

This consent decree is wrong   was shocked when  heard about it  When over      of people vote against something in our country, that vote should have meaning   We the people should have meaning

Please do what s right and rescind the consent decree overturning our election results  Thank you

Brad   parling
Coach President
Play Golf  n College
www playgolfincollege com


614  8    438 cell

  4   Cottonwood Drive
Plain City, O   43064

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

From:       Debbie Chadwell
To:         Meg Burrell
Subject:    Jerome Township Ob ection to Development
Date:       ednesday, December 22, 2021 2:0  :21 PM

**CAUTION - EXTERNAL:**

Hi,

I attended the Jerome Township meeting on Monday, 12/21/21. This development was already voted down, however, developers seem to keep pushing. I strongly protest this development. We already have so much traffic, congestion, and over building for our area. We don't have the roads and info structure to handle this kind of development. There is not one person in Jerome Township that supports this development. We cannot even pull out of our driveway the amount of traffic we have and it just keeps coming. Please do not let our neighborhood suffer any more that it has already suffered. Thank you.

Debbie Chadell
9940 Hyland Croy Road
Plain City, OH  43064-9088

614-873-8901  Phone

Best regards,

Debbie Chadwell
614-733-3927  Phone
kriegerdc@aol.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

| | |
|---|---|
| From: | Jon  elm |
| To: | Meg Burrell |
| Subject: | Jerome Village |
| Date: | Thursday, December 23, 2021 9:  0:10 AM |

**CAUTION - EXTERNAL:**

Good morning Meg and Happy Holidays,

   My name is Jon Hjelm, my wife Kathy and I have lived in Jerome Village for over 20 years.  I have been the chair of the Jerome Village Community Authority for several years.  The purpose of my note is to support the Consent Decree.  We have been very impressed with the high quality of development and community support made by Nationwide into our area.

The Jerome Village Company has been a good community partner to the Township and its residents.  Please feel free to contact me should you have any questions.

   Respectfully , Jon E. Hjelm

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

John M. Deane
Patricia AW Deane
8285 McKitrick Rd.
Plain City, OH 43064-2097

December 21, 2021

The Honorable Michael H. Watson
The Honorable Elizabeth A. Preston Deavers, Magistrate
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Reference: Case No. 2:21-cv-3993

Dear Judges,

We are writing in response to your request for statements or objections to the agreement reached in the matter of The Craig D. Scott Revocable Trust, et al., Plaintiffs v. Jerome Township, Ohio, Defendant referenced above.

We, the undersigned, object to the agreement reached by the existing parties. Through this agreement, we find ourselves unfairly restricted in our rights to object to decisions made by Jerome Township, specifically but not restricted to our right to put decisions up for public referendum.

We reside in a property immediately adjacent to plans put forth by one of the participants in this case, Wicked Chicken, LLC. We find ourselves immensely affected by the decisions made relative to this property and the request for rezoning. It is this that initiated our active participation to inform other residents nearby and submit the matter to referendum.

The voters of Jerome Township voted by upwards of 80% to oppose the development rezoning on various grounds, but specific to us,

a. the violation of the key covenants of the Jerome Township Comprehensive Plan: to protect and enhance township's lifestyle by maintaining the rural character, the quality natural environment and, where appropriate farms; to recognize agricultural and other productive open spaces as important elements of the local economy, character and setting; to maintain a high-quality physical environment that provides quality residential opportunities supported by small businesses, preserved open space and historic character, and improved public areas and to foster scenic and recreational opportunities that meet the needs of area residents. While this point might seem very general, the rezoning requests specifically, materially and progressively diminish the intent of the authors of the Comprehensive Plan;

b. to impact in a material way the safety of those of us that live on McKitrick Road due to increased traffic and the danger posed by much higher speeds of that traffic on this country road. This item is already a notable and daily issue today, only to be made worse with the added population being considered within this rezoning;

c. to further tax the availability of safety and fire service in the township, a township that by its nature is rural and removed from high volume city planning for these critical services;

d. the unresolved impact on the increased flow of rainwater from newly hardened hard surfaces to be built on the creek and marsh that exist within our property.

It is interesting to note that once the initial zoning decision was put up for referendum, but before this step shone light on a probable outcome, the owners of Wicked Chicken, LLC, in full knowledge that there was a pending decision, proceeded to chop down and clear the property of protected forest and underbrush. This has already changed the nature of the area and impacted deer and other wildlife habitats, adding credence to some of the points made above.

The voters of Jerome Township rejected the rezoning request for these and other valid reasons, and we thought we had prevailed, only to learn later of the lawsuit filed by the plaintiffs in the case in question. This led to a concerted effort to secure Trustees that would listen to and uphold the residents' deeply felt wishes. To this end, Jerome Township voters selected two new trustees that we felt would look to protect our needs, voting out one Trustee who seemed to be consistently biased against these wishes.

Having accomplished the goals of ensuring that we were going to be protected, we found out that the CURRENT Trustees, including those to be replaced, entered into this consent decree (signed within two weeks of the end of their terms), which reverses two referenda and a Board of Trustees composition vote. Not only does this agreement reverse three significant voting results, but it also further restricts our rights to further input by eliminating the residents' right to object via referendum…

To those of us who voted, this seems to be patently unfair, malicious, and solely economically driven. The outgoing Trustees (who both voted with the owners and developers named as plaintiffs), wash their hands while leaving Township voters with exactly what we were fighting against.

As has many times been stated in Township public meetings, we are not unreasonable people. We are, contrary to plaintiff statements included in the agreement, NOT a few organized and vocal individuals in the Township who have hijacked the zoning process. The voting results were overwhelmingly positive to our positions. We exercised our right to reject INDISCRIMINATE development. The entire weight of this agreement would rest on the shoulders of the residents. Even the "concessions" included are either monetarily negative to the Township or completely devoid of any performance management structure that would ensure completion, sanity, safety and the preservation of the principles written into the Comprehensive Plan.

In summary, we are NOT blocking landowners and developers from developing their properties, just the bulldozer way in which they are doing it. We are NOT stopping the plaintiffs from putting their properties to economically beneficial use, only affecting their unreasonable perception of the profits they think they can make from that beneficial use to the detriment of everybody else. We are NOT suggesting they be treated unfairly, since we are all subject to the same set of restrictions we are supporting in our positions. Further, to say that the referenda impinge on their rights under the United States Constitution is so far beyond the reality of this set of issues that it begs questions of rhetorical overreach.

Again, we appreciate your willingness to hear from those of us opposed to this agreement. We hope you will take the points made above as made completely with the objective of supporting Township progress without the negatives that indiscriminate development leaves behind.

Thank you for your consideration. We look forward to hearing your decision and hope we can stop feeling unheard and unfairly treated.

Yours, sincerely,

John M. Deane                                    Patricia AW Deane

Judge Michael H Watson
Magistrate Judge Deavers

Objection to pending settlement in Case No. 2:21-cv-3993

 I was shocked to learn about the pending settlement approved by the Jerome Township Trustees earlier this week in an "emergency" meeting, and I am very nervous about the impact this could have on our community now and in the future.

I fully admit I am not well-versed on ORC and other legal details outlined in every page of this case, I do however feel confident that the citizens of our community followed the law throughout the course of this process. There was obviously a disconnect between some of our Trustees and the citizens of our community, but because we have laws and processes in place that include a true checks and balances system, as a community, we were able to work through the processes and make decisions based on what the majority of the community felt was right.

 As a citizen, parent, and educator, I look at the big picture of what appears to be happening here, and it is upsetting. Why and how are such impactful decisions allowed to be put forth in an "emergency" setting, with very little time for discussion or explanation, and right before our Board of Trustees is about to change (based on the votes from our citizens)? This is hard to swallow as a community member, but more than that, it's sickening to think that points of this decree could impact our kids well into the future. We teach our kids to work through due process and to make their voices heard with their vote, yet everything about the way this decree is being pushed through contradicts those lessons.

Please, help the citizens of our community by putting a pause on the settlement of this pending lawsuit, help us keep our checks and balances in place, and help us maintain a community where justice is upheld and the majority voice does matter.

Thank you for your time and consideration in this matter.

Kathryn Anderson
10420 Crottinger Road
Plain City, OH 43064

Kelly Transue

8368 Mckitrick Rd

Plain City, Ohio 43064


Honorable Michael H. Watson

Honorable Elizabeth A. Preston Deavers, Magistrate

US District Court Southern District of Ohio – Eastern Division

Reference Case : Case #2-21-cv-3993


Your Honors,

Thank you for taking the time to consider my concerns about the Consent Decree in Jerome Township. The growth being allowed is unfair and unreasonable. I am not a person who is saying "not in my backyard" to development, but no to unrestrained, unplanned, unprepared growth. My family has lived here since the 50's and everyone who has ever come to Jerome comments on its beautiful, rural character, which is why we have chosen this as our home. Our taxes are astronomical and they have gone up with every new development that is put in, despite the developers telling us what a good deal we are getting. As a teacher and mother, I know first-hand that our schools are bursting at the seams and trailers have had to be brought in to handle capacity. My children were redistricted 3 times before they left elementary school. Our nice country road is now more like a freeway, which has become scary to walk down. Although developers (Wicked Chicken) have claimed traffic as a non-issue, traffic studies were conducted during the height of the covid-19 pandemic which produced abnormally low traffic everywhere. Now with a major hub for Fed Ex just down the street, traffic is already a major issue. The intersection of Industrial Parkway and Mitchell Dewitt is an intersection I avoid as it is crowded and dangerous at peak times of the day. These developers act as if they have a right to do what they please and use their deep pockets to bully and threaten local residents. What has happened to well thought out growth that would continue to allow for a rural flavor? The developers are behaving like hit and run drivers- they come into a community cut down its trees, raise our taxes, fail to manage pollution, don't fund our fire or police, over-crowd our schools, refuse to address traffic issues or the safety and well-being of those who live here and then they leave with their pockets full of money. I can't help but think about the story of THE LORAX. Two of our current trustees are on their way out and we have elected who we hope will be trustees that will protect our township and listen to the residents. Please help us bridge this critical time in Jerome Township into the next year. Please denounce this Consent Decree as NOT fair and reasonable and allow our newly elected trustees to renegotiate with these developers in a way that keeps the best interest of our township in mind.

Sincerely,


Kelly C. Transue

Case No. 21-CV-03993
Judge Michael H. Watson
Chief Magistrate Judge Elizabeth A. Preston Deavers
Sent to Meg Burrell@ohsd. uscourts. gov.
12/23/2021

CONSENT DECREE SUPPORT STATEMENT

As a Jerome Township resident, I support the consent decree reached between Jerome Township and the plaintiffs in Case No. 21-CV-03993. Each of the plaintiffs followed the established process in seeking the right to develop property they owned or retained the right to own. The process for approval for zoning of the properties mentioned in the consent decree were followed. Those who wished to develop the properties not only followed the law, but some were sent back by the zoning commission to conduct soil and water testing, change their design to protect public safety and meet with nearby residents to obtain feedback for adjustments to their development.

One of these proposed developments, Homestead at Scotts Farm, followed the input of neighbors that resulted in a redesign of the main entrance to the development. In addition the design of the development was protective of the environment as many of the grassy waterways established by the previous farmer owner, as part of their environmentally sound farming practices, were to be retained by the developer.

I am in favor of the referendum process as a much needed check and balance to government rulings that could have adverse effects on a community. However, those who seek to use the referendum process, need first to substantiate their reason for bringing such a process forward with data that is based on facts. For example, at the Monday 12/20/2021 evening hearing at the Jerome Township hall, many of those who spoke said that 80 percent or more of the registered voters voted against these developments. Out of all registered voters in Jerome township, 5860, as listed by the Union County Board of Elections, only 2503 total residents voted. Of those, 1,842 voted no, or 31.4 percent of register voters in Jerome, not 80+ percent of registered voters as touted by those at the meeting on 12/20.

Before a ruling is made regarding the consent decree, I would like the court to obtain accurate numbers from the County Board of Elections, to assist in making the determination and use the true percentage regarding the votes on each development. In addition, I would ask the court to uphold the value of private property rights. Protection of private property rights is paramount, and that is why I support the consent decree.

Ken Gordon
9340 Warner Rd.
Plain City, OH 43064

Delaware, Fairfield, Franklin, Knox, Licking, Logan, Madison, Marion, Morrow, Pickaway, Union



The Honorable Michael H. Watson
The United States District Court for the Southern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Boulevard
Columbus, OH 43215

Dear Honorable Judge Watson,

One Columbus serves as the regional economic development leader for the 11-county Central Ohio region. We represent hundreds of private companies and more than 30 local governments, non-profits, and institutions that are focused on strengthening and growing the regional economy by attracting and maintaining quality jobs.

The Columbus Region is an attractive business location and a great place to live, work, and play. Growth is necessary and an important part of our region's future. Building housing of all types is not only important to accommodate a growing population of talented people, but a critical business issue for small and large companies in our area.

Jerome Village is and will continue to be an important area of growth and development for our regional economic development partners in Union County. Master-planned and developed by Nationwide Realty Investors in 2005, Jerome Village is located close to both major employers and hundreds of small businesses offering quality, career-oriented jobs. The demand for further housing development in this community is a testament to the quality of life in the area and the planning and collaboration of public and private partners. One Columbus supports the development of additional housing in Jerome Village to support the workforce needs of our small and large businesses in Central Ohio.

All the very best,

Kenny McDonald, CEcD
President and Chief Economic Officer
One Columbus
150 South Front St, Suite 200
Columbus, OH 43215

The Honorable Michael H. Watson
The Honorable ElizabethA. Preston Deavers, Magistrate
UNIITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
Reference Case No. 2:21-cv-3993

Honorable Michael H. Watson and Honorable Elizabeth A. Preston
Deavers,

As a voting resident of Jerome Township, I object to recently signed
consent decree. Therefore, I am asking that it be disallowed. It is in stark
opposition to the 4 referendums that have all passed with large margins at
the polls. This consent decree states that those 4 referendums were unfair
and with bad-intent. This is untrue. The referendum process was
meticulous, law-abiding and withstood scrutiny at the Union County Board
of Elections. If this consent decree is allowed to stand, the residents will
have lost their ability to have their voices heard at the polls.

As a second point of interest…all of this land that these developers
purchased was designated RD at the time of their purchase. There was no
guarantee and they chose to engage in a speculative endeavor. They or
their representatives were at all of these township meetings and were fully
aware of the residents thoughts and feeling about the developments they
had planned. But they proceeded along and then were defeated at the
polls. This consent decree is absolutely sour grapes and a bullying attempt
to stifle residential voices and get what they want. It is incredibly unfair,
and not in good faith at all. I ask that you do not allow it to stand.

Kevin Barney
8180 McKitrick Road
Plain City, Ohio 43064
614-545-8021

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| The Craig D. Scott Revocable Trust, *et al.,* | : | CASE NO: 2:21-cv-3993 |
| | : | |
| Plaintiffs, | : | |
| | : | Judge Michael H. Watson |
| vs. | : | |
| | : | Magistrate Judge Deavers |
| Jerome Township, Ohio, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |

---

**STATEMENT OF SUPPORT SUBMITTED BY OHIO HOME BUILDERS ASSOCIATION, INC.**

---

Kristen L. Sours (0082212)
Ohio Home Builders Association
17 South High Street Suite 700
Columbus, Ohio 43026
Phone: (614) 228-6647
Facsimile: (614) 228-5149
Email: kklaus@ohiohba.com

*Attorney for Ohio Home Builders Association*

## STATEMENT OF SUPPORT

Ohio Home Builders Association, Inc. ("OHBA") is a 4,000 plus member trade association representing home builders, land developers and their associate vendors in a legislative and regulatory capacity on a statewide basis. OHBA serves its membership by taking a proactive approach to state issues and legislation to promote the residential construction business. As Ohio's premier home building industry representative, OHBA represents an industry that creates significant economic growth in Ohio while also advocating for statewide policies that foster the public's ability to obtain affordable housing.

As the only statewide association representing the residential construction and land development industry, OHBA has unique insight into the practical reality of the residential land development and home building industry. Further, OHBA can offer valuable perspective on the level of impact fairness, certainty and predictability in the building process can have on its membership and their ability to provide affordable housing opportunities in Ohio, as well as, the vital role the residential construction industry plays in the Ohio economy. The goal of our membership is to provide safe, quality, affordable housing to all of the citizens of this state. OHBA has experience examining the application of statutes and local zoning regulations, recognizing the need for a reasonable, predictable and consistent approach.

I. **The statutory authority to enter into settlement decrees was given to townships by the Ohio legislature to provide an important mechanism allowing the legal standard to prevail against the potential passion and prejudice of anti-development neighbors.**

When the Ohio legislature passed Ohio Revised Code 505.07, giving townships the power to enter a settlement decree, the law was clearly put together for a reason: to provide an important

balance combating discrimination, passion and prejudice, while recognizing the protection of personal property rights and existing legal standards.

In this situation, all the underlying cases were all initially supported and approved by the township trustees. In every case, these developments were in compliance with the township comprehensive plan and zoning regulations. There is no reason, other than passion and prejudice of anti-development neighbors, these should be sent to referendum, as they all complied to what the township already said they would approve.

There is a severe housing shortage in the state of Ohio and more specifically in Central Ohio. If we cannot build new housing developments in areas that the township calls for such activity, this shortage will only get worse. With the limited supply, housing prices have risen over 15% in the last 12-18 months. This is an unprecedented price escalation and as leaders in our industry, we need to do everything we can to promote fair and balanced housing options for our communities. The National Association of Homebuilders (NAHB) recently reported that in addition to a critical shortage of housing, there is also a critical shortage of developed lots on which to build housing.

The ability to compete efficiently in the home building industry and optimally price a home depends on the degree to which overall costs are certain and predictable. Any exposure to developers and builders of increased risk of uncertainty, liability, and litigation expenses will be reflected in home prices. Mitigating increased risk and cost associated with continuously changing standards will aid in keeping prices more affordable. With so much investment in the development process, predictability and consistent application of the laws is essential.

One of the often-overlooked impacts of building and development regulations are their effect on housing affordability. Every time a local or higher-level government issues a new construction/development regulation it can potentially raise costs. Higher costs invariably

translate into higher home prices and higher prices in turn disqualify more households from being able to afford new homes.

Given the statutory authority granted to townships to enter such settlement decrees, OHBA supports the use of such tool to allow the legal standard to carry the day.

Respectfully Submitted,

Kristen L. Sours (0082212), *Attorney for Ohio Home Builders Association*

Lawrence Mastella
9362 Brock Road
Plain City, Ohio 43064
December 22, 2021

Judge Michael H. Watson and Magistrate Judge Deavers
Magistrate Judge Deavers
United States District Court
Southern District of Ohio
Eastern Division

Honorable Judge Michael H. Watson and Magistrate Judge Deavers:

I am writing today to voice my objection to the settlement as agreed to by Jerome Township Trustee Kraft and Lovejoy. I was one of the residents at the meeting who presented my objection in person at the special session on December 20, 2021. Not a single person spoke in support of the settlement. When the residents finished, Trustee Kraft immediately read a prepared statement in support on the settlement, Lovejoy seconded the motion and just like that the wishes of a majority of the residents, as reflected in the referendum votes, were dismissed.

I am not against growth. I am pro smart growth in keeping with the character of our township by creating the infrastructure and safety services to support our growth. What I am against is the perception created by the two named trustees that anything goes in Jerome Township if you pay the township enough money. These two named trustees will no longer be in office in a matter of days and pushed through this agreement. Why the rush? Not one reason has been given why this had to happen now. The perception is this was anything but a fair process.

I appreciate your consideration in this matter.

Sincerely,

Lawrence Mastella
Jerome Township Resident

Lindsay White
9550 Mission Drive
Plain City, Ohio, 43064

Honorable Michael H. Watson
Honorable Elizabeth A. Preston Deavers, Magistrate
US District Court
Southern Court of Ohio-Eastern Division
Reference: Case #2-21-cv-3993

Your Honor(s),

Thank you for hearing my concerns and objections to the above referenced case. I do not profess to know everything, but I do know a few things.

This proposed Consent Decree does not pass the sniff test to me. These are my concerns:

1. How are both lame duck Trustees able to pass something that has the biggest impact on our community 10 days prior to leaving office? One who was voted out of office as well.
2. Joe Craft, who was voted out, received campaign contributions from one of the developers and he voted to affirm the decree. This seems like a serious conflict of interest.
3. We have voted each time and each referendum has lost, by almost 80%.
4. The Trustees followed the rules to approve the change and we follow the rules as well. The developers and the Trustees did not like the outcome, so we become the subject of some classic bullying by the threat of a lawsuit?
5. Schools are already over capacity, and we plan to add more houses? Makes zero sense to me.
6. This all based off a Comprehensive Plan that was created in 2008. Times have changed & they refuse to change it.
7. We voted in two new Trustees because they have worked deals with the developers without any transparency. Again, these two were allowed to vote. Abstaining would have been the right thing to do.
8. Why does this suddenly have to be decided right before the year ends and we install the newly elected officials. Honestly smells fishy to me. This needs to reviewed by the new Trustees and approved since they are the ones that will deal with the fall out of whichever way this goes.

I agree that RESPONSIBLE development is possible and but it needs to be done in a safe and respectable manner to those of us that live here in the community now.

Respectfully,

Lindsay White

Thomas V. Burian
Lucinda K. Burian
7031 Hill Road
Plain City, Ohio 43064

December 21, 2021
The Honorable Michael H. Watson
The Honorable Elizabeth A. Preston Deavers, Magistrate
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
Reference: Case No. 2:21-cv-3993

Honorable Michael H. Watson Judge and Honorable Elizabeth A. Preston Deavers, Magistrate Judge,

I respectfully disagree with the vote of the two outgoing Trustees to approve the Consent Decree before Jerome Township.

To my understanding "The criteria to be applied when a district court decides whether to approve and enter a proposed consent decree are whether the decree is" 'fair, adequate, and reasonable, as well as consistent with the public interest.'"

*United States v. County of Muskegon*, 298 F. 3d 569, 580-81 (6th Cir. 2002) (quoting *United States v. Jones & Laughlin Steel Corp.*, 804 F 2d 348, 351 (6th Cir.1986)). In *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991)

The only interest being served in this case is that of the developer and perhaps the landowner, certainly not that of the public. I would go as far to say that on the surface it's a redistribution of wealth scheme. The developer will pay a premium on land providing the landowner can obtain a change in zoning to permit higher density housing. Once the zoning is obtained and the homes are built, the public is left holding the bag for the shortfall in funding for services required by the new development. As my grandmother would say, they're robbing Peter to pay Paul.

Please be aware there are currently 750 apartments in the works for the southern edge of Jerome Township in addition to these proposed developments. There are a significant number of residential properties already approved but not yet built. Yet, we see little to no Industry or Commercial development to offset this shortfall in funding of services. How is more residential development at this time in the public's interest?

Clearly stated within the Jerome Township Comprehensive Plan 1-5 under the section titled *Community Goals* it states:

"*The people of Jerome Township love the rural character that characterizes and surrounds their homes, and they do not want to lose that. Therefore, the number one goal is: Preserve & Retain the Rural Character of Jerome Township*."

Also contained within the Jerome Township Comprehensive Plan 8-6 and 8-7 it states:

"*Virtually all studies show that for residential land, the COCS ratio is substantially above 1. That is, residential land tends to be a net drain on local government budgets. The average estimate ranges from about $1.15 to $1.50, which means that for every dollar collected in taxes and non-tax revenue; between $1.15 to $1.50 gets returned in the form of services by the local government and school district.*"

Our students are forced into mobile classrooms due to the significant overcrowding. We, as a community, chose not to rob the next generation of an environment conducive to learning for the soul purpose of lining property owner and developers pockets. Thru the appropriate use of referendum provided to us by the State of Ohio, Scotts Farm, UI and Jerome Village development plans fell with voting percentages ranging from 73.59% to 85.27% in support of referendum. How is more residential development at this time in the public's interest?

We, as a community, chose not to re-elect Joe Craft to represent us. (Joe received only 25.8% of the vote.) Yet we are held captive to his vote through the end of the year.

Not so many months ago the Trustees sat united in their belief this lawsuit set a dangerous precedence and request it be dismissed. After the election and numerous extensions requested by the plaintiffs, we find the same Trustees that were not elected to represent the Township going forward, have crafted an agreement with the plaintiffs.

Eversole Run is one of the primary tributaries in Jerome Township. As a result of the extensive development, the volume and flow of the tributary has increased significantly. Residents have lost access to their properties during heavy rains. Large mature trees have been uprooted, banks undercut and collapsed, erosion, property lost or required to be held in reserve to accommodate the storm water runoff coming from the developments. During one particular event, the top 4" of Mr. Anderson's (my neighbor to the east) bridge was stripped of the 4" of cement and slid into the tributary. We, the residents who live along the tributary are losing our rights and access to our lands so others can experience the financial benefit from rezoning a property for monetary gain. This is not fair, reasonable or in the best interest of the public.

PRINCIPLES OF WATER RIGHTS LAW IN OHIO by CHARLES C. CALLAHAN

Pg 38

"*Masley v. Lorain*, 48 OS (2d) 344 (1976*), in a case involving privately-owned lots on a natural watercourse in the city of Lorain. The city implemented a storm sewer construction program that increased the volume and accelerated the flow of water into the watercourse, causing flooding of the lots. In this case, the court said that in Lucas v. Carney (supra) it had impliedly rejected the common enemy doctrine of surface water drainage as applied to public improvements in urban areas. Emphasizing the failure of the city to improve the stream in order to carry the increased water that the city knew would result from the drainage improvements, the court said that the correct principle of the Ohio cases is that a municipal corporation may make reasonable use of a natural watercourse to drain surface water, and will not be liable for incidental damages; that it is not liable for increased flow caused simply by improvement of lots and streets; and that a municipal corporation is not ordinarily subject to an injunction to prevent the completion of a storm sewer which will increase the volume and accelerate the flow of water; but where it constructs a public improvement such as a storm sewer system and thereby effectively takes private property for its own use by casting surface waters upon that property, it must pay compensation under Section 19, Article I, Ohio Constitution."*

Pg 39

In *Masley v. Loraine* the Court also cited *Canton v. Shock*, for the rationale that "Each should use the water reasonably, and so as to do as little injury to the others as circumstances will permit. "The Court said:

*"It would be anomalous indeed to hold that a municipality may plan and build a storm sewer system to collect surface water and channel it into a natural watercourse, with knowledge that the watercourse is insufficient to accommodate the flow during rains which can be reasonably anticipated, and thereby cause continual flooding of lower land, without compensation to the owner, despite the municipality's liability for causing surface water to flood the property directly, and is liability for failure to use reasonable care in its construction of a hydraulic system in order to prevent injury to others in times of flooding. This anomaly is particularly apparent where, as here, a different design would have averted the flooding."*

Pg 40

*Armstrong v Francis Corporation* reads in part:

"*no reason suggests itself why, in justice, the economic costs incident to the expulsion of surface waters in the transformation of the rural or semi-rural areas of our State into urban or suburban communities should be borne in every case by adjoining landowners rather than by those who engage in such projects for profit.*"

My 40 year old home is one whose back deck is roughly 15 feet off the bank of Eversole Run.  In corresponding with Michael Galloway of the Ohio EPA, I have been advised I will likely need an engineered solution to preserve my bank. (Multiple Attachments)  By allowing the increased density housing, I and others in a similar situation within Jerome Township are being robbed of our current property rights to gift a zoning change to another property owner for the purpose of selling their property for a higher rate. To add insult to injury, nothing is being done to maintain the waterways or improve the waterways within the Township.  How is this fair, reasonable or in the public's best interest?

Builders are not complying with EPA best practices and as a result we routinely have construction debris in the forms of but not limited to, large sediment barges, cement, insulation and muddy waters contaminating Eversole Run.  This issue is not isolated to developments whose storm water flows into Eversole Run, but found throughout the Township. Last year the EPA was grounded due to Covid.  This year Marshal Cooper has done her best but there are far too many developments for the staff Union county has to police all the sites.  Those she was able to visit were consistent in their violations.  It's obvious the EPA doesn't have the staff to routinely inspect the building sites and ponds, nor does there seem to be an appetite to follow the 'Best Practices' put forth by the EPA.  The race to build housing is occurring at too quick a pace and everyone is suffering on every level. This is unfair, unreasonable and certainly not in the public's interest. (Multiple EPA Attachments)

Respectfully,

Lucinda Burian

Thomas Burian



Storm waters flowing over the only access to 7111 Hill Road.  This occurs multiple times a year and the owners have had to stay in hotels when they could not access their property.



This is another view of the Delaware County property represented in orange on the attached map.  If you look closely below the blue arrow you can see my property located at 7031 Hill Road.  This is not flooding, it is the flow of storm waters exceeding the banks of the tributary.



This is the property noted in orange on the attached map. Remember, this is not flooding. This is storm waters flowing from west to east in Eversole Run. As you can see, the current burden placed on Eversole Run exceeds the capacity of its banks. This is to say nothing of the additional burden as the lands that drains into Eversole Run continues to be developed. This issue occurs numerous times a year.

The blue arrow draws attention to the bridge, the only access to the property.

The image to the left is of the bank in front of 7031 Hill Rd. Note the dislodging of the large rock. The tree that lays along the bank is one that careened down the tributary during the previous rainfall.

The area circled in pink is of the bench which is also noted in the photo below. This will give you an idea of the volume of water being rerouted down Eversole Run.





In the image to the right take note of the first blue circle. This bridge is the only access to 7011 Hill Road. In a previous year the current was so violent it stripped the top four inches off this bridge and slid it into the tributary.



7031 Hill Road

Top right is the normal flow of Eversole Run.

Bottom right is after an 'event' which occur numerous times per year.

Top left it an example of the erosion resulting from the increase flow and volume of storm waters.

As you can see, the waters are exceeding the banks of Eversole Run and causing damage to the bed of the tributary and washing away the mature trees provide stabilization to the integrity of the bank.

## Recommendations

1. It is recommended that individual lot controls be installed and maintained throughout the development for the duration of construction activity on-site.
2. It is recommended that the concrete washout pit on-site be emptied and replaced.
3. Sediment and erosion controls should be inspected and maintained once every 7 days, as required by the CGP. It is recommended that all sediment and erosion controls requiring maintenance be replaced.
4. It is recommended that areas of the site to remain idle for longer than 14 days be stabilized appropriately as required by the CGP.

If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:     File Copy

Attachments



**Ohio Environmental Protection Agency**

Mike DeWine, Governor
Jon Husted, Lt. Governor
Laurie A. Stevenson, Director

August 4, 2021

Epcon Communities
Bryan Dougherty
500 Stonehenge Parkway
Dublin, OH 43017

Re: **The Courtyards on Hyland Run**
**Inspection**
**Inspection**
**NPDES**
**Union County**
**4GC07298\*AG**

<u>**Transmitted Electronically**</u>

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water Inspection**

Dear Mr. Dougherty:

This letter is written regarding the inspection Ohio EPA conducted on July 8, 2021 at the Courtyards on Hyland Run construction project located along Hyland Croy Rd in Plain City, OH. This construction project involves construction of 81 single family condominiums, 18 duplex condominiums and associated infrastructure. The total construction area consists of approximately 25.9 acres. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of The Courtyards on Hyland Run NPDES permit 4GC07298\*AG.

***Please note that a separate Notice of Violation (NOV) letter is being issued for this project.***

<u>**Findings**</u>

1. At the time of inspection, construction was active on-site. Contractors were constructing single family condominiums.
2. There was a construction trailer on-site, but the Stormwater Pollution Prevention Plan (SWP3) and weekly inspections reports were not available for review by Ohio EPA.
3. Inlet protection throughout the site was unacceptable and did not match the inlet protection proposed for use in the SWP3.
4. Significant tracking was noted throughout the development. Street sweeping should be occurring regularly on-site. However, it's important to note that street sweeping is not a primary BMP. Tracking is due to lack of individual lot controls.
5. The concrete washout pit was in need of maintenance.
6. Silt fence was down in locations and in need of maintenance.
7. No individual lot sediment and erosion controls were noted at the time of inspection.
8. The majority of the site had been disturbed and left idle with no stabilization.

that the planned control practice is not needed, the record shall contain a statement of explanation as to why the control practice is not needed.

    (a) **Violation Description:** Inlet protection on-site was unacceptable and not installed per the approved SWP3 for this project.

    (b) **Additional Information:** The material used as "inlet protection" did not prevent sediment from entering the catch basin.

    (c) **Requested Action**: Please remove the current material being used as inlet protection and replace it with inlet protection shown in the SWP3, which provides two options for inlet protection.

## Conclusion

**Within 14 days** of receipt of this letter, please provide documentation to Ohio EPA DSW of the actions taken and/or will be taken to resolve the violations cited above. Documentation of steps taken to resolve these violations includes but is not limited to: written correspondence, updated policies, and photographs, as appropriate, and may be submitted via the postal service or electronically to marshall.cooper@epa.ohio.gov. If circumstances delay resolution of violations, Epcon Communities is requested to contact Ohio EPA DSW to discuss the situation and propose an alternative schedule to resolve the violations in a timely manner.

Please note that the submission of any requested information to respond to this letter does not constitute waiver of the Ohio EPA's authority to seek administrative or civil penalties as provided in Chapter 6111.09 of the Ohio Revised Code.

Should you have any questions, please contact me at (614) 728-3844.

Sincerely,


Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

ec: Scott Sheerin, DSW, CO



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

Ohio Environmental
Protection Agency

August 4, 2021

Epcon Communities
Bryan Dougherty
500 Stonehenge Parkway
Dublin, OH 43017

Re:   **The Courtyards on Hyland Run**
      **Notice of Violation (NOV)**
      **NOV**
      **NPDES**
      **Union County**
      **4GC07298\*AG**

<u>**Transmitted Electronically**</u>

**Subject: Notice of Violation**

Dear Mr. Dougherty:

Ohio EPA, Division of Surface Water (DSW), conducted an inspection of The Courtyards on Hyland Run in Plain City, Ohio on July 8, 2021. Courtyards on Hyland Run construction project located along Hyland Croy Rd in Plain City, OH. This construction project involves construction of 81 single family condominiums, 18 duplex condominiums and associated infrastructure. The construction project consists of approximately 25.9 acres. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of The Courtyards on Hyland Run NPDES permit 4GC07298\*AG.

<u>**Violations**</u>

Ohio EPA DSW observed the following three violation(s) of Ohio's environmental laws and regulations and The Courtyards on Hyland Run permit terms and conditions. Ohio EPA DSW recommends you promptly address these violations.

Please pay special attention to the **Violation Description** and **Requested Action** associated with each violation listed below as they describe what exactly is in violation and the requested action to address the violation.

1. <u>**ORC 6111.07(A):**</u> No person shall violate or fail to perform any duty imposed by sections 6111.01 to 6111.08 of the Revised Code or violate any order, rule, or term or condition of a permit issued or adopted by the director of environmental protection pursuant to those sections. Each day of violation is a separate offense.

   <u>**CGP Part III.C.1:**</u> The SWP3 must have a certification statement in Part V.H, be signed in accordance with Part V.G, and be kept at the site during working hours.

   <u>**CGP Part III.C.2:Plan Availability**</u>

   a. **On-site:** The plan shall be made available immediately upon request of the director or his authorized representative and MS4 operators or their authorized

representative during working hours. A copy of the NOI and letter granting permit coverage under this general permit also shall be made available at the site.

**b. By written request:** The permittee must provide the most recent copy of the SWP3 within 7 days upon written request by any of the following:
• The director or the director's authorized representative;
• A local agency approving sediment and erosion plans, grading plans or storm water management plans; or
• In the case of a storm water discharge associated with construction activity which discharges through a municipal separate storm sewer system with an NPDES permit, to the operator of the system.

**(a) Violation Description:** At the time of inspection, a Storm Water Pollution Prevention Plan (SWP3) was not available for review.

**(b) Additional Information:** The construction trailer on-site was open but the SWP3 was not easily accessible at the time of inspection.

**(c) Requested Action:** Please ensure a copy of the SWP3 is available on-site during normal working hours and please provide a copy of the SWP3 to Ohio EPA via email at: marshall.cooper@epa.ohio.gov.

2. **ORC 6111.07(A):** See above citation.

**CGP Part III.G.2.i: Inspections.** The permittee shall assign "qualified inspection personnel" to conduct inspections to ensure that the control practices are functional and to evaluate whether the SWP3 is adequate and properly implemented in accordance with the schedule proposed in Part III.G.1.g of this permit or whether additional control measures are required. At a minimum, procedures in a SWP3 shall provide that all controls on the site are inspected: after any storm event greater than one-half inch of rain per 24-hour period by the end of the next calendar day, excluding weekends and holidays unless work is scheduled; and once every seven calendar days.

**(a) Violation Description:** At the time of inspection, the weekly inspection reports were not available for review by Ohio EPA.

**(b) Additional Information:** The construction trailer on-site was open but the weekly inspection reports were not easily accessible at the time of inspection.

**(c) Requested Action:** Please ensure copies of the weekly inspection reports are available and accessible on-site during normal working hours. Additionally, please send copies of all the weekly inspection reports since construction commenced to Ohio EPA via email: marshall.cooper@epa.ohio.gov

3. **ORC 6111.07:** See above citation.

**CGP Part III.G.2.i.iii:** When practices depicted on the SWP3 are not installed. If the inspection reveals that a control practice has not been implemented in accordance with the schedule contained in Part III.G.1.h of this permit, the control practice shall be implemented within 10 days from the date of the inspection. If the inspection reveals



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

August 17, 2021

Jerome Village Company, LLC
Joyce Hill
375 N. Front Street, Suite 203
Columbus, OH 43215

**Re:** **Glacier Park Neighborhood Section**
**12 Phase 2, 3, 4**
**Inspection**
**Inspection**
**NPDES**
**Union County**
**4GC07097*AG**

<u>**Transmitted Electronically**</u>

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water Inspection**

Dear Ms. Hill:

This letter is written regarding the inspection Ohio EPA conducted on July 8, 2021 at the Glacier Park Neighborhood Section 12 Phase 2, 3, 4 construction project located at 8585 Wells Road, in Plain City, OH. This construction project disturbs 33.8 acres and involves construction of 105 single family units and associated infrastructure. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of Jerome Village Company LLC's NPDES permit 4GC07097*AG.

<u>**Findings**</u>

1. At the time of inspection, construction was active on-site. Contractors were constructing single family homes.
2. No construction trailer was noted on-site.
3. The Stormwater Pollution Prevention Plan (SWP3) and weekly inspection reports were not available for review by Ohio EPA. A conversation with Justin Wollenburg, consultant Terrain Evolution on August 2, 2021 requested that the SWP3 mailbox be re-installed on-site. Mr. Wollenburg indicated it likely was removed when the road construction was complete. An NOV is not being issued for this item as Mr. Wollenburg confirmed that the mailbox would be reinstalled as soon as possible.
4. Individual lot controls throughout the development were in need of maintenance.
5. No inlet protection was noted throughout the development.
6. Significant areas of disturbance on individual lots without controls or stabilization are causing sediment-laden runoff to enter what appeared to be a dry basin on-site.
7. Significant areas of the site were barren and in need of stabilization.
8. The concrete washout pit appeared to be at capacity and was in need of maintenance.
9. Ohio EPA had a phone call with the consultant for this project, Justin Wollenburg, on Monday, August 2, 2021, to discuss the calculations provided for the sediment basin on-

site. Upon further review by Ohio EPA, the calculations provided for the sediment basin were not done correctly. No permanent pool was provided – which is the sediment settling zone. The conversation included Wesley Sluga from Technical Assistance in Central Office who explained how the permanent pool should be calculated for a sediment basin. Future calculations will follow guidance provided during this call.

10. The underdrain was also installed when the basin was to be acting as a sediment basin. The underdrain prevents the basin from holding a permanent pool of water for sediment storage, therefore should be installed once the sediment basin is converted to post-construction.

11. The sediment basin was in the process of being converted to post-construction during my site visit on July 8, 2021, Mr. Wollenburg explained during our August 2, 2021 phone call. Mr. Wollenburg ensured that this would be completed in the next week or so, therefore, no Notice of Violation (NOV) letter is being issued for the incorrect sizing of the sediment basin.

## Recommendations

1. Inlet protection should be installed on all inlets throughout the development where active construction is occurring.

2. Because the sediment basin has been converted to post-construction, it is imperative that individual lot controls be placed and maintained during home construction. Therefore, it is recommended that individual lot controls be installed and maintained at every active building lot on-site. These would include lots numbered 1643, 1647, 1648, 1652, 1654, 1642, 1659, 1662, 1663, 1664, 1669, 1670, 1671, 1674, 1676, 1657, 1672, 1645, 1675, 1673, 1677, and 1668 covered under Individual Lot NOIs for M/I Homes.

If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:    File Copy

EC:   Vickie Cohen, M/I Homes of Central Ohio, LLC
      Joyce Hill, Jerome Village Company, LLC

| Item SWPPP Items | Not Applicable | Acceptable | Action Item | Assigned To |
|---|:---:|:---:|:---:|---|
| **Erosion Control** | | | | |
| 1. Protection of Disturbed Areas | ☐ | ☒ | ☐ | _____ |
| 2. Slope Protection | ☐ | ☒ | ☐ | _____ |
| 3. Vegetation/Revegetation | ☐ | ☒ | ☐ | _____ |
| 4. Velocity Reduction Devices/ Outlet Protection | ☐ | ☒ | ☐ | _____ |
| **Sediment Control** | | | | |
| 1. Check Dams (rock, gravel, other) | ☒ | ☐ | ☐ | _____ |
| 2. Silt Fence | ☐ | ☐ | ☒ | _____ |
| 3. Berms, Dikes, Straw Wattles | ☐ | ☐ | ☒ | 1. At Grade |
| 4. Detention Basins / Sediment Traps | ☐ | ☒ | ☐ | _____ |
| 5. Stockpiles Protected / Stabilized | ☐ | ☒ | ☐ | _____ |
| 6. Storm Water Inlet Protection | ☐ | ☒ | ☐ | _____ |
| **Housekeeping/Trade Compliance** | | | | |
| 1. Waste and Trash Management | ☐ | ☒ | ☐ | _____ |
| 2. Spill and Leak Prevention | ☐ | ☒ | ☐ | _____ |
| 3. Sanitary Stations | ☐ | ☒ | ☐ | _____ |
| 4. Concrete and Construction Washouts | ☐ | ☐ | ☒ | 1. At Grade |
| 5. Material Use and Potential Contaminate Storage | ☐ | ☒ | ☐ | _____ |
| 6. Equipment Storage and Maintenance | ☐ | ☒ | ☐ | _____ |
| 7. Construction Exists and Entrances | ☐ | ☐ | ☒ | 1. At Grade |
| 8. Dust Control | ☐ | ☒ | ☐ | _____ |
| 9. Street Sweeping | ☐ | ☒ | ☐ | _____ |
| **Other** | | | | |
| 1. Non-storm water flow | ☐ | ☒ | ☐ | _____ |
| 2. Site's weathering of Storm Events | ☐ | ☒ | ☐ | _____ |
| 3. Site discharge points | ☐ | ☒ | ☐ | _____ |
| 4. BMP provider performance | ☐ | ☒ | ☐ | _____ |
| 5. | ☒ | ☐ | ☐ | _____ |
| 6. | ☒ | ☐ | ☐ | _____ |
| 7. | ☒ | ☐ | ☐ | _____ |
| 8. 14 days with no activity - STABILIZE | ☐ | ☒ | ☐ | _____ |

**IV.**  Action Items   **V. Responsive Action Completion**

| Item | Location and Responsive Action to be taken | Notes | Date Noted | Assigned To | Date Responsive Action Completed | Initials |
|---|---|---|---|---|---|---|
| 285302 | Replace mulch logs on lots 1901, 1053, 1870, 1871, 1918 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |
| 285303 | Add signage to concrete washout and increase length of rock drive | 1. 09-22-2021 (Keaton Holsinger) - Located on Begonia dr | 08-13-2021 | At Grade | - | - |
| 285304 | Add rock to temp drive 1884 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |
| 231332 | Install homebuilding curb protection lot 1918 | | 06-08-2021 | At Grade | 08-11-2021 | Kristin Moretz |

**PROPRIETARY COMPANY MATERIAL**



**Date:**08-11-2021

# NATIONAL STORM WATER QUALITY PROGRAM
# SITE INSPECTION REPORT (SIR)

*For use on all PulteGroup Sites in CT,FL,GA,KY,OH,NV,VA. as of 01/01/2020*

**Community Name:** Jerome Village_HB & DEV, Dublin, Ohio, 43016, Permit:#: 4GC07395*AG

*(Include Site Name, City, State, Zip Code and NPDES/Construction Storm Water Permit Number)*

**Master Site List ID:** 7395

| Inspector: | Kristin Moretz | Inspection performed by (DCE or Designee,SSWR): | kmoretz@pathlightpro.com (404) 312 4707 GSWCC Level 1A Certified 0000077631 Maryland Certification RPCO11239 |
|---|---|---|---|

*(Print Name, Company, and Title / Qualifications)*

**Stages of Construction:** *(check all that apply)* ☐ Land Development ☐ Inactive ☒ Vertical Construction ☐ Instruction

**Type of Inspection:** *(check all that apply)* ☒ Routine Inspection ☐ Storm Event Related ☐ Final Site Inspection ☐ Other

**SIR:** *(check all that apply)* ☒ D-SIR ☐ D-SIR/SIR ☐ SAR/D-SIR

## I. SWPPP - Respond to All Questions

| Item | Yes | No | |
|---|---|---|---|
| A. Was the SWPPP accessible at the time of Inspection? | ☒ | ☐ | If "No," then an Action Item is required. |
| B. Is the SSWR correctly identified in the SWPPP? | ☒ | ☐ | |
| C. Does the SWPPP reflect the current stage of development? | ☒ | ☐ | Describe all action items on the reverse side of this sheet(section IV) |
| - Contact Information (Section 1.2) | ☒ | ☐ | |
| - Training Certificates (Section 5) | ☒ | ☐ | |
| - Amendment Log (Appendix C) | ☒ | ☐ | |
| - Construction Schedule (Appendix E) | ☒ | ☐ | |
| - Responsible Parties/Contractors (Appendix I) | ☒ | ☐ | |
| - BMP Map | ☒ | ☐ | |
| D. Have all SIR Action Items identified on the preceding reports been resolved? | ☐ | ☒ | |
| E. IS NSQP signage posted and in compliance with NSQP requirements? | ☒ | ☐ | |

## II.Rainfall

**A: Estimated date of most recent Storm Event that triggered an Inspection:** 07-17-2021

**B: Provide rainfall information as required by Applicable Permit:** 0.88"
(Based on the storm-event related Inspection Frequency required by the Applicable Permit)
**Rainfall Duration(hours):**
**Rain data from the last 7 days(inches):** 0, 0, 0, 0, 0, 0, 0

**C: Discharge Point Information:**

Supplemental State Requirements for Ohio(OH) Observations of Runoff at Sediment Basins & Stormwater Discharge Outfalls

| Discharge Point | Description of Observation |
|---|---|
| | |

## III. Site BMP Inspection

| 231333 | Install homebuilding curb protection lot 1053 | | 06-08-2021 | At Grade | 08-11-2021 | Kristin Moretz |
| 243285 | Install homebuilding curb protection lot 1888 | | 06-23-2021 | At Grade | 08-11-2021 | Kristin Moretz |
| 260497 | Add curbside protection side of lot 1877 | | 07-14-2021 | At grade | 08-11-2021 | Kristin Moretz |
| 265908 | Install perimeter silt fence in rear of lots 1918, 1893, 1897, 1901, 1902 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265909 | Repair silt fence where down in rear of lot 1888 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265911 | Clean up concrete slurry in front of lot 1889 | 1. 08-25-2021 (Keaton Holsinger) - And lot 1884 | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265912 | Clean up escaped concrete in rear of lot 1918 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |

**Report must be reviewed and signed below by appropriate Storm Water Manager – Not Delegable:**

I certify under penalty of law that Sections I-V of this document and all attachments were prepared by me or under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. In the event there are no Action Items in this report that have remained unresolved for a period in excess of that allowed by the Applicable Construction General Permit, I further certify under penalty of law that this Site is in compliance with the SWPPP and the Applicable Construction General Permit. I am aware that there are significant penalties for submitting false information including the possibility of fine and imprisonment for knowing violations. Certification applies to the area under the supervision of the SSWR signing this report.

| Certified By: (DCE - Must be a PulteGroup Employee) | Certified By: (SSWR Must Sign if dual inspection was completed) |
|---|---|
| | **Kristin Moretz** |
| *Print Name and Title above* | *Print Name and Title above* |
| | *(signature)* 08-13-2021 |
| Signature *(Use Ink)*          Date | Signature *(Use Ink)*          Date |

## VI. Justification for non-completion of Responsive Action Items

Describe why any Responsive Action Items were not corrected within the permit requirements

All capitalized terms are defined in the glossary of the NSQP Handbook. Complete all Sections of this Report. Any information added after the signature date must be initialed and dated. This report must be signed by the SSWR, dated and retained with the SWPPP.

© PulteGroup, Inc. 2020 Compliance Cert SIR

Compliance Cert
SIR CT,FL,GA, KY,OH,NV,TX,VA

**PROPRIETARY COMPANY MATERIAL**



**Date:** 08-18-2021

# NATIONAL STORM WATER QUALITY PROGRAM
# SITE INSPECTION REPORT (SIR)

*For use on all PulteGroup Sites in CT,FL,GA,KY,OH,NV,VA, as of 01/01/2020*

**Community Name:** Jerome Village HB & DEV, Dublin, Ohio, 43016, Permit#: 4GC07395*AG

*(Include Site Name, City, State, Zip Code and NPDES/Construction Storm Water Permit Number)*

**Master Site List ID:** 7395

| | | Inspection | |
|---|---|---|---|
| **Inspector:** | Kristin Moretz | performed by (DCE or Designee,SSWR): | kmoretz@pathlightpro.com (404) 312 4707 GSWCC Level 1A Certified 0000077631 Maryland Certification RPCO11239 |

*(Print Name, Company, and Title / Qualifications)*

**Stages of Construction:** *(check all that apply)* ☐ Land Development ☐ Inactive ☒ Vertical Construction ☐ Instruction

**Type of Inspection:** *(check all that apply)* ☒ Routine Inspection ☐ Storm Event Related ☐ Final Site Inspection ☐ Other

**SIR:** *(check all that apply)* ☒ D-SIR ☐ D-SIR/SIR ☐ SAR/D-SIR

## I. SWPPP - Respond to All Questions

| Item | Yes | No | |
|---|---|---|---|
| A. Was the SWPPP accessible at the time of Inspection? | ☒ | ☐ | If "No," then an Action Item is required. |
| B. Is the SSWR correctly identified in the SWPPP? | ☒ | ☐ | |
| C. Does the SWPPP reflect the current stage of development? | ☒ | ☐ | Describe all action items on the reverse side of this sheet(section IV) |
| - Contact Information (Section 1.2) | ☒ | ☐ | |
| - Training Certificates (Section 5) | ☒ | ☐ | |
| - Amendment Log (Appendix C) | ☒ | ☐ | |
| - Construction Schedule (Appendix E) | ☒ | ☐ | |
| - Responsible Parties/Contractors (Appendix I) | ☒ | ☐ | |
| - BMP Map | ☒ | ☐ | |
| D. Have all SIR Action Items identified on the preceding reports been resolved? | ☐ | ☒ | |
| E. IS NSQP signage posted and in compliance with NSQP requirements? | ☒ | ☐ | |

## II.Rainfall

**A: Estimated date of most recent Storm Event that triggered an Inspection:** 07-17-2021

**B: Provide rainfall information as required by Applicable Permit:** 0.88"
**(Based on the storm-event related Inspection Frequency required by the Applicable Permit)**
**Rainfall Duration(hours):**
**Rain data from the last 7 days(inches):** 0.02, 0.16, 0.06, 0.33, 0, 0.03, 0.29

**C: Discharge Point Information:**
Supplemental State Requirements for Ohio(OH) Observations of Runoff at Sediment Basins & Stormwater Discharge Outfalls

| Discharge Point | Description of Observation |
|---|---|
| | |

## III. Site BMP Inspection

| **Item SWPPP Items** | **Not Applicable** | **Acceptable** | **Action Item** | **Assigned To** |
|---|:---:|:---:|:---:|---|
| **Erosion Control** | | | | |
| 1. Protection of Disturbed Areas | ☐ | ☒ | ☐ | _____ |
| 2. Slope Protection | ☐ | ☒ | ☐ | _____ |
| 3. Vegetation/Revegetation | ☐ | ☒ | ☐ | _____ |
| 4. Velocity Reduction Devices/ Outlet Protection | ☐ | ☒ | ☐ | _____ |
| **Sediment Control** | | | | |
| 1. Check Dams (rock, gravel, other) | ☒ | ☐ | ☐ | _____ |
| 2. Silt Fence | ☐ | ☐ | ☒ | _____ |
| 3. Berms, Dikes, Straw Wattles | ☐ | ☐ | ☒ | 1. Brymar |
| 4. Detention Basins / Sediment Traps | ☐ | ☒ | ☐ | _____ |
| 5. Stockpiles Protected / Stabilized | ☐ | ☒ | ☐ | _____ |
| 6. Storm Water Inlet Protection | ☐ | ☐ | ☒ | 1. Brymar |
| **Housekeeping/Trade Compliance** | | | | |
| 1. Waste and Trash Management | ☐ | ☒ | ☐ | _____ |
| 2. Spill and Leak Prevention | ☐ | ☒ | ☐ | _____ |
| 3. Sanitary Stations | ☐ | ☒ | ☐ | _____ |
| 4. Concrete and Construction Washouts | ☐ | ☐ | ☒ | _____ |
| 5. Material Use and Potential Contaminate Storage | ☐ | ☒ | ☐ | _____ |
| 6. Equipment Storage and Maintenance | ☐ | ☒ | ☐ | _____ |
| 7. Construction Exists and Entrances | ☐ | ☐ | ☒ | _____ |
| 8. Dust Control | ☒ | ☐ | ☐ | _____ |
| 9. Street Sweeping | ☐ | ☒ | ☐ | _____ |
| **Other** | | | | |
| 1. Non-storm water flow | ☐ | ☒ | ☐ | _____ |
| 2. Site's weathering of Storm Events | ☐ | ☒ | ☐ | _____ |
| 3. Site discharge points | ☐ | ☒ | ☐ | _____ |
| 4. BMP provider performance | ☐ | ☒ | ☐ | _____ |
| 5. | ☒ | ☐ | ☐ | _____ |
| 6. | ☒ | ☐ | ☐ | _____ |
| 7. | ☒ | ☐ | ☐ | _____ |
| 8. 14 days with no activity - STABILIZE | ☐ | ☒ | ☐ | _____ |

**IV.**　　　　　**Action Items**　　　　　**V. Responsive Action Completion**

| Item | Location and Responsive Action to be taken | Notes | Date Noted | Assigned To | Date Responsive Action Completed | Initials |
|---|---|---|---|---|---|---|
| 289180 | Add curbside mulch logs lot 1902, 1871 | 1. 08-25-2021 (Keaton Holsinger) - And lot 1903 | 08-18-2021 | Brymar | 09-08-2021 | Kristin Moretz |
| 289181 | Clean curb inlet protection lot 1884 | 1. 09-01-2021 (Keaton Holsinger) - And 1894 | 08-18-2021 | Brymar | 09-16-2021 | Gary Conway |

PROPRIETARY COMPANY MATERIAL



# NATIONAL STORM WATER QUALITY PROGRAM
## SITE INSPECTION REPORT (SIR)

**Date:** 08-25-2021

<span style="color:red">For use on all PulteGroup Sites in CT,FL,GA,KY,OH,NV,VA, as of 01/01/2020</span>

**Community Name:** Jerome Village, HB 8 DEV, Dublin, Ohio, 43016, Permit# 4GC07395*AG

*(Include Site Name, City, State, Zip Code and NPDES/Construction Storm Water Permit Number)*

**Master Site List ID:** 7395

**Inspector:** Keaton Holsinger

*(Print Name, Company, and Title / Qualifications)*

**Inspection performed by** (DCE or Designee,SSWR): 614-668-4225 Kholsinger@pathlighthpro.com

**Stages of Construction:** *(check all that apply)* ☒ Land Development   ☐ Inactive   ☒ Vertical Construction   ☐ Instruction

**Type of Inspection:** *(check all that apply)* ☒ Routine Inspection   ☐ Storm Event Related   ☐ Final Site Inspection   ☐ Other

**SIR:** *(check all that apply)* ☒ D-SIR   ☐ D-SIR/SIR   ☐ SIR/D-SIR   ☐ SAR/D-SIR

## I. SWPPP - Respond to All Questions

| Item | Yes | No | |
|---|---|---|---|
| A. Was the SWPPP accessible at the time of inspection? | ☒ | ☐ | **If "No," then an Action is required.** |
| B. Is the SSWR correctly identified in the SWPPP? | ☒ | ☐ | |
| C. Does the SWPPP reflect the current stage of development? | ☒ | ☐ | |
| - Contact Information (Section 1.2) | ☒ | ☐ | Describe all action items on the reverse side of this sheet(section IV) |
| - Training Certificates (Section 5) | ☒ | ☐ | |
| - Amendment Log (Appendix C) | ☒ | ☐ | |
| - Construction Schedule (Appendix E) | ☒ | ☐ | |
| - Responsible Parties/Contractors (Appendix I) | ☒ | ☐ | |
| - BMP Map | ☒ | ☐ | |
| D. Have all SIR Action Items identified on the preceding reports been resolved? | ☐ | ☒ | |
| E. IS NSQP signage posted and in compliance with NSQP requirements? | ☒ | ☐ | |

## II.Rainfall

A. Estimated date of most recent Storm Event that triggered an inspection:07-17-2021

B: Provide rainfall information as required by Applicable Permit:0.88"
*(Based on the storm-event related Inspection Frequency required by the Applicable Permit)*

Rainfall Duration(hours):0.88

Rain data from the last 7 days(inches):0.03, 0.03, 0, 0, 0, 0, 0

## C: Discharge Point Information:

Supplemental State Requirements for Ohio(OH) Observations of Runoff at Sediment Basins & Stormwater Discharge Outfalls

| Discharge Point | Description of Observation |
|---|---|
| | |

## III. Site BMP Inspection

| Item SWPPP Items | Not Applicable | Acceptable | Action Item | Assigned To |
|---|---|---|---|---|
| | | | | |

| 265908 | Install perimeter silt fence in rear of lots 1918, 1893, 1897, 1901, 1902 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
|---|---|---|---|---|---|---|
| 265909 | Repair silt fence where down in rear of lot 1888 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265911 | Clean up concrete slurry in front of lot 1889 | 1. 08-25-2021 (Keaton Holsinger) - And lot 1884 | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265912 | Clean up escaped concrete in rear of lot 1918 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 285302 | Replace mulch logs on lots 1901, 1053, 1870, 1871, 1918 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |
| 285303 | Add signage to concrete washout and increase length of rock drive | 1. 09-22-2021 (Keaton Holsinger) - Located on Begonia dr | 08-13-2021 | At Grade | - | - |
| 285304 | Add rock to temp drive 1884 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |

**Report must be reviewed and signed below by appropriate Storm Water Manager – Not Delegable:**
I certify under penalty of law that Sections I-V of this document and all attachments were prepared by me or under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. In the event there are no Action Items in this report that have remained unresolved for a period in excess of that allowed by the Applicable Construction General Permit, I further certify under penalty of law that this Site is in compliance with the SWPPP and the Applicable Construction General Permit. I am aware that there are significant penalties for submitting false information including the possibility of fine and imprisonment for knowing violations. Certification applies to the area under the supervision of the SSWR signing this report.

| Certified By: (DCE - Must be a PulteGroup Employee) | Certified By: (SSWR Must Sign if dual inspection was completed) |
|---|---|
| | **Kristin Moretz** |
| *Print Name and Title above* | *Print Name and Title above* |
| | *Kristin Moretz* (signature)          08-18-2021 |
| Signature *(Use Ink)*                    Date | Signature *(Use Ink)*                    Date |

## VI. Justification for non-completion of Responsive Action Items

Describe why any Responsive Action Items were not corrected within the permit requirements

Delays for repairs due to switching BMP providers.

All capitalized terms are defined in the glossary of the NSQP Handbook. Complete all Sections of this Report. Any information added after the signature date must be initialed and dated. This report must be signed by the SSWR, dated and retained with the SWPPP.

© PulteGroup, Inc. 2020 Compliance Cert SIR

Compliance Cert
SIR CT,FL,GA, KY,OH,NV,TX,VA

**Erosion Control**

| Item | Col 1 | Col 2 | Col 3 | Notes |
|------|-------|-------|-------|-------|
| 1. Protection of Disturbed Areas | ☐ | ☒ | ☐ | |
| 2. Slope Protection | ☐ | ☒ | ☐ | |
| 3. Vegetation/Revegetation | ☐ | ☒ | ☐ | |
| 4. Velocity Reduction Devices/ Outlet Protection | ☐ | ☒ | ☐ | |

**Sediment Control**

| Item | Col 1 | Col 2 | Col 3 | Notes |
|------|-------|-------|-------|-------|
| 1. Check Dams (rock, gravel, other) | ☐ | ☒ | ☐ | |
| 2. Silt Fence | ☐ | ☐ | ☒ | |
| 3. Berms, Dikes, Straw Wattles | ☐ | ☐ | ☒ | 1. Brymar |
| 4. Detention Basins / Sediment Traps | ☐ | ☒ | ☐ | |
| 5. Stockpiles Protected / Stabilized | ☐ | ☒ | ☐ | |
| 6. Storm Water Inlet Protection | ☐ | ☐ | ☒ | 1. Brymar |

**Housekeeping/Trade Compliance**

| Item | Col 1 | Col 2 | Col 3 | Notes |
|------|-------|-------|-------|-------|
| 1. Waste and Trash Management | ☐ | ☐ | ☒ | 1. Dumpster vendor |
| 2. Spill and Leak Prevention | ☐ | ☒ | ☐ | |
| 3. Sanitary Stations | ☐ | ☒ | ☐ | |
| 4. Concrete and Construction Washouts | ☐ | ☐ | ☒ | |
| 5. Material Use and Potential Contaminate Storage | ☐ | ☒ | ☐ | |
| 6. Equipment Storage and Maintenance | ☐ | ☒ | ☐ | |
| 7. Construction Exists and Entrances | ☐ | ☐ | ☒ | |
| 8. Dust Control | ☐ | ☒ | ☐ | |
| 9. Street Sweeping | ☐ | ☒ | ☐ | |

**Other**

| Item | Col 1 | Col 2 | Col 3 | Notes |
|------|-------|-------|-------|-------|
| 1. Non-storm water flow | ☐ | ☒ | ☐ | |
| 2. Site's weathering of Storm Events | ☐ | ☒ | ☐ | |
| 3. Site discharge points | ☐ | ☒ | ☐ | |
| 4. BMP provider performance | ☐ | ☒ | ☐ | |
| 5. | ☒ | ☐ | ☐ | |
| 6. | ☒ | ☐ | ☐ | |
| 7. | ☒ | ☐ | ☐ | |
| 8. 14 days with no activity - STABILIZE | ☐ | ☒ | ☐ | |

**IV.     Action Items          V. Responsive Action Completion**

| Item | Location and Responsive Action to be taken | Notes | Date Noted | Assigned To | Date Responsive Action Completed | Initials |
|------|--------------------------------------------|-------|------------|-------------|----------------------------------|----------|
| 295515 | Reinstall curb mulch logs at lot 1888 | | 08-25-2021 | Brymar | 09-08-2021 | Kristin Moretz |
| 295516 | Reinstall/replace curbside mulch loga where damaged/missing lot 1883 | | 08-25-2021 | Brymar | 09-16-2021 | Gary Conway |
| 295517 | Empty dumpster where full on site (1918, 1888, 1893, 1884, 1871 | | 08-25-2021 | Dumpster vendor | 09-01-2021 | Keaton Holsinger |
| 265908 | Install perimeter silt fence in rear of lots 1918, 1893, 1897, 1901, 1902 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265909 | Repair silt fence where down in rear of lot 1888 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

Ohio Environmental
Protection Agency

October 6, 2021

Jerome Village Company, LLC
Joyce Hill
375 N. Front Street, Suite 203
Columbus, OH 43215

Re:  **Glacier Park Neighborhood Section
12 Phase 1
Inspection
Inspection
NPDES
Union County
4GC06957*AG**

<u>**Transmitted Electronically**</u>

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water
Inspection**

Dear Ms. Hill:

This letter is written regarding the inspection Ohio EPA conducted on September 14, 2021 at the
Glacier Park Neighborhood Section 12 Phase 1 construction project located at 8585 Wells Road,
in Plain City, OH. This construction project disturbs 25.2 acres and involves construction of 35
single family units, construction of streets, stormwater management basin, and associated
utilities. The goal of my inspection was to determine your facility's compliance with Ohio's
environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC)
and the terms and conditions of Jerome Village Company LLC's NPDES permit 4GC06957*AG.

<u>**Findings**</u>

1.  At the time of inspection, construction was active on-site. Contractors were constructing
    single family homes.
2.  No construction trailer was noted on-site.
3.  Because the Stormwater Pollution Prevention Plan (SWP3) could not be located on-site
    at the time of inspection, weekly inspection records were not reviewed during this
    inspection. I followed up with Corey Christopher, M/I Homes Construction Area
    Manager, after I was unable to locate the SWP3 on-site, and Mr. Christopher informed
    me that the mailbox was installed at the intersection of Glacier Point Drive and Mitchell-
    Dewitt Road.
4.  Individual lot controls throughout the development were in need of maintenance.
    Specifically, lots 61, 58, 59, 52, and 125.
5.  Tupelo Way has not yet been paved.
6.  Pond-303 appeared to be converted to post-construction as it no longer contained a
    skimmer. The grate on top of the outlet structure had been removed and needed to be
    replaced.

**Recommendations**

1. Because the Basin P-303 has been converted to post-construction, it is imperative that individual lot controls be placed and maintained during home construction. Therefore, it is recommended that individual lot controls be installed and maintained at every active building lot on-site. These would include lots numbered 61, 58, 59, 52, and 125.
2. Please provide Ohio EPA with copies of inspection reports for Glacier Park Neighborhood Section 12 Phase 1 for all inspections conducted in 2021.

If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:      File Copy

EC:    Vickie Cohen, M/I Homes of Central Ohio, LLC
       Joyce Hill, Jerome Village Company, LLC

| 265911 | Clean up concrete slurry in front of lot 1889 | 1. 08-25-2021 (Keaton Holsinger) - And lot 1884 | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 265912 | Clean up escaped concrete in rear of lot 1918 | | 07-21-2021 | At Grade | 09-20-2021 | Gary Conway |
| 285302 | Replace mulch logs on lots 1901, 1053, 1870, 1871, 1918 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |
| 285303 | Add signage to concrete washout and increase length of rock drive | 1. 09-22-2021 (Keaton Holsinger) - Located on Begonia dr | 08-13-2021 | At Grade | - | - |
| 285304 | Add rock to temp drive 1884 | | 08-13-2021 | At Grade | 09-08-2021 | Kristin Moretz |
| 289180 | Add curbside mulch logs lot 1902, 1871 | 1. 08-25-2021 (Keaton Holsinger) - And lot 1903 | 08-18-2021 | Brymar | 09-08-2021 | Kristin Moretz |
| 289181 | Clean curb inlet protection lot 1884 | 1. 09-01-2021 (Keaton Holsinger) - And 1894 | 08-18-2021 | Brymar | 09-16-2021 | Gary Conway |

**Report must be reviewed and signed below by appropriate Storm Water Manager – Not Delegable:**

I certify under penalty of law that Sections I-V of this document and all attachments were prepared by me or under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gathered and evaluated the information submitted. Based on my inquiry of the persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. In the event there are no Action Items in this report that have remained unresolved for a period in excess of that allowed by the Applicable Construction General Permit, I further certify under penalty of law that this Site is in compliance with the SWPPP and the Applicable Construction General Permit. I am aware that there are significant penalties for submitting false information including the possibility of fine and imprisonment for knowing violations. Certification applies to the area under the supervision of the SSWR signing this report.

| Certified By: (DCE - Must be a PulteGroup Employee) | Certified By: (SSWR Must Sign if dual inspection was completed) |
| --- | --- |
| | **Keaton Holsinger** |
| *Print Name and Title above* | *Print Name and Title above* |
| | 08-27-2021 |
| Signature *(Use Ink)*        Date | Signature *(Use Ink)*        Date |

## VI. Justification for non-completion of Responsive Action Items

Describe why any Responsive Action Items were not corrected within the permit requirements

All capitalized terms are defined in the glossary of the NSQP Handbook. Complete all Sections of this Report. Any information added after the signature date must be initialed and dated. This report must be signed by the SSWR, dated and retained with the SWPPP.

Compliance Cert
SIR CT,FL,GA, KY,OH,NV,TX,VA



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

Ohio Environmental
Protection Agency

October 6, 2021

Jerome Village Company, LLC
Joyce Hill
375 N. Front Street, Suite 203
Columbus, OH 43215

**Re:** **Glacier Park Neighborhood Section 12 Phase 5
Inspection
Inspection
NPDES
Union County
4GC07096*AG**

**Transmitted Electronically**

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water
Inspection**

Dear Ms. Hill:

This letter is written regarding the inspection Ohio EPA conducted on September 14, 2021 at the
Glacier Park Neighborhood Section 12 Phase 5 construction project located at 8585 Wells Road,
in Plain City, OH. This construction project disturbs 16.1 acres and involves construction of 105
single family units, construction of streets, stormwater management basin, and associated
utilities. The goal of my inspection was to determine your facility's compliance with Ohio's
environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC)
and the terms and conditions of Jerome Village Company LLC's NPDES permit 4GC07096*AG.

**Findings**

1. At the time of inspection, construction was active on-site. Contractors were constructing
   single family homes.
2. No construction trailer was noted on-site.
3. Because the Stormwater Pollution Prevention Plan (SWP3) could not be located
   on-site at the time of inspection, weekly inspection records were not reviewed
   during this inspection. I followed up with Corey Christopher, M/I Homes
   Construction Area Manager, after I was unable to locate the SWP3 on-site, and
   Mr. Christopher informed me that the mailbox was installed at the intersection of
   Glacier Point Drive and Mitchell-Dewitt Road.
4. Individual lot controls throughout the development were in need of maintenance.
   Specifically, lots 1632, 1631, 1630, 1625, 1621, 1616, 1611, and 1614.
5. No individual lot controls were noted at lots 1624 and 1622.
6. Perimeter filter sock at lot 1619 had gaps where stormwater could bypass the BMP.
7. Basin P-303 appeared to be converted to post-construction as it no longer contained a
   skimmer. The grate on top of the outlet structure had been removed and needed to be
   replaced.

**Recommendations**

1. Because the Basin P-303 has been converted to post-construction, it is imperative that individual lot controls be placed and maintained during home construction. Therefore, it is recommended that individual lot controls be installed and maintained at every active building lot on-site. These would include lots numbered 1619, 1624, 1622, 1632, 1631, 1630, 1625, 1621, 1616, 1611, and 1614.
2. Please provide Ohio EPA with copies of inspection reports for Glacier Park Neighborhood Section 12 Phase 5 for all inspections conducted in 2021.


If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.


Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:     File Copy

EC:    Vickie Cohen, M/I Homes of Central Ohio, LLC
       Joyce Hill, Jerome Village Company, LLC



**Ohio Environmental Protection Agency**

Mike DeWine, Governor
Jon Husted, Lt. Governor
Laurie A. Stevenson, Director

October 8, 2021

Jerome Village Co., LLC
Joyce Hill
375 N. Front Street, Suite 200
Columbus, OH 43215

**Re:** **Village Neighborhood Section 3
Inspection
Inspection
NPDES
Union County
4GC07395*AG**

<u>**Transmitted Electronically**</u>

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water Inspection**

Dear Ms. Hill:

This letter is written regarding the inspection Ohio EPA conducted on September 21, 2021 at the Village Neighborhood Section 4 construction project located east of Jerome Road, in Plain City, OH. This construction project disturbs 9.0 acres and involves the construction of 36 single family units, streets, stormwater management basin, and associated utilities. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of Jerome Village Company LLC's NPDES permit 4GC07395*AG.

<u>**Findings**</u>

1. At the time of inspection, construction was active on-site. Contractors were constructing single family homes.
2. Individual lot controls throughout the development either needed maintenance or were absent. Specifically, lots 1918, 1893, 1886, 1885, 1884, 1883, 1882, 1881, 1880, 1897, 1900, 1901, 1902, 1903, 1870, and 1871.
3. Inlet protection on Gardenia Drive required maintenance at the time of inspection.
4. Sediment tracking was noted on Begonia Drive.
5. Excessive vegetation was noted surrounding all inlets and outlets to Basin P-280.
6. Concrete washout pits were noted on-site but were located near catch basins. Additionally, bags of "Quickcrete" were laying near catch basins at the intersection of Gardenia Drive and Apricot Way.
7. No construction trailer was noted on-site. A SWP3 mailbox was on-site that contained the SWP3 and some inspection reports. The most recent inspection report was dated August 11, 2021.

**Recommendations**

1. It is recommended that all individual lot controls be inspected and maintained every 7 days and/or after significant rainfall events as required by the Construction General Permit (CGP).
2. It is recommended that inlet protection be inspected and maintained every 7 days and/or after significant rainfall events as required by the CGP.
3. Please ensure all concrete washout pits and concrete products are stored away from catch basins and any other drainage ways that could lead to Surface Waters of the State.
4. Please provide Ohio EPA with copies of inspection reports for Village Neighborhood Section 3 for all inspections conducted in 2021.

If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:      File Copy

EC:    Joyce Hill, Nationwide
       Joseph Lamparyk, Pulte Group



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

October 15, 2021

Epcon Communities
Bryan Dougherty
500 Stonehenge Parkway
Dublin, OH 43017

Re: **The Courtyards on Hyland Run**
**Inspection**
**Inspection**
**NPDES**
**Union County**
**4GC07298\*AG**

Transmitted Electronically

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water Inspection**

Dear Mr. Dougherty:

This letter is written regarding the follow-up inspection Ohio EPA conducted on September 14, 2021 at the Courtyards on Hyland Run construction project located along Hyland Croy Rd in Plain City, OH. This construction project involves construction of 81 single family condominiums, 18 duplex condominiums and associated infrastructure. The total construction area consists of approximately 25.9 acres. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of The Courtyards on Hyland Run NPDES permit 4GC07298\*AG.

*Please note that a separate Resolution of Violation (ROV) letter is being issued for this project.*

Findings

1. At the time of inspection, construction was active on-site. Contractors were constructing single family condominiums.
2. There was a construction trailer on-site, and the Stormwater Pollution Prevention Plan (SWP3) and weekly inspections reports were available for review by Ohio EPA.
3. Inlet protection throughout the site had been removed as discussed with Jeff Orzechowski on August 5, 2021 due to safety concerns for elderly residents living in the development. But, the SWP3 has not been redlined or updated to show that inlet protection has been removed.
4. The concrete washout pit was in need of maintenance. It had last been emptied on August 21, 2021 according to inspection reports on-site.
5. The skimmer was still installed in basin P-305 and appeared to be functional.
6. No individual lot sediment and erosion controls were noted at the time of inspection. Inspection reports noted that filter sock needs to be installed behind curbs on August 26,

2021, September 1, 2021, and September 8, 2021. At the time of inspection on September 14, 2021, filter sock had not been installed behind curbs.

**Recommendations**

1. Because inlet protection has been removed from the site it is imperative that individual lot controls be installed and maintained throughout the development for the duration of construction activity on-site.
2. Once installed, individual lot sediment and erosion controls should be inspected and maintained once every 7 days, as required by the CGP.
3. It is recommended that the concrete washout pit on-site be emptied and replaced.
4. It is recommended that the SWP3 be updated to reflect the in-field change of removing inlet protection throughout the site due to safety concerns.


If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.


Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:      File Copy

Attachments

Should you have any questions, please contact me at (614) 728-3844.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

ec:    Scott Sheerin, DSW, CO
        Bryan Dougherty, Epcon Communities



**Mike DeWine**, Governor
**Jon Husted**, Lt. Governor
**Laurie A. Stevenson**, Director

October 15, 2021

Epcon Communities
Bryan Dougherty
500 Stonehenge Parkway
Dublin, OH 43017

Re: **The Courtyards on Hyland Run**
**Resolution of Violation (ROV)**
**NOV**
**NPDES**
**Union County**
**4GC07298*AG**

<u>**Transmitted Electronically**</u>

**Subject: Resolution of Violation**

Dear Mr. Dougherty:

Ohio EPA, Division of Surface Water (DSW), conducted an inspection of The Courtyards on Hyland Run in Plain City, Ohio on September 14, 2021. Courtyards on Hyland Run construction project located along Hyland Croy Rd in Plain City, OH. This construction project involves construction of 81 single family condominiums, 18 duplex condominiums and associated infrastructure. The construction project consists of approximately 25.9 acres. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of The Courtyards on Hyland Run NPDES permit 4GC07298*AG.

Epcon Communities provided a response to the August 4, 2021 Notice of Violation (NOV) letter which included documentation to demonstrate that the violations had been resolved. This was verified during the September 14, 2021 inspection.

The documentation you submitted included an email detailing that all issues noted in the previous inspection reports had been addressed, including photos and an explanation of the site conditions and why issues were not previously addressed.

I have reviewed the documentation that you provided and have determined that Epcon Communities has now resolved all violations cited in the August 4, 2021 NOV. To ensure that all the violations have been addressed, I have included Epcon Communities response for each violation and its status.

<u>**Resolution of Violations**</u>

1. <u>**ORC 6111.07(A):**</u> No person shall violate or fail to perform any duty imposed by sections 6111.01 to 6111.08 of the Revised Code or violate any order, rule, or term or condition of a permit issued or adopted by the director of environmental protection pursuant to those sections. Each day of violation is a separate offense.

   <u>**CGP Part III.C.1:**</u> The SWP3 must have a certification statement in Part V.H, be signed in accordance with Part V.G, and be kept at the site during working hours.

   <u>**CGP Part III.C.2:Plan Availability**</u>

please send copies of all the weekly inspection reports since construction commenced to Ohio EPA via email: marshall.cooper@epa.ohio.gov

**On August 4, 2021, Ohio EPA DSW received Epcon Communities' response which stated that all four recommendations in the inspection letter and the violations from the NOV would be addressed as soon as possible. Inspection reports and a copy of the SWP3 were provided via a dropbox link. The follow-up inspection on September 14, 2021 found that the SWP3 and inspection reports were available for review in the construction trailer on-site. This violation has been abated.**

3. **ORC 6111.07:** See above citation.

**CGP Part III.G.2.i.iii:** When practices depicted on the SWP3 are not installed. If the inspection reveals that a control practice has not been implemented in accordance with the schedule contained in Part III.G.1.h of this permit, the control practice shall be implemented within 10 days from the date of the inspection. If the inspection reveals that the planned control practice is not needed, the record shall contain a statement of explanation as to why the control practice is not needed.

(a) **Violation Description:** Inlet protection on-site was unacceptable and not installed per the approved SWP3 for this project.

(b) **Additional Information:** The material used as "inlet protection" did not prevent sediment from entering the catch basin.

(c) **Requested Action**: Please remove the current material being used as inlet protection and replace it with inlet protection shown in the SWP3, which provides two options for inlet protection.

**On August 5, 2021 Ohio EPA had a phone conversation with Jeff Orzechowski of E&S Services, erosion and sediment control contractor for this project, regarding the coir inlet protection noted on-site. Mr. Orzechowski expressed concerns about safety in the development, as the residents are elderly. With use of typical inlet protection, they were finding that ponding water was unsafe for residents to drive through. I told Mr. Orzechowski that as long as the skimmer was still installed in the sediment basin, that the inlet protection could be removed. I also recommended installing individual lot controls throughout the development if inlet protection was to be removed. This violation has been abated.**

## Conclusion

Please note that this does not preclude the Director from seeking administrative or civil penalties pursuant to Ohio Revised Code section 6111.09 for the violation noted in the August 4, 2021 NOV letter. The decision on whether to pursue or decline to pursue such penalties regarding these violations is dependent on several factors, one of which is the company's future compliance with Ohio EPA regulatory requirements.

EC:    Vickie Cohen, M/I Homes of Central Ohio, LLC
        Joyce Hill, Jerome Village Company, LLC

a. **On-site:** The plan shall be made available immediately upon request of the director or his authorized representative and MS4 operators or their authorized representative during working hours. A copy of the NOI and letter granting permit coverage under this general permit also shall be made available at the site.

b. **By written request:** The permittee must provide the most recent copy of the SWP3 within 7 days upon written request by any of the following:
  • The director or the director's authorized representative;
  • A local agency approving sediment and erosion plans, grading plans or storm water management plans; or
  • In the case of a storm water discharge associated with construction activity which discharges through a municipal separate storm sewer system with an NPDES permit, to the operator of the system.

   (a) **Violation Description:** At the time of inspection, a Storm Water Pollution Prevention Plan (SWP3) was not available for review.

   (b) **Additional Information:** The construction trailer on-site was open but the SWP3 was not easily accessible at the time of inspection.

   (c) **Requested Action**: Please ensure a copy of the SWP3 is available on-site during normal working hours and please provide a copy of the SWP3 to Ohio EPA via email at: marshall.cooper@epa.ohio.gov.

**On August 4, 2021, Ohio EPA DSW received Epcon Communities' response which stated that all four recommendations in the inspection letter and the violations from the NOV would be addressed as soon as possible. Inspection reports and a copy of the SWP3 were provided via a dropbox link. The follow-up inspection on September 14, 2021 found that the SWP3 and inspection reports were available for review in the construction trailer on-site. This violation has been abated.**

   2. <u>**ORC 6111.07(A):**</u> See above citation.

   <u>**CGP Part III.G.2.i: Inspections.**</u>  The permittee shall assign "qualified inspection personnel" to conduct inspections to ensure that the control practices are functional and to evaluate whether the SWP3 is adequate and properly implemented in accordance with the schedule proposed in Part III.G.1.g of this permit or whether additional control measures are required. At a minimum, procedures in a SWP3 shall provide that all controls on the site are inspected: after any storm event greater than one-half inch of rain per 24-hour period by the end of the next calendar day, excluding weekends and holidays unless work is scheduled; and once every seven calendar days.

   (a) **Violation Description**: At the time of inspection, the weekly inspection reports were not available for review by Ohio EPA.

   (b) **Additional Information**: The construction trailer on-site was open but the weekly inspection reports were not easily accessible at the time of inspection.

   (c) **Requested Action**: Please ensure copies of the weekly inspection reports are available and accessible on-site during normal working hours. Additionally,



**Ohio Environmental Protection Agency**

Mike DeWine, Governor
Jon Husted, Lt. Governor
Laurie A. Stevenson, Director

October 15, 2021

Jerome Village Company, LLC
Joyce Hill
375 N. Front Street, Suite 203
Columbus, OH 43215

**Re:** **Glacier Park Neighborhood Section 12 Phase 2, 3, 4**
Inspection
Inspection
NPDES
Union County
4GC07097*AG

<u>Transmitted Electronically</u>

**Subject: Ohio Environmental Protection Agency NPDES Construction Storm Water Inspection**

Dear Ms. Hill:

This letter is written regarding the inspection Ohio EPA conducted on September 14, 2021, at the Glacier Park Neighborhood Section 12 Phase 2, 3, 4 construction project located at 8585 Wells Road, in Plain City, OH. This construction project disturbs 33.8 acres and involves construction of 105 single family units and associated infrastructure. The goal of my inspection was to determine your facility's compliance with Ohio's environmental laws and regulations as found in Chapter 6111.07 of the Ohio Revised Code (ORC) and the terms and conditions of Jerome Village Company LLC's NPDES permit 4GC07097*AG.

<u>Findings</u>

1. At the time of inspection, construction was active on-site. Contractors were constructing single family homes.
2. No construction trailer was noted on-site.
3. Correspondence from Corey Christopher, M/I Homes Construction Area Manager, received on September 13, 2021 indicated that all items from the inspection letter sent on August 17, 2021 had been addressed. I followed up with Mr. Christopher after I was unable to locate the Stormwater Pollution Prevention Plan (SWP3) on-site, and Mr. Christopher informed me that the mailbox was installed at the intersection of Glacier Point Drive and Mitchell-Dewitt Road.
4. Because the SWP3 could not be located on-site at the time of inspection, weekly inspection records were not reviewed during this inspection.
5. Individual lot controls throughout the development were in need of maintenance. Specifically, lots 1646, 1647, 1648, 1653, 1654, 1655, 1656, 1657, 1659, 1660, 1661, 1662, 1664, 1668, 1669, 1670, 1672, 1673, 1674, 1675, 1674, and 1677. Lots 1647, 1648, 1654, 1659, 1662, 1664, 1669, 1670, 1674, 1672, 1675, 1673, 1677, and 1668 have now been noted as requiring maintenance twice since the July 8, 2021 inspection.

6. Inlet protection was missing from the inlets on Canyon Wren Drive by lots 63 and 64.
7. The concrete washout pit appeared to be at capacity and was in need of maintenance.
8. Ohio EPA had a phone call with the consultant for this project, Justin Wollenburg, on Monday, August 2, 2021, to discuss the calculations provided for the sediment basin on-site. Upon further review by Ohio EPA, the calculations provided for the sediment basin were not done correctly. No permanent pool was provided – which is the sediment settling zone. The conversation included Wesley Sluga from Technical Assistance in Central Office who explained how the permanent pool should be calculated for a sediment basin. Future calculations will follow guidance provided during this call.
9. The underdrain was also installed when the basin was to be acting as a sediment basin. The underdrain prevents the basin from holding a permanent pool of water for sediment storage, therefore should be installed once the sediment basin is converted to post-construction.
10. The sediment basin was in the process of being converted to post-construction during my site visit on July 8, 2021, Mr. Wollenburg explained during our August 2, 2021 phone call. Mr. Wollenburg ensured that this would be completed in the next week or so, therefore, no Notice of Violation (NOV) letter is being issued for the incorrect sizing of the sediment basin.
11. At the time of inspection, basin P-304 had not been converted to post-construction as the skimmer had not yet been removed from the basin.

**Recommendations**

1. Inlet protection should be installed on all inlets throughout the development where active construction is occurring.
2. Because the sediment basin is being converted to post-construction, it is imperative that individual lot controls be placed and maintained during home construction. Therefore, it is recommended that individual lot controls be installed and maintained at every active building lot on-site. These would include lots numbered 1646, 1647, 1648, 1653, 1654, 1655, 1656, 1657, 1659, 1660, 1661, 1662, 1664, 1668, 1669, 1670, 1672, 1673, 1674, 1675, 1674, and 1677.
3. It is recommended that the skimmer be removed from basin P-304 in order to finish converting it to post-construction.

If you have any questions or comments concerning the enclosed inspection report, please contact me at (614) 728-3844 or e-mail at marshall.cooper@epa.ohio.gov.

Sincerely,

Ms. Marshall Cooper
District Representative
Division of Surface Water
Central District Office

c:      File Copy

December 23, 2021

Honorable Michael H. Watson
Honorable Elizabeth A. Preston Deavers, Magistrate
United States District Court
Southern district of Ohio
Eastern Division
Case No. 2:21-cv-3993

Your Honor(s),

First I'd like to point out a disorder of pages in the December 20 transcript submitted by both parties in this case. Particularly where I, Lynda Chapman, am speaking on pg. 11. The next page in the transcript is 13 in place of 12, so what I say on pg. 11 appears to end on pg. 11 and doesn't allow the continuance of my statement which is this: "This consent decree will pave the way for the next developer who doesn't get their way to sue the township and again step on the rights of your residents. They have property rights too. I'm pleading with you to please allow the motion to dismiss be answered before taking any consent action. Please vote "No".

We purposefully chose to live in a Rural Residential (RU) zoned area for over 30 years and all the homes surrounding us are 2-10 acre properties. We chose not to live in a Planned Development (PD) – we desired the rural character, the peaceful environment, the minimal traffic zone, the ability to have horses, donkeys, etc. There are 5 horse properties on our quaint road including ours. When Plaintiff Caldwell (Wicked Chicken) purchased the properties beside us, he knew they were zoned RU. He also knew he'd have to submit a Rezoning application to develop into PD. We went through all the process of expressing our concerns, speaking at every hearing. We felt forced to support the Referendum process because 2 of our 3 trustees voted "Yes" for the application and we knew it was our only option for oversight. And as it states in the Comprehensive Plan Chap 9, "It is up to the Township and the community to ensure that the goals and objectives of the plan are implemented successfully over time". When the Referendum successfully made it to the ballot, Plaintiff Caldwell proceeded to clear much of the woods. While this was his right as it was still zoned RU, it took the appearance of spite. The Consent Decree makes no positive changes to the Farm at Indian Run Development Plan to address our concerns and those of our neighbors.

We disagree that these developments are in full compliance with the Zoning Resolution and Comprehensive Plan.

The referendum process was not misused and was not "an arbitrary, capricious, unreasonable, and unconstitutional scheme" as repeatedly stated and/or inferred by the plaintiffs, as "each had a foundation in reason consistent with the surrounding uses of the properties". To quote the Motion to Dismiss, "these terms are used to support Plaintiffs' attempt to supersede the will of the voters." In Jerome Township, it requires 262 signatures on a petition for referendum. It is not an easy task collecting those. But when over 1,300 people or 74.5% of the voters vote "No" on Rolling Meadows Zoning Amendment in Nov 2019, over 750 people or 85% of the voters vote "No" on Farm at Indian Run Zoning Amendment in May 2021 (only item on the ballot), over 1,800 people or 73% of the voters, vote "No" on Scotts Farm & Jerome Village Zoning Amendment Nov 2021, it becomes quite clear that the citizens are speaking and it is not a "few" in either case; the amount of petition signers, nor voters.

We did not deny the development of any of these properties as they could be developed under their Rural Residential zoning.

We don't have the financial ability to have multiple attorneys researching and writing all the legal ways it would take to argue for the citizens' rights but pray that you'll see the unfairness and unreasonableness in this case. We appreciate you considering our positions as it's the only other way we can be heard legally.

Respectfully submitted,
Lynda Chapman   LyndaLChapman@gmail.com
8343 McKitrick Rd
Plain City, Oh 43064

From:        Neal Sargeant
To:           Meg Burrell
Subject:     Jerome Twp Consent Decree
Date:         Tuesday, December 21, 2021 1:0 : 3 PM

C  T O      T R

  ent by Twp resident   eal   argent on behalf Twp resident Matt   riend, whom was having complications w  the email address for Mrs  Burrell

  would like to let you know how disappointed   am with my Township leaders    have live in this community for years and the antics the township has put on is unacceptable    do not wish to approve the Rolling Meadows housing development,due to the fact that we have a ha  ardous waste cleanup site  known as the   ershberger dump  My fear is that the ponds they make will cause more problems and the value of my property will diminish because of the cancer rate

We the citi  ens of Jerome Township have spoken and followed the law by voting with a referendum   The township overturned us that is unacceptable and big business wins     personally ask you to help us stop  this manipulation of the law

Matt   riend

  ent from my iPhone
     eal   argent
C  T O      T R    M      This email originated outside the Judiciary     ercise caution when opening attachments or clicking on links

The Craig D. Scott Revocable Trust, et ak., (Plaintiffs) vs Jerome Township, Ohio (Defendants).

Case No. 2:21-cv-3993; Judge Michael H. Watson; Magistrate Judge Deavers

Dear Judge,

I'm writing to you in objection to the fairness of the consent decree passed by our outgoing Jerome Township Trustees (Joe Craft & CJ Lovejoy).  I don't believe they have fulfilled their duty as trustees to uphold the rural character of our community.  Population growth has exploded in Union County, Ohio and is well above what was originally planned for in the Jerome Township comprehensive plan.  This plan specifically calls out how important it is to keep a rural character to this community and doing so through responsible zoning and development.  The decision reached by the outgoing trustees is completely irresponsible and abhorrent.

The community overwhelmingly voted through referendum to **NOT** allow further rezoning and development.  This is because voters who have lived here for decades and newer residents like myself do not want the rural character of Jerome Township destroyed.  Not only did voters vote against further development, but the existing trustees (Joe Craft & CJ Lovejoy) have been voted out of their positions overwhelmingly.  This is because they no longer represent the best interest of township residents and only those with deep pockets (developers).

I request that you deem this consent decree as unfair since two of our current trustees (leaving on 1/1/2022) have breached their duty to the citizens of Jerome Township.  By allowing this to go through, precedent will be set that zoning does not matter, citizen well-being does not matter, and the rural character of our community does not matter.  The only thing that will matter is greedy developers looking for any kind of legal loophole to ensure they can improve their bottom line with disregard to the community.

The Plaintiffs argue that only a few residents are driving the opposition to development.  If you look at the 2021 election results this clearly speaks volumes that 75% of the community feels as though our rural character is being destroyed due to explosive growth and poor development decisions by our current outgoing trustees.  They also argue their development is in line with the community comprehensive plan.  This is untrue as population growth has well exceeded expectations and is now ruining the rural character of our neighborhoods.

Lastly, I think it is completely unfair that two trustees who are leaving office in 10 days are allowed to approve a decision of this nature.  This should be intended for the trustees whom voters have elected (Megan Sloat, Barry Adler, & Wezlynn Davis).  Since this issue sets precedent for all future development, I believe it is wreckless to allow Joe Craft & CJ Lovejoy to vote in favor for a consent decree allowing all development to destroy our community.  I hope you will stand with the citizens and voters of Jerome Township since we have spoken loud and clear.  Development is now so bad that our rural community character is getting destroyed.

Thanks for your consideration,

Matthew McDaniel – 10040 Corona Lane, Plain City, OH 43064

Objection to pending settlement in Case No. 2:21-cv-3993


Judge Michael H Watson

Magistrate Judge Deavers


I am a Jerome Township resident for 36 years. I live on McKitrick Rd.  I object to the pending settlement of the suit brought by four land developers.  The proposed settlement is neither fair nor reasonable.


All four of these developments were fairly and legally voted down by referendum.  It is not right that they are joined together in an "all or none" pending approval that ignores the will of the voters.  In addition, the development on McKitrick Rd completely misses the logical test of highest and best use for the land.  The developer proposes a small lot, high density plan.  That is the exact opposite of the existing neighborhood.


Thank you for your consideration of this matter.  I respectfully ask that you rule that this consent decree is not a fair and reasonable settlement.


Sincerely,

Michael Leatherman

7900 McKitrick Rd.

Plain City, Ohio 43064

miketr4@gmail.com

Dear Judge Michael Watson,

I am writing to you about Case no. 2.21-cv-3993 after witnessing a huge miscarriage of the rights of the citizens of Jerome Township. We live in a rural area and the property is zoned rural. I moved out here thirty years ago for this reason alone. Lately, we have had so much development in this area and it has impacted our community greatly. The traffic has become so heavy for these rural roads that it is a danger to the residents. Every year I must replace fence posts because people are going off the road and crashing through my horse fence. This never happened when the population was less dense. I now drive to the park one half mile from my home because of the danger of being hit by so many cars. As a community we finally took a stance and had a referendum to vote on the issue of changing the zoning for more development.  85% of us voted to halt developments until we had time to address the problems caused by the increased population. 85 %! I went to the township meeting on Monday December 19 to hear what the trustees had to say. I now feel my rights as a citizen of this country have been trampled. The trustees, who both will be out of office in a matter of weeks decided to ignore the voice of the people and grant the developers the right to proceed. What an injustice! Their job is to be the voice of the people they represent. They heard our voices loud and clear and they chose to ignore them. I do wonder if they are being paid by the developers. Money and power should not be allowed to overrule the voice of the people. Please help us correct this injustice by letting the elected trustees have a vote and make a decision in 2022. The trustees who supported the development are on their way out of office and should not be given the power to ignore the vote made by the people of this township. We have followed the rule of law.  Hopefully the rule of law will stand.

Thank you very much

Neal Sargeant
9400 Brock Rd.
Plain City, OH 43064

Honorable Michael H. Watson
Honorable Elizabeth A. Preston Deavers, Magistrate
US District Court
Southern District of Ohio- Eastern Division
Reference: Case # 2-21-cv-3993

Your Honor(s),

Thank you for hearing my concerns and objections regarding the Jerome Twp. consent decree agreement approved between the Twp. Trustees and the Plaintiffs of The Craig D. Scott Revocable Trust, et al. I beg of you to consider the consent decree to be unfair and unreasonable. The system of zoning amendments and trustee approval process has pushed through uncontrolled growth at a pace that has completely overwhelmed our infrastructure and has gone far beyond the Twp's Comprehensive Developmental Plan.

My home on three acres is directly across the road from the original proposed entrance/exit to the Homestead at Scotts Farm development. I was stunned to find out this development was to have 248 homes traffic enter and exit right at the end of my driveway. I have two young children who catch the school bus each day at this proposed entrance site. The line of site is nearly blind as my driveway is at the bottom of a low dipping hill. Brock Road is a very precarious roadway with blind corners, hills, bridge embankments, speeding cars and lots of wildlife crossing. The entrance has been moved a bit further down the road, however, the increased number of cars that will be passing our driveway continues to be a concern. This road simply cannot handle the traffic that is coming with the development. I worry about the continued safety of my family pulling out of the driveway, catching the school bus, or simply crossing the road to get the mail.

My wife or I attended every township zoning board meeting to express my family's and neighbors' shared concerns. The response from the zoning board was the same each time; "We are guided by the parameters of the township Comprehensive Developmental Plan. If it fits into those requirements, we must approve the zoning changes". The township Comprehensive Developmental Plan was created in 2008. Our township was a very different place back then. Safety is not addressed in the Comprehensive Plan. If it was, it would be safety considerations based on 2008 trends, not the present day. This document is outdated and in need of revisions to suit the current economic and environmental needs of the township.

I turned my attention to the township Trustees. I expressed my concerns about the uncontrolled growth continuing to be pushed through at rates that are too overwhelming for this quiet farming community to handle. The trustees continually stated that they must first build the homes, that will bring in the funding which will pay for the infrastructure improvements. Right now, because of the developments and growth that they have already approved and built, we have a very serious infrastructure problem including more serious vehicle accidents and atrocious traffic tie-ups. The area is still seeing a lot of farming. The farm machinery has very difficult time maneuvering around the impatient drivers hurrying to get into their developments. Waiting any longer for the trustees to revise

the Comprehensive Plan is not an option.  They have refused to update it.  This is a major reason that one of the Trustees did not win reelection.

My children were just redistricted into a brand new (2 year old elementary and 1 year old middle) school because of the recent growth.  The superintendent has stated that these two new schools will be 54% OVER-CAPACITY next year.  How will 690 new homes in the Twp. impact the school overcrowding?

The elections clearly illustrated that the residents are experiencing issues with the status quo.  We overwhelmingly passed the referendums to halt the developments as designed.  We elected two new township Trustees because they worked deals with these plaintiff developers without any transparency.  The residents agree that two of the three representatives did not have the best interest of the residents in mind when making these decisions.  Last night, both lame duck representatives voted to approve the consent decree, against the will of the residents' wishes.  This vote came 10 days before they both leave office.  The consent decree should be reviewed and approved by the trustees who will have to execute it, not by outgoing trustees who have lost the trust of the community they are supposed to be representing.

We agree that responsible development is possible, and we welcome new residential homes to be built in our community when it's done in a safe and respectable manner to the residents who currently live here.  We acknowledge that the landowners have the right to develop their land, but they don't have the right to do whatever they choose.  Their rights end when their actions infringe upon the rights of myself and my neighbors to safely access and live at our properties.


Respectfully Yours,

Neal Sargeant

Penny Sullivan
7091 Hill Road
Plain City, OH  43064

December 23, 2021

Reference: Case No. 2:21-cv-3993

Honorable Michael H. Watson, Judge
Honorable Elizabeth A. Preston Deavers, Magistrate Judge

I am speaking directly about Nationwide Development's Jerome Village. I have lived on Hill Road for over 34 years and Eversole Run runs through my property.  When our property was surveyed, it gave the location of the steel stakes as the middle of a small stream.  It is no longer a small stream.

I don't know if you have driven through Jerome Village recently, but the number of houses that are under construction at one time, both north and south of Wells Road, is more than the EPA and possibly, the County Engineer's office, can stay on top of.  Builders aren't using straw rolls or other measures to keep the mud from their sites (which are graded to slope downhill to swales and surface drains, manmade tributaries or retention ponds) from flowing into Eversole Run.  When it rains, Eversole Run is a muddy mess and the volume of water flowing, and sometimes racing through our properties, has caused massive erosion along the run, with trees being uprooted and falling into the run.  Of course, it is up to the property owners to take care of that.

I have been visiting the retention ponds in Jerome Village, taking notes and photos for a civil engineer to look at.  The area I have studied is north of Wells Road and west of Jerome Road.  Many of the retention ponds have not been built to follow the directions of the Proposed Controls of the Stormwater Master Plan for Jerome Village, dated 7/24/06.  I'm including a paragraph from that:

"Peak developed runoff shall be limited to less than or equal to the peak existing runoff rate for all storms, including a 1-inch rainfall event and the 1-year through 100-year rainfall events. The developed runoff volume, during the same existing runoff time period of 24 to 30 hours, shall be limited to the existing runoff volume for all storms, including the 1-inch rainfall through 100-year rainfall events. The increased runoff volume created by development shall be detained onsite and released during the time period from 30 hours up to 120 hours at a controlled rate for all storms, including the 1-year through 100-year rainfall events."

The exit outlets for some of these retention ponds are 30 -40" in diameter.  There is no controlled rate.

Please slow down this raging development that our waterways are overburdened by and our properties are being damaged and possibly could be destroyed by.

Thank you,
Penny Sullivan

From:          EV N CO
To:            Meg Burrell
Subject:       Re: Consent Decree
Date:          Thursday, December 23, 2021 10:39:0  AM

**CAUTION - EXTERNAL:**

To Meg Burrell

Re  Consent Decree for Development in Jerome Township


Madam,

 am writing to you as a long time resident of Jerome Township,   nion County, and Plain City    think you need to know the opinions of those of us out here that appreciate new development in our community

 or our Township and area to be what we want it to be, we need more happy residents, and,  uite frankly, a larger ta  base

We are proud of what has become of our area to this point, and feel it selfish and unfair to limit the opportunities of those outside of our communities  We were happy to see   ed    arrive, and we are happy that we are still able to combine family farmland with housing developments that allow others to have what we have

Thank you for your kind consideration,

  evin     tephenie Co

8 4  Currier Rd
Plain City, Ohio 43064
  nion County
Jerome Township

> On Dec  3,  0 1, at   03   M, Meg Burrell   Meg  Burrell    ohsd uscourts gov
> wrote
>
>   i   evin,
>
>   am unable to open the attachment you sent     and therefore unable to distribute your letter  Can you please resend as soon as possible  before noon  in PD format   f you are unable to make a PD  , please include the te  t in the body of your email, signed with your name, and   will make a PD
>
> Best,
>
> Meg
>
>    Original Message
>   rom            CO    kcnitlions   sbcglobal net
>   ent  Wednesday, December   ,  0 1  0 PM
> To  Meg Burrell   Meg  Burrell    ohsd uscourts gov
>   ub ect  Consent Decree
>
> C   T O      T R
>
> C   T O      T R      M     This email originated outside the Judiciary
>    ercise caution when opening attachments or clicking on links

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

12/23/2021

Sarah J Griffith
7580 Wells Rd
Plain City, OH 43064
614-205-3706

To whom it may concern,

This letter serves as my formal objection to the Jerome Township Consent Decree, which has overturned the election results for the recent zoning referendums. My objections are this:

1. Safety of our roads and our neighborhoods. When my grandfather built our home on Wells Road in 1969, there obviously was no traffic issues. Gone are the days of walking to Jerome Cemetery to visit my grandmother, but I should be able to drive my mother and my children to Marysville, Dublin, Plain City, etc., without fearing for our lives. I have had actual nightmares about putting my children in the car, and attempting a left-hand turn onto route 42. We go to Marysville four days a week for kids sports and as a family, we have decided it is too dangerous to turn left onto 42 from Wells Road and have started back tracking to Jerome Road and then going straight over 42. Honestly, that route is not much better, and it truly scares me every singe time we go. My husband has been rear ended at 33 and 42, and we have witnessed countless accidents on Industrial Parkway and Brock Road. That intersection is almost as scary as 42. The horrible traffic at the Industrial/42 intersection keeps me away from there as well. There needs to be turn lanes and signal arrows at that intersection. The home building is going incredibly too fast for the infrastructure.

   With massive amounts of people also comes crime and vandalism. Unfortunately, this has become an issue for Jerome. Cars and homes are getting broken into or vandalized at a rate I have never seen before. Before we put more people into Jerome, I feel we need to think about what our police will look like moving forward to meet the needs of all the people coming in. A neighbor's dog had me cornered in my garage for almost 15 minutes before the sheriff could get to me to help.

2. Environmental concerns are my next issue. I am lucky enough to have Eversole Run, run through my property. As a child, we had no issues with the creek flooding and banks eroding. Now, with even the slightest amount of rain, Eversole Run rages like a river out of control. It spills over the banks on a consistent basis, and as a consequence is eroding the banks. We are losing trees that had never even come close to the water before all of Jerome Village was built. Now they are talking about putting more houses in Jerome Village and I am afraid what more it will do to our land and for the other land owners with Eversole Run in their property. Less than two years ago the stench of sewage was so strong in the Wells Road/Highland Croy area, I went to investigate. There was actual sewage coming up out of a sewer cover and as I followed the disgusting

stream, it was emptying into Eversole Run. My children play in this creek! The massive amounts of wildlife who have been displaced and now call my eight acres home, drink from this creek! I was saddened and sickened. With more homes being built what other environmental disasters are to come I wonder.

3. The growth is taxing the "little guys" to death. After my grandfather died about five years ago, it was always my dream to raise my children at my most favorite place on earth, the home my grandfather built so many years ago on Wells Road. I am a registered nurse and my husband is a finance manager at a car dealership. We have moderate incomes and our dream is to retire in this house and someday, God willing, one of my children keep the property in the family as well. At the rate the school taxes and property taxes are going up, I am honestly not sure how much more we can take. Everyone is always saying how great it must be for our property value to be going up so high because of Jerome Village. Well not for us! We do not want to sell our home like most of the people around us. We are going to be taxed and levied right out of our dream. The more and more and more the building continues, the higher it all goes. We aren't even privied to the amenities that all of Jerome Village is. Jerome Township will not even let us tap into the sewer systems that now snake all around us because and I quote "they do not want too many people tapping into the system". Seriously? There are too many people tapped into the sewer system and they want to build hundreds of more homes to put on the same system? Very sad.


 It saddens me that the Jerome of my youth is essentially gone, and I have come to the conclusion that the building will never stop. But can we please take a pause, listen to the residents, and slow the building down. Can we please try to preserve what little land we have left and require people to build on larger lots. I have so many more grievances with the building around Jerome, but I will leave it at this. If there is anyway to stop this, I beg of you to help the 70% plus voters who just want it all to slow down. Thank you for your consideration and for the opportunity to voice my opinion.

Sincerely,

Sarah J. Griffith, BSN, RN

Honorable Judge Mark H. Watson

Honorable Magistrate Judge Deavers

Objection to pending settlement in Case No. 2:21-cv-3993

As a Jerome Township resident of over 25 years, I am writing to you to make a plea.  I know numerous residents have listed all the legal violations that the plaintiffs/developers have made.  I am an engineer, so logic typically rules my life.  I hope the logic that I see will be explained well enough to you so that you can understand it and understand how Jerome Township's main issue is that elected Township Trustees were not doing their job.  As an elected official, you are elected to represent the constituents that elected you.  For the past many years, the trustees have not done that.

I have attended numerous Township Meetings and the same pattern that is playing out with this Complaint and now Consent Decree has existed and been followed throughout all of the Referendums. Here is the pattern:

- A developer brings to the Township a rezoning request to take the rural land and try to institute a PUD and put a significantly higher density of houses on land in our township.
- The Zoning Board recommends the rezoning, despite residents coming to those meetings and consistently objecting and being not listened to.
- The recommendation is reviewed and approved by the trustees again despite that the residents continue to come to the meetings and voice their objections with numerous reasons stated and just letting the trustees know what they wanted.
- The residents use the legal processes that were put in place so that if the Trustees approved something that the residents did not want approved the decision could be overturned.  We gathered signatures of Residents to put the decision back in the hands of the voters/residents so that they could make the decision as we wanted it to be made, not the Trustees who were not listening to us.
- Through this Referendum, a vast majority of the residents of the Township vote to deny the rezoning.

This pattern happened four different times.  The fact that it had to happen four times proves that the Trustees were not doing their jobs of listening to the residents.  Now, this pattern is again being followed with the Claim and Consent Decree with the Trustees making their decisions without listening to the residents despite the residents again voicing their objections.  The issue now is that there is no referendum process in place to stop the Trustees wrong decision, this can only happen if you stand up for the residents of Jerome Township and do what is right and what the Trustees should have done and that is act in the manner that their constituents desire them to.

Another point of how the residents have continued to try to change the process and do everything they can to correct this issue.  Two elections ago, one trustee position was up for vote.  The incumbent was soundly voted out of office so that a new Trustee from residents was elected because it was felt that we would get proper representation.  In the most recent election, two other Trustees were up for re-election.  Again, both were soundly voted out of office and two new Trustees were elected.  This just is

another example of the residents speaking up for how they want their township to be and that the former Trustees were not doing their job and therefore were voted out of office.

My final issue is that given that these two Trustees were voted out and will no longer be Trustees as of January 1, 2022, they granted a special Township Trustee meeting on December 20, 2022 so that the fox (Trustees) guarding the hen house could approve the decree prior to being officially removed from office. Of the three votes, the two "yes" votes were from the two trustees that were voted out and had previously all voted for the developers. The one and only "no" vote was from the one elected Trustee that the residents elected recently.

I do not like to say this, but the issue that Jerome Township had was that we had corrupt Township Trustees. We, the residents, stopped their actions four times by referendum. We then voted them all out of being Township Trustees. I implore you to not let their last corrupt act to approve this Consent Decree to be allowed to stand and get approved. At a minimum, please send it for revote by the new Township Trustees which I am extremely confident would vote it down. The only unfair and illegal act going on is that the developers are continuing to get these Trustees to approve things that the Residents of Jerome Township do not want.

Please help us and stop this injustice!


Sincerely,

Scott A Flading

Scott A. Flading

10420 Crottinger Road

Plain City, OH 43064

From:          Carolyn Mitchell
To:            Meg Burrell
Subject:       Support o  Jerome Township Consent Decree
Date:          ednesday, December 22, 2021 1:  :3  PM

---

C  T O     T R


To the   onorable Judge Watson,

 support the Jerome Township Trustees vote to accept the consent decree  The Trustees and the   oning
Commission used the current rules being applied to all developers to give the O   for these four different pro ects
 ome of the developers tried very hard to meet the rules and the neighbors wishes but some could have cared less
feel the Ob ectors abused the purpose of referendums by petitioning every pro ect that came up, thereby making it
look like they were going to e  clude any further developments    ome of the signers of the petitions live in the very
same kind of development that they were trying to e  clude which seemed very elitist    armers are made out to be
culprits when most of the land that is  presently in residential use in the township was once farmland    very property
owner has the right to find the highest and best use if wanting to sell their property   n applying all these thoughts
find the Trustees decision very fair and reasonable

James Mitchell

 ent from my iPad
C  T O     T R  M      This email originated outside the Judiciary     ercise caution when opening
attachments or clicking on links

Meg_Burrell@ohsd.uscourts.gov

To Whom It May Concern:

I am writing this letter to object to the pending settlement between the trustees of Jerome Township and the Craig D. Scott Revocable Trust, et.al.

The residents of Jerome township, both new and old, are not opposed to development categorically.  They are opposed to development that runs contrary to the best interests of current residents, both new and old, in the township.

When Jerome Village Master Plan was originally approved for development, there were specific boundaries associated with that plan.  Since that time, additional acreage has been added to the Master Plan and developed without regard to the increasing detriment of such actions to existing residents.  Current residents of Jerome Village were promised facilities and amenities within the original plan that have not come to fruition.  The HOA with actual homeowner participation is contingent upon the completion of the Jerome Village Plan.  With additional acreage and development being added to the Master Plan, the actual participation of the homeowners is pushed further and further out in time as well as adding indefinitely to the association's increasing monthly fees for membership without homeowner representation.

The number of retention ponds is growing exponentially with the addition of more and more development areas.  All the ponds in each area have overflow contingencies that allow for the release of overflow water at the same time thus increasing the potential for flooding surrounding areas and impacting drainage not just in the Jerome Village developments, but the entire local area in which they are located.  Residents have provided photos to township trustees to show the effect of these issues to no avail.

The consent agreement allows developers to determine best road placement and best use of Ohio land. County Engineers can provide much better insight into what roads and improvements counties need-- and indeed, have already, with a plan that was made in 2008. When plans are made but go no further, the plans become extremely expensive moot exercises. As one developer recently shared with me at a township meeting; a county plan for roads that are **not** built are just plans and nothing more.  Instead, ODOT, County Engineers, and local Townships should be doing the planning for immediate construction and the developers contributing to the cost of finished roadways **after** they have identified where and what they want to develop along **existing** or **planned** roadways.  In a letter dated May 13, 2021, from Bill Narducci, Assistant County Engineer for Union County, Mr. Narducci states "We've had the opportunity to review the above referenced development's submittal and staff report by your office. In addition, we have had several conversations with the Jerome Village development team in regards to the layout of this subdivision, specifically the absence of a relocated Blaney Road within these properties, which has been shown consistently on planning documents generated by the County, Township and Jerome Village development team over the years, including within the approved preliminary plat for the Jerome Village Master Development from January 2008."

As a result of the township approval of this new development, another feasibility plan was developed that impacted existing residents by the proposed taking of their property to ensure that the developers could move forward without having to address a relocated road within their development.

The continued and unchecked influence of developers on the enjoyment of current residents' properties and lives is the reason that referendums were called to overturn the approvals for the developments in this action.  Township trustees continue to approve plans for development that have consistently been overturned by referendum.  New trustees have been voted in to replace those trustees seemingly bound to the wishes of the developers.  The new trustees must be given an opportunity to review the issues so emphatically important to residents and their successful referendums.  As stated previously, residents are not categorically against all development.  Many of the residents live in Jerome Village developments who voted for the referendums. But even they recognize that continued expansion of additional developments cannot go on without greater planning and coordination with existing homeowners and the consideration of potential impacts on current home environments, residual flooding, road placement that benefits not only the developers but also residents as well and the county in general, not to mention increasing school populations and impending congestion.  The voices and desires of residents must be allowed to be contributing factors in building the future of the township.  The residents voiced their desires through referendum and those voices should not be silenced by a consent decree imposed by lame duck trustees.

Your consideration of this matter is most appreciated.

Kindest regards,


Susan Lasley,
Jerome Township Resident

7717 Harriott Road
Plain City, 43064
(614)371-3233

Please consider this information when considering the judgement on the consent decree for Jerome Township. I am most concerned about the Rolling Meadows development that is lumped into this suit as it is not just about money or infrastructure which are also valid issues of a majority of residents as seen by the referendum results.

Hershberger J D Landfill is an EPA superfund site located on Crottinger Road in Plain City, Ohio 43064. The Environmental Protection Agency (EPA) identifies sites such as Hershberger J D Landfill because they pose or had once posed a potential risk to human health and/or the environment due to contamination by one or more hazardous wastes. The entrance to this landfill is .22 miles from the back side of Rolling Meadows Golf Course which abuts Crottinger Road on the west. There is a second dump with a remediation entrance even closer to this golf course that is the proposed site of the Rolling Meadows Development.

As for Rolling Meadows, runoff from the toxic waste dump is going into the soil and ponds of that golf course. One of the speakers at the 12/20/21 consent decree meeting gave a firsthand report of foaming of a pond, fish kills and other wildlife deceased in the area of the pond. Please view his testimony in the meeting recording.

The approval of the consent decree will put the people that may potentially buy homes from that development in harm's way. They would not be currently doing the extensive remediation on those dumps if there was not an issue. I moved here in 1997 and was told at that time the dumps were closed and nothing was toxic. From the tall chain link fences now being built around that land and the pipes and hills of dirt being piled up several feet deep it appears I was lied to then and I bet the new homeowners will be lied to also about the toxic runoff that is already in and continuing into runoff into that property.

I would at least like to make sure this landfill and its toxicity is fully disclosed to anyone shopping for a home in this development if it allowed.

I am writing this appeal to have this reviewed even if it doesn't change the outcome because this needs to be addressed on the record.

Thank you for your consideration.

Susan Lord

13129 Adams Rd

Plain City, Ohio 43064

614-725-8571



A current resident's backyard

Adding dirt around the pipes

Landfill entrance

Bulldozer piling dirt

Main entrance near 10405 Crottinger Rd

fencing being erected

This fencing is high, I estimate 9-12 feet

Second entrance

Pill-29 Meadows

entrance to Second dumpsite

photos 12/22/21

The Honorable Michael H. Watson
The Honorable Elizabeth A. Preston Deavers, Magistrate
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT of OHIO
EASTERN DIVISION
Case # 2:21-cv-3993

I am deeply troubled by the recent events at Jerome Township. If this Consent
Decree is allowed to stand, the residents of this township will have lost their
voice. We actively collected signatures for several referendums, which were
overwhelmingly passed at the polls by the residents. This tells me that we have a
large community of engaged voices in our township, but certain parties don't like
what these voices are saying. These parties (developers) have chosen to rewrite
the very character and charter of our township to stifle these residential voices
and that feels incredibly unfair to me. Every step of the referendum process was
meticulously considered and legally enacted. There was no ill-intent, only a
desire to let the will of the residents be heard. This consent decree strips that
residential right and I implore you to disallow the approval. Thank you,

Susannah Ross
8180 McKitrick Road
Plain City, Ohio
43064

614-314-5535

December 21, 2021

To whom it may concern,

I am 62 years old and have lived in Plain City since I was six years old. I've seen lots of changes and welcomed many new neighbors, as residents and businesses. I have not found any to be to the detriment of our community, but instead as positives for all.

Having lived on Currier Rd with my parents until college and then having come back and built our own home on the family farm right after, I can honestly say that it's hard to think of the view from our back window changing. However, I'd much rather it change with a builder like those building presently in our community than one who would build nothing but apartments or tiny homes. I also like that they're a family owned business who cares about their reputation. I can't speak to every builder, but it seems that those homes being built are quality homes. I also love the way they are revitalizing the earth with a tree for a tree. The trees they are adding are in much better health than those being cut down, at least from what I've seen. As far as the waterways, have those arguing the point actually looked at the state of them?!  We have a creek that has always run through our property. My parents worked hard and spent a lot of money trying to keep it cleared of natural debris and overgrowth, but there's still a real problem. I see this situation only getting better with the residential building because of the strict adherence to codes and improvements that have to be followed. I think it will be a natural environment that will be improved upon in many ways, lending itself to parks and recreation, as well as overall revitalization.

I graduated from Jonathan Alder and my husband from Fairbanks. I was a teacher in Jonathan Alder for 15 years and Hilliard for 16. I also did storytime and writer's workshop for Plain City Library for ten years. We've always seen this growth coming and should have been more prepared. Sometimes it takes the emergence of a state of being in order for necessary change to occur.  Might the schools be more crowded?  Of course they will, but just like for the over 200 years our country has existed, our schools will adapt and be made better from the resources from which they will benefit. More schools will be built from the tax money and larger schools have more resources for all. Having been a very active part of one of the top ten largest districts in the state of Ohio for 16 years, I can tell you that it's the community that grows together in a positive, not adversarial, way that keeps that small town/village way of life.

Now my husband and I own the most iconic building in Plain City, the Clock Tower Building, where we have operated our entrepreneurial adventure in retail. We have been proud to own this building and we have made our share of improvements but after ten years, we are selling it to young people who are going to continue to take care of her and see she stands tall. They'll keep what's wonderful and add their own spark to make the village even better. Change is inevitable and we must greet it with acceptance.

This country has always been built on the rights of individuals to buy and sell property as they see fit. Granted there has to be an organized method to this growth, but a few should not be able to stop that growth just because they don't like the way it's being done. Every individual has had a right to vote and to think that a very few more boisterous individuals can legally think about changing what has already been decided frankly makes me angry.

My family has tried to remain quiet because we have a personal stake in the growth because our wonderful parents built and left to us an incredible piece of property as their legacy. They at one time themselves almost sold it and even when they bought it over 60 years ago knew that one day it would be developed. They were so proud that they'd made such a wise investment that would give their children the right to do with it what they wish. Now we're being stopped from doing this because of decisions being made by a few very vocal individuals who believe they have more of a right than the majority. Perhaps they'd like to help us keep our parents home kept care of, pay the taxes, make sure we have someone to farm it to help pay for the utilities and upkeep, mow the lawn once or twice a week or keep the driveway cleared of snow, stay there regularly to make sure the home is kept safe from vandalism or pay someone to stay, as well as keep up with our own homes. Our parents would be upset to know that we are not being afforded the opportunities the value of the land they left to us  because of such adversarial individuals who think only they know best so will do whatever they need to in order to stall progress. More importantly they'd be sad to think that our community's future may be decided on by a few. Please allow us the right to develop, as already agreed to by the majority.

Thank you for your time and consideration.
Sincerely,
Tamara Redmond
614.506.6541

December 21, 2021

To Whom It May Concern:

Please acknowledge **my disapproval** of the consent decree signed by the **Jerome Township Trustees** on December 20, 2021, which overturns the election results for four recent zoning referendums. Two of the signing trustee's will be out of office at the close of 2021 and therefore should not have been able to decide such an important document's impact on the residents.  One of the trustees' was voted out of office by the voting resident's by 80 percent of the voters and the other decided to vacate his seat.

Please let the court system or the 2022 trustees' decide on this decree.

Terrie Shank
12480 Bell Road
Marysville OH 43040

 

The Honorable Michael H. Watson
The United States District Court for the Southern District of Ohio
Joseph P. Kinneary U.S. Courthouse
85 Marconi Boulevard
Columbus, OH 43215

12/23/2021

RE: **Motion to Intervene 8, ECF No.30 / Case 2:21-cv-3993**

The Building Industry Association of Central Ohio and Columbus REALTORS appreciate the opportunity provided by the Court to express our organization's position that the Motion to Intervene 8, (ECF No.30) should be denied by the Court in Case 2:21-cv-3993.

**Who we are.**

The Building Industry Association of Central Ohio has represented the Columbus region's residential development and construction industry for over 70 years. BIA members include residential and multi-family developers, builders, professional design services, subcontractors, attorneys, and suppliers.

Columbus REALTORS is a professional trade association comprised of over 9,400 real estate professionals engaged in residential sales and leasing, commercial sales and leasing, property management, appraisal, consultation, real estate syndication, land development and more.

**Why we oppose intervention.**

Land use and development are processes designed to balance the rights of property owners and the community. Developers, residents, and property owners must work collaboratively with a community's elected representatives and professional staff to find paths forward for future projects.  While the developers in the case before the Court did just that, and ultimately obtained township Trustee approval for their projects, in Jerome Township, a shadow government has been created via petition initiatives that seek to deny property owners' due process rights.  Over the past few years, a small number of residents of Jerome township have routinely and regularly utilized the referendum process in combination with aggressive, controversial, public relations tactics to halt all proposed residential development within Jerome Township.

Unfortunately, the weaponization of the referendum process has been used to prevent local jurisdictions from executing their statutorily and Constitutionally required duties and establish de facto exclusionary zoning processes via the ballot box.  In this case, such actions require judicial intervention to protect both the integrity of the zoning process, and the rights of property owners. Like most settlements, we can be assured that neither party(ies) are getting 100% of what they want but making a decision they believe to be in their long-term best interests.

 

By seeking to intervene in this case, the shadow government of Jerome Township seeks to extend its authority beyond the right of referendum and interfere with a legal process to which they are not a party, to prevent the township from coming to a negotiated settlement with the parties involved in this case.  If the Court were to allow intervention in this case, it would beg the question, "who should the development community and other stakeholders work with if the Townships elected officials have no authority to execute their duties?"

Simply put, landowners have a right to a fair hearing regarding land use and zoning.  Landowners have a right to expect that the outcome of the political process will be fair and compliant with applicable federal, state, and local laws.  For these reasons, we request that the Court deny the motion for intervention.

Finally, actions such as those coordinated by the anti-development cohort of Jerome Township are becoming increasingly routine in central Ohio. These actions occur in an environment in central Ohio, where our region continues to grow, and housing creation has not maintained pace with that growth, leading to increased prices and creating housing affordability challenges that exacerbate inequities in central Ohio.

Union County is one of the fastest-growing counties in Ohio, a state that, per the last census, saw 55 of its 88 counties lose population. As farmers and landowners look to exit businesses, sell a property, or create a new venture for themselves, a partnership with the development community is a natural fit. The private sector must work collaboratively with local governments and those they represent to strike an appropriate balance.

As our region seeks to tackle housing affordability, there is acknowledgment from numerous studies indicating that the main driver of these challenges is a simple lack of housing unit creation. This case is a perfect example of how difficult it can be to build housing in our region. A small cohort has decided to deny a large number of people the opportunity to have a home.

The Court should deny the motion to intervene and restore the certainty of property owners' process when petitioning their government or settling an action stemming from violations of those rights.

Sincerely,


Jon Melchi
Executive Director
Building Industry Association of Central Ohio


Brent Swander
CEO
Columbus REALTORS