UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**The Craig D. Scott Revocable Trust, *et al.*,**

    **Plaintiffs,**

**v.**

**Jerome Township, Ohio,**

    **Defendant.**

**Case No. 2:21-cv-3993**

**Judge Michael H. Watson**

**Magistrate Judge Deavers**

# OMNIBUS OPINION AND ORDER

The parties have submitted a proposed Consent Decree for the Court's approval. *See* ECF No. 34. Also pending before the Court is a motion to intervene by Robert G. Chapman and Lynda L. Chapman ("Movants") pursuant to Federal Rule of Civil Procedure 24. Mot. Intervene 1, ECF No. 30.

As a preliminary matter, Harold E. Curry, Vivian Curry, and AMH Development ("Plaintiff-Intervenors") sought to intervene as Plaintiffs in this case pursuant to Federal Rule of Civil Procedure 24. Mot. 1, ECF No. 22. Since that filing, Plaintiff-Intervenors have moved to withdraw their motion. Mot. Withdraw, ECF No. 32. The motion to withdraw is **GRANTED**.

## I.    FACTS

From mid-2019 through mid-2021, the Jerome Township Board of Trustees (the "Trustees") approved various requests for re-zoning within the township that would allow for new development. Consent Decree 3–4, ECF No.

34-1. Township residents who opposed those developments initiated referendums pursuant to Ohio law to override the Trustees' zoning decisions. *Id.* at 4. The underlying lawsuit was brought by Plaintiffs, landowners and developers, who allege that Jerome Township, Ohio ("Defendant"), through the referendum process, blocked Plaintiffs from developing their properties. Such actions by Defendant, Plaintiffs allege, prevented Plaintiffs from "putting their Properties to economically beneficial use, subjected Plaintiffs to unequal treatment of law, deprived Plaintiffs of their vested rights under the United States Constitution to use their Properties free from arbitrary, capricious, and unreasonable restrictions, and imposed restrictions on the use of Plaintiffs' Properties that are not consistent with the Township's Comprehensive Plan, the Township's Zoning Resolution, or Ohio law." *Id.* at 2.

Defendant moved to dismiss Plaintiffs' claims on September 9, 2021. Mot. Dismiss, ECF No. 13. Following that motion, the parties engaged in settlement negotiations. They reached the settlement presently before the Court before the motion to dismiss was fully briefed. *See* Joint Notice 6, ECF No. 25; Consent Decree, ECF No. 34.

Movants are citizens of Jerome Township, whose property is "directly adjacent to and abuts the property owned by Plaintiff Wicked Chicken LLC." Mot. Intervene 2, ECF No. 30. Upon review of Movant's motion, the Court determined it most expedient that Movants, as well as other interested citizens of Jerome Township, be permitted to submit comments in support of or objecting to the

proposed Consent Decree. See ECF No. 33. The Court received such comments and has read and considered each one.

The Court will first evaluate the motion to intervene, then discuss the various objections from the public, and, finally, consider the fairness and reasonableness of the proposed Consent Decree.

## II. INTERVENTION

Intervention is governed by Federal Rule of Civil Procedure 24. Rule 24(a) provides for intervention of right, and Rule 24(b) allows for permissive intervention. Fed. R. Civ. P. 24. See also Grutter v. Bollinger, 188 F.3d 394, 397–98 (6th Cir. 1999); United States v. Michigan, 424 F.3d 438, 445 (6th Cir. 2005). The Sixth Circuit has explained, however, that "courts are not faced with an all-or-nothing choice between grant or denial [of intervention]: Rule 24 also provides for limited-in-scope intervention." United States v. City of Detroit, 712 F.3d 925, 931–32 (6th Cir. 2013).

This case touches on many of the factors favoring limited intervention outlined in City of Detroit. Id. at 932. Specifically, it is complicated, non-adversarial, and implicates the public interest. Further, the Court determined that considering Movants' concerns promoted an effective and fair resolution of Movants' concerns. Thus, even assuming Movants were entitled to intervention (either permissive or as of right), the Court would grant them only limited intervention.

The next question, then, is what the scope of that limited intervention would be. The scope of intervention is within the discretion of the district court. See *City of Detroit*, 712 F.3d at 933. Here, the appropriate scope would be a limited intervention allowing Movants to voice their objections to the proposed Consent Decree—the opportunity for which the Court has already provided Movants and the general public.[1] See ECF No. 33.

Because Movants would be entitled only to limited intervention that would allow them to voice their objections to the proposed Consent Decree, and because the Court has already provided Movants that opportunity, the motion to intervene is **DENIED AS MOOT**.

### III. OBJECTIONS

The Court received more than fifty letters regarding the proposed Consent Decree: eighteen in favor of it, and the rest opposed. See ECF No. 39-1. As previously stated, the Court has read and considered every letter. The objections can be grouped into the following general categories: (1) disagreements with zoning decisions; (2) beliefs that the settlement unfairly subverts the referenda; (3) beliefs that the timing of the settlement is unfair; (4) disagreements with the terms of the settlement; and (5) allegations of conflicts of interest. The Court considers each category of objections in turn.

---

[1] The Court will also consider the concerns raised in Movants' motion to intervene as part of their objections.

## A. Disagreements with Zoning Decisions

Several objections can be best categorized as disagreements with the zoning decisions. For example, some residents point to overcrowded schools, an allegedly flawed traffic study, developments near landfills, tree removal and its impact on buffering, and an outdated development plan.

Zoning decisions—as with all decisions of public policy—belong to the municipality, not to private individuals. *Cf. Diamond v. Charles*, 476 U.S. 54, 65 (1986). Thus, due to concerns for state autonomy, private individuals' disagreements with the municipality's weighing of various zoning or development considerations are generally not grounds for undoing a municipality's decisions. *Cf. Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 317 (6th Cir. 2005). So, although the Court has read and considered these objections, it does not find that they render the proposed Consent Decree unfair or unreasonable.

## B. Beliefs that the Settlement Unfairly Subverts the Referenda

Several letters assert that the settlement is unfair because it subverts the will of the people, as expressed in the referenda,[2] or that the procedures underlying this case are otherwise unfair.

---

[2] Further, the Court wishes to clarify some citizens' statements. Some commentors claimed that "all" of the citizens in Jerome Township supported the referendum and disapprove of the Consent Decree. Others said that "no one" wants the Consent Decree to be entered. The Court is in receipt of letters disproving that notion but would also like to take a moment to clarify the results of the referendum votes. As reflected in the parties' joint response to the objections, the true percentage of registered voters

Any such complaints are best aimed at the Ohio General Assembly, not at any party in this case. In late 2004, the legislature enacted a statute that permits this very procedure. See 2004 Ohio Laws File 122 (Am. Sub. H.B. 148). Thus, the presentation of the settlement to the Court—notwithstanding the referenda results—is expressly authorized by state law. While the citizens may believe that the statute is unfair, that is an unfairness the Ohio legislature, apparently, desired. Whatever the Court may think about the statute, it is not the Court's role to re-write the Ohio Revised Code. See, e.g., Benalcazar v. Genoa Twp., Ohio, 1 F.4th 421, 427 (6th Cir. 2021) (discussing Ohio Revised Code § 505.07 and observing that it is "an Ohio statute that, for reasons of its own, allows the [parties] to do just what they did").

Accordingly, the objections about the real or perceived unfairness surrounding these proceedings are unpersuasive.

### C. Beliefs that the Timing of the Settlement is Unfair

Some objectors argue that the timing of the Consent Decree renders it unfair.

First, the Sixth Circuit has recently rejected the argument that it is unfair to approve the settlement because the Court has yet to rule on the pending motion to dismiss. See Benalcazar, 1 F.4th at 425 ("How strange if that were not the

---

who voted against the Rolling Meadows development was 28.7%; The Farm at Indian Run, 13.4%; The Homestead at Scotts Farm, 31.43%; and VN-10, 31.6%. Joint Resp. 5–6, Ex. 1, Ex. 2, ECF No. 38. Thus, although the referenda passed, they did so by a vote of about only one-third of registered voters.

rule—if a district court could never settle a dispute until after resolving a motion to dismiss or for that matter a motion for summary judgment or, as here, an appealed motion to dismiss."). Thus, the pending motion to dismiss poses no barrier to approving the Consent Decree.

Next, some objectors argue that it is unfair to approve the Consent Decree before the new Trustees take their seats. This argument is flawed for multiple reasons. First, policies enacted by "lame duck" representatives are not unfair or unjust simply because they were championed by outgoing leaders. *See, e.g., Fraternal Ord. of Police Hobart Lodge No. 121, Inc. v. City of Hobart*, 864 F.2d 551 (7th Cir. 1988). Additionally, the Court manages its docket as it sees fit. *See, e.g., Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). The fact that the Court, in its discretion, chose to issue this Order prior to the seating of the new Trustees does not transform an otherwise fair settlement into an unfair one.

### D. Disagreements with Terms of the Settlement

Objectors raised three primary specific concerns with the terms of the settlement: (1) the contribution from Jerome Village Company will come from taxpayers, not the company; (2) the agreement requires all future lands be placed in a Joint Economic Development District ("JEDD"); and (3) the settlement retains the development plans which were originally passed but voted down.

First, the commentors are correct that a contribution from Jerome Village Company will come from "taxpayers" who live in Jerome Village. This is due to the existence of the Jerome Village Community Development Authority ("CDA"),

which "is funded by levying a millage on all homes within Jerome Village." Decl. Greg Daniels ¶ 7, ECF No. 38-10. As the Assistant Secretary of the CDA, Greg Daniels, explains:

> The millage is used to repay bonds and cover the operating costs of the CDA. The millage is fixed and uniform for all homes within Jerome Village. The millage does not change as the result of more homes being added to Jerome Village. When additional homes are added to Jerome Village, the same fixed millage is collected from those additional homeowners, creating additional revenue for the CDA that will further defray the operating costs and pay off the bonds.

Decl. Greg Daniels ¶ 7, ECF No. 38-10. Accordingly, although money from the CDA originates from Jerome Village homeowners, that money would not be paid to the Township absent the Consent Decree. *Id.* ¶ 4 ("The CDA was created in 2008 to oversee the funding, ownership, and maintenance of certain infrastructure improvements and amenities in the Jerome Village community . . . including roads, streets, sanitary sewers, waterlines, parks, trails, open spaces, and community facilities."); *Id.* ¶ 6, 21, 24, ECF No. 34. Additionally, the Consent Decree does not require current Jerome Village residents to pay additional fees to cover this financial obligation. Joint Resp. 20, ECF No. 38. The Court does not find that this concern weighs against finding the Consent Decree fair and reasonable.

Turning next to the concerns surrounding the JEDD, it appears that the objecting citizens misunderstand the benefits a JEDD provides the township. First, the JEDD already exists and is beneficial for Jerome Township because it allows the Township to collect income taxes from commercial businesses within

Jerome Village. *See* Joint Resp. 13, ECF No. 38. The purpose of the JEDD is "facilitating economic development to create or preserve jobs and employment opportunities and to improve the economic welfare of the people in this state and in the area of the contracting parties." Ohio Rev. Code § 715.71(B). Without the JEDD, the Township would be unable to collect income taxes from these businesses. *Desenco, Inc. v. City of Akron*, C.A. No. 18321, 1997 Ohio App. LEXIS 5470, at *8 (Ohio Ct. App. Dec. 10, 1997) ("A township has no power, by itself, to impose an income tax on its residents."). The JEDD, as provided in Ohio Revised Code § 715.72, allows the Township to impose taxes, but it does not automatically add future commercial lands into the JEDD. Joint Resp. 14, ECF No. 38. Instead, future admissions require the agreement of the City of Marysville, Ohio, and the commercial property owner. *Id.* To be sure, the Consent Decree requires that one Plaintiff, Jerome Village Company, add certain property within Jerome Village to the JEDD, which will "directly benefit[] the Township and its residents." *Id.* at 14 (citing Consent Decree ¶ 22, ECF No. 34-1). However, this is a benefit to the Township, and the JEDD weighs in favor of finding the Consent Decree fair and reasonable.

Finally, the Court notes that the terms of the settlement do change the plans which were initially passed but voted down. Specifically, the Consent Decree:

- Reduces the number of dwelling units in the Rolling Meadows development by 136 units and eliminates the existing golf course from the development;

- Requires certain neighborhood park amenities, landscaping, and buffering be provided within the Homestead at Scotts Farm development;

- Requires a multi-use path and clarifies setbacks to preserve and maximize open space and natural buffering within the Farm at Indian Run; and

- Provides certain trail connections for a multi-use path and additional landscaping and buffering within the VN-10 development.

Joint Resp. 12, ECF No. 38. Although these changes were made, the Court would note that there is no requirement that the terms of a settlement differ from the originally approved plans before a court can find the settlement fair and reasonable under Ohio Revised Code § 505.07.

Accordingly, the objections to the terms of the settlement do not weigh against the Court finding the settlement to be fair and reasonable.

### E. Allegations of Conflicts of interest

Finally, a few of the objectors allege that some of the individual Trustees have a conflict of interest or are in some way conspiring with developers in Union County. Perhaps most notably, some objectors allege that Trustee Joe Craft accepted $500 from a developer with connections to this case. To summarize, both this and other objections suggest that Trustee Joe Craft, and possibly another Trustee, had some nefarious motives to approve the settlement.

Of course, the Court considers public corruption a serious matter. However, objectors have submitted no evidence in support of their accusations, and most are just vague allegations of corruption. The Court finds it would be

unfair to disapprove the parties' Consent Decree based on no more than generalized and unverified suspicions and accusations.

That leaves the specific allegation about Trustee Joe Craft. Although there are some specific details in support of this allegation, the objectors who raised this concern provided no evidence. Even from these more detailed allegations, the exact relationship between Trustee Joe Craft, the donor, and this case is somewhat unclear. More persuasively, the parties have submitted a sworn declaration from Trustee Joe Craft in which he avers that although he did accept $500 from a developer, as far as he is aware, that developer has no connection to this case, and the $500 played no role in his consideration or vote for the Consent Decree. *See generally*, Craft Decl., ECF No. 38-3.

Again, public corruption is a serious matter. However, weighing the allegations against the evidence before the Court, it does not appear that Trustee Joe Craft was actually involved in any corruption, let alone corruption related to the at-issue developments. So, the Court does not see the need to upend the parties' settlement at this juncture.

## IV. CONSENT DECREE

### A. Standard of Review

Ohio Revised Code § 505.07 provides the standard for the Court to review the Consent Decree in this case:

> Notwithstanding any contrary provision in another section of the Revised Code, section 519.12 of the Revised Code, or any vote of the electors on a petition for zoning referendum, a township may settle

any court action by a consent decree or court-approved settlement agreement which may include an agreement to rezone any property involved in the action as provided in the decree or court-approved settlement agreement without following the procedures in section 519.12 of the Revised Code and also may include township approval of a development plan for any property involved in the action as provided in the decree or court-approved settlement agreement, provided that the court makes specific findings of fact that notice has been properly made pursuant to this section and the consent decree or court-approved settlement agreement is fair and reasonable.

If the subject of the consent decree or court-approved settlement agreement involves a zoning issue subject to referendum under section 519.12 of the Revised Code, the board of township trustees shall publish notice of their intent to meet and consider and take action on the decree or court-approved settlement agreement and the date and time of the meeting in a newspaper of general circulation in the township at least fifteen days before the meeting. The board shall permit members of the public to express their objections to the consent decree or court-approved settlement agreement at the meeting. Copies of the proposed consent decree or court-approved settlement agreement shall be available to the public at the township fiscal officer's office during normal business hours.

At least ten days prior to the submission of a proposed consent decree or settlement agreement to the court for its review and consideration, the plaintiff in the action involving the consent decree or settlement agreement shall publish a notice that shall include the caption of the case, the case number, and the court in which the consent decree or settlement agreement will be filed, the intention of the parties in the action to file a consent decree or settlement agreement, and, when applicable, a description of the real property involved and the proposed change in zoning or permitted use, in a newspaper of general circulation in the township.

Thus, to approve the Consent Decree, the Court must find: (1) the Trustees published sufficient notice of its intent to meet, consider, and take action on the agreement at least fifteen days before the meeting, (2) Plaintiffs published sufficient notice at least ten days prior to the submission of the

agreement for this Court's review and consideration, and (3) the agreement is fair and reasonable. Ohio Rev. Code § 505.07.

**B. Analysis**

Turning to the first requirement, the Trustees did provide more than fifteen days' notice of its December 20, 2021 meeting. *See* Joint Notice Ex. B, ECF No. 25. Specifically, Defendant published in *The Marysville Journal-Tribune*, a newspaper of general circulation in the City of Marysville and Union County, a notice of the meeting. *Id.* The notice details the case information, meeting information, and the availability for the public to obtain copies of the Consent Decree at the Jerome Township fiscal officer's office during business hours. *Id.* The notice references Ohio Revised Code § 505.07. Defendant published this notice on December 3, 2021, and December 10, 2021. *Id.* This notice meets Defendant's burden. Additionally, the Court is in receipt of and has read the transcript from the December 20, 2021 meeting. Meeting Tr., ECF No. 36; *see also* Decl. Douglas Stewart PAGEID ## 507–508, ECF No. 34-2. At the meeting, the board allowed members of the public to speak. Meeting Tr. PAGEID ## 520–553, ECF No. 36.

Plaintiffs similarly published sufficient notice at least ten days prior to the submission of the agreement for the Court's review and consideration. *See* Joint Notice Ex. C, ECF No. 25. Plaintiffs published notice on December 7, 2021, in *The Marysville Journal-Tribune. Id.* The notice provided the caption of the case, the case number, the Court's information, and a description of the real property

involved in this case. *Id.* Further, the notice provided that the parties were intending to file the Consent Decree and the rezoning that the Consent Decree would allow for. *Id.* This notice meets Plaintiffs' burden.

Finally, the Court is tasked with reviewing the agreement and making specific findings of fact that it is fair and reasonable. Ohio Rev. Code § 505.07. Counsel for both parties find the agreement fair and reasonable. Joint Notice 4, ECF No. 25. Counsel's opinion is "entitled to considerable weight" in this regard. *Benalcazar v. Genoa Twp., Ohio*, No. 2:18-CV-01805, 2020 WL 4933797, at *7 (S.D. Ohio Aug. 24, 2020), *aff'd*, 1 F.4th 421 (6th Cir. 2021) (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007)).

Additionally, as the parties explain:

> the proposed Consent Decree will end the litigation with prejudice, provide a mutual release and waiver, and compensate Plaintiffs for a portion of the damages incurred. The Consent Decree rezones the Properties in accordance with the Township's Comprehensive Plan and certain preliminary development plans and development requirements. When compared to the existing conditions, commitments, and Original Development Plans, the proposed Consent Decree memorializes numerous concessions and commitments. Among other things, the Consent Decree:
> 
> - Requires the Township be paid One Million Dollars ($1,000,000) to be spent on construction and equipping a new fire station;
> 
> - Requires the Township be paid One Million Two Hundred Fifty Thousand Dollars ($1,250,000) to fund certain Township needs over the next ten years;
> 
> - Requires the Township to cause certain plaintiffs to be paid Two Hundred Fifty Thousand Dollars ($250,000) in lieu of paying the more than Thirteen Million Dollars ($13,000,000)

- in damages, fees, and costs sought by Plaintiffs in this litigation;

- Applies certain development standards and requirements applicable to Jerome Village, which are touted as a model within the Township's Comprehensive Plan, to additional properties within the Eversole Run Master Sewer District;

- Requires all future commercial development within the Township be placed into a joint economic development district, permitting the Township to realize income tax revenues from such future commercial development;

- Reduces the number of dwelling units in the Rolling Meadows development by 136 units, eliminates the existing golf course from the development while preserving a large mature tree stand on the site;

- Requires certain neighborhood park amenities, landscaping, and buffering be provided within the Homestead at Scotts Farm development;

- Requires a multi-use path and clarifies setbacks to preserve and maximize open space and natural buffering within the Farm at Indian Run; and

- Provides certain trail connections for a multi-use path and additional landscaping and buffering within the VN-10 Development.

Consent Decree 3–4, ECF No. 34.

Further, the Court received several letters in support of the settlement, including letters from the Union County Chamber of Commerce, the Jerome Township Division of Fire, and the Sheriff of Union County.[3] See ECF No. 39-1. Although not necessarily a factor in the Court's determination, the support of

---

[3] For a list of some of the letters of support received, see Joint Resp. 23–25, ECF No. 38.

these entities bolsters the Court's confidence that the settlement is fair and reasonable.

The Court finds this is not a one-sided agreement; each side takes something from the resolution of this dispute. Cf. Benalcazar, 1 F.4th at 427. To be sure, Jerome Township citizens were divided. As discussed at length above, the Court was in receipt of many comments on this matter. See Objections, supra section III. Still, the citizens were given a chance to voice their opinions both before this Court and at the township meeting. Having reviewed the parties' detailed response addressing those fairness concerns, the Court is satisfied that the representations made by the parties are accurate representations of the fairness of the agreement, and that the agreement itself is fair and reasonable. Accordingly, the Undersigned is satisfied that this Consent Decree can be approved within the guidelines provided by Ohio Revised Code § 505.07.

### V. CONCLUSION

To summarize: the motion to intervene is **DENIED AS MOOT**, the Court has considered all of the objections but finds none warrants disapproving the Consent Decree, and the Consent Decree is **APPROVED**.

The Court retains jurisdiction in this action for purposes of monitoring compliance with the Consent Decree. The Clerk is **DIRECTED** to close the case.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**